# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| VITA-MIX CORPORATION, VITA-MIX MANAGEMENT CORPORATION, and VITA-MIX MANUFACTURING CORPORATION, | Civil Action No. 1:15-cv-01118-PAG |
| Plaintiffs, | Judge Patricia A. Gaughan |
| v. | |
| BLENDTEC, INC., | |
| Defendant. | |

---

## MEMORANDUM IN SUPPORT OF DEFENDANT BLENDTEC'S MOTION FOR SUMMARY JUDGMENT RE: ISSUE PRECLUSION AND PRIORITY DATE

Defendant Blendtec, Inc. ("Blendtec"), by and through its attorneys, hereby submits this memorandum of points and authorities in support of its motion seeking summary judgment on all claims asserted by Plaintiffs Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation (collectively "Vita-Mix") based on issue preclusion and the priority date of the patent in suit.[1]

---

[1] All exhibits supporting the present Motion have been submitted with a separately-filed Declaration of Mark A. Miller Re: Exhibits Supporting Defendant's Motion for Summary Judgment Re: Issue Preclusion and Priority Date ("Miller Declaration") and are cited herein by the respective exhibit numbers.

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

        A.      General Background ................................................................................. 2

        B.      Blendtec's 5-Sided Jar Invention ............................................................ 3

        C.      Vita-Mix's Invention .............................................................................. 4

        D.      Brent Miller's Designs Fail And Vita-Mix Copies Blendtec................... 5

        E.      Vita-Mix Willfully Infringes Blendtec Patents........................................ 7

        F.      Vita-Mix Fails To Prove Blendtec's 5-Sided Jar Is Brent Miller's
                Invention ................................................................................................. 8

                1.      Utah Litigation ............................................................................. 9

                2.      Patent Office Reexamination Proceedings.................................. 10

        G.      Vita-Mix Changes Brent Miller's Invention Disclosure........................ 11

                1.      June 26, 2001 Provisional Application ....................................... 11

                2.      '478 Patent History .................................................................... 12

                3.      '004 Patent File History ............................................................. 14

        H.      Blendtec's Prior Art Anticipates The '004 Patent ................................ 17

III.    ARGUMENT ..................................................................................................... 18

        A.      Vita-Mix's Infringement Claims Are Barred By Issue Preclusion........ 18

        B.      The '004 Patent Is Not Entitled To The Priority Date Of The Provisional
                Application And Is Invalid...................................................................... 21

IV.     CONCLUSION .................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agilent Techs., Inc. v. Affymetrix, Inc.,*
  567 F.3d 1366 (Fed. Cir. 2009)............................................................................................28, 30

*Allen v. McCurry,*
  449 U.S. 90 (1980)..........................................................................................................................19

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
  314 F.3d 1313 (Fed. Cir. 2003).....................................................................................................22

*Anascape, Ltd. v. Nintendo of America, Inc.,*
  601 F.3d 1333 (Fed. Cir. 2010)............................................................................................ passim

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
  598 F.3d 1336 (Fed. Cir. 2010).....................................................................................................23

*Ashe v. Swenson,*
  397 U.S. 436 (1970)........................................................................................................................19

*Biafora v. United States,*
  773 F.3d 1326 (Fed. Cir. 2014).....................................................................................................18

*Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.,*
  246 F.3d 1368 (Fed. Cir. 2001).................................................................................................17, 30

*Centocor Ortho Biotech, Inc. v. Abbott Labs.,*
  636 F.3d 1341 (Fed. Cir. 2011).....................................................................................................23

*Cobbins v. Tenn. Dep't of Transp.,*
  566 F.3d 582 (6th Cir. 2009) ........................................................................................................18

*Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. (USA), Inc.,*
  542 F.3d 1363 (Fed. Cir. 2008).................................................................................................17, 29

*Cummins-Allison Corp. v. SBM Co., Ltd.,*
  484 Fed.Appx. 499 (Fed. Cir. 2012) ...........................................................................................25

*Dynamic Drinkware, LLC v. National Graphics,*
  -- F.3d --, 2015 WL 5166366 (Fed. Cir., Sept. 4, 2015).............................................................23

*Enzo Biochem, Inc. v. Gen–Probe Inc.,*
  323 F.3d 956 (Fed. Cir. 2002).......................................................................................................22

ii

*Evans v. Eaton*,
    20 U.S. 356 (1822)..................................................................................22

*Foster v. Hallco Mfg. Co., Inc.*,
    947 F.2d 469 (Fed. Cir. 1991)..............................................................19

*Franklin Elec. Co., Inc. v. Dover Corp.*,
    2007 WL 634430 (Fed. Cir. 2007).........................................................25

*Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    918 F.2d 658 (6th Cir. 1990) ...............................................................18

*Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*,
    701 F.3d 1093 (6th Cir. 2012) .............................................................18

*Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*,
    821 F.Supp.2d 948 (N.D. Ohio 2011)....................................................18

*Go Medical Industries Pty., Ltd. v. Inmed Corp.*,
    471 F.3d 1264 (Fed. Cir. 2006).............................................................25

*Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*,
    2012 WL 6562220 (E.D. Va. Aug. 13, 2012)..................................29, 30

*Hitzeman v. Rutter*,
    243 F.3d 1345 (Fed. Cir. 2001).............................................................28

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000).............................................................24

*In re Oelrich*,
    666 F.2d 578 (CCPA 1981) .................................................................28

*In re Wright*,
    569 F.2d 1124 (CCPA 1977) ...............................................................24

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009)............................................................17

*K-TEC, Inc. v. Vita-Mix Corp.*,
    696 F.3d 1364 (Fed. Cir. 2012)........................................................8, 14

*Lockwood v. American Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997).................................................22, 26, 29

*Madstad Engineering, Inc. v. U.S. Patent and Trademark Office*,
    756 F.3d 1366 (Fed. Cir. 2014).............................................................20

*Montana v. United States*,
440 U.S. 147 (1979).................................................................19

*Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*,
253 F.3d 900 (6th Cir. 2001) ...................................................18

*New Hampshire v. Maine*,
532 U.S. 742 (2001)..................................................................19

*Nystrom v. TREX Co., Inc.*,
424 F.3d 1136 (Fed. Cir. 2005)................................................24

*OddzOn Products, Inc. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997).................................................20

*Peters v. Active Mfg. Co.*,
129 U.S. 530 (1889)..................................................................17

*Plantronnics, Inc. v. Aliph, Inc.*,
724 F.3d 1343 (Fed. Cir. 2013)................................................25

*Powdermagic, Ltd. v. Rossignol Ski Co.*,
2005 WL 3981617 (D. Utah 2005) ..........................................27

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008)......................................16, 23, 24

*Purdue Pharma L.P. v. Faulding Inc.*,
230 F.3d 1320 (Fed. Cir. 2000).........................................23, 27

*Reiffin v. Microsoft Corp.*,
214 F.3d 1342 (Fed. Cir. 2000)................................................22

*Slip Track Sys., Inc. v. Metal-Lite, Inc.*,
304 F.3d 1256 (Fed. Cir. 2002)...................................................9

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
753 F.3d 1291 (Fed. Cir. 2014)................................................25

*Taylor v. Sturgell*,
553 U.S. 880 (2008)..................................................................19

*Trading Technology Int'l, Inc. v. BCG Partners, Inc.*,
852 F.Supp.2d 1027 (N.D. Ill. 2012) .......................................23

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998).........................................29, 30

iv

*TurboCare Division of Demag Delaval Turbomachinery Corp. v. General
    Electric Co.*,
    264 F.3d 1111 (Fed. Cir. 2001)..........................................................................21

*United States v. Mendoza*,
    464 U.S. 154 (1984)..........................................................................................19

*University of Rochester v. G.D. Searle & Co., Inc.*,
    358 F.3d 916 (Fed. Cir. 2004)....................................................................22, 27

*Vas-Cath, Inc. v. Curators of University of Missouri*,
    473 F.3d 1376 (Fed. Cir. 2007)..........................................................................9

*Vigil v. The Walt Disney Co.*,
    2003 WL 22016805 (N.D. Cal. 2003) ..............................................................18

## STATUTES

35 U.S.C. § 102(f)...............................................................................................20

35 U.S.C. § 112.........................................................................................9, 16, 17

35 U.S.C. § 132(a) ...............................................................................................17

35 U.S.C. § 135.......................................................................................................9

35 U.S.C. § 291.......................................................................................................9

## OTHER AUTHORITIES

MPEP § 2301 ..........................................................................................................9

Random House Webster's Unabridged Dictionary (2d Ed. 2001) ................................12

## I.      INTRODUCTION

In this retaliatory lawsuit, Vita-Mix accuses Blendtec of patent infringement based on a product that Blendtec began selling *13 years* before Vita-Mix's asserted patent was granted. That timeline alone should raise an eyebrow and indicate something is amiss.  From 2006 to 2012, Blendtec and Vita-Mix fiercely litigated a patent infringement suit in the District of Utah that resulted in a final judgment that *Vita-Mix copied Blendtec's 5-sided blending jar* and willfully infringed Blendtec's patents covering that design.  The Utah lawsuit also established that Blendtec's 5-sided blending jar *was not the product of Vita-Mix engineer Brent Miller's inventions*, which purportedly form the basis for Vita-Mix's asserted patent claims. Consequently, Vita-Mix's infringement claims are diametrically at odds with the factual issues fully and finally resolved in the prior Utah case, and are therefore barred by issue preclusion.

In addition, Vita-Mix's asserted patent claims are not entitled to the June 26, 2001 priority date that Vita-Mix needs to maintain the validity of those claims given the fact that the accused product was first publicly sold in September 2001.  Vita-Mix was granted three patents stemming from a June 26, 2001 provisional patent application disclosing the inventions of Brent Miller: U.S. Patent No. 7,063,456 ("Miller '456 patent"), U.S. Patent No. 7,267,478 (" '478 patent"), and U.S. Patent No. 8,753,004 (" '004 patent").  Although the Miller '456 patent remained true to the original written description of Miller's provisional application, significant amendments adding "new matter" to the specification were made in connection with the '478 patent and the '004 patent (the patent asserted in this case).  Given those substantive amendments, the asserted claims of the '004 patent are not entitled to the June 26, 2001 filing date, and are therefore anticipated by Blendtec's accused 5-sided blending jar and related patents.

1

Based on either issue preclusion or invalidity for lack of priority—or both—the Court should enter summary judgment in Blendtec's favor on all asserted claims.

## II.   FACTUAL BACKGROUND

### A.   GENERAL BACKGROUND

Blendtec[2] and Vita-Mix compete in the commercial blending industry, supplying establishments such as Jamba Juice and Baskin Robbins with high-end blenders.  In the early 1990s, as the commercial blending industry responded to the popularity of frozen beverages such as smoothies, the problem of "cavitation" (*i.e.,* when a pocket of air envelopes the blending blades, preventing the ingredients from being mixed) became a focus of both parties.  *See* Exhibit 1 at A13308:6-21 (Dickson), A13432:19-A13433:16 (Elgaaen), A13740:1-A13741:23 (Galbraith); Exhibit 2 at 43:16-44:23 (Hinckley).  Vita-Mix entered the commercial blending market in 1991 with its 64 ounce blending container, depicted below on the left.  *Id*. at 12:12-13:22 (Hinckley).  Blendtec introduced its first commercial blending jar, a square 4-sided jar depicted below to the right, in the early 1990s as well.




**Vita-Mix 64-ounce Container**          **Blendtec 4-Sided Jar**

Exhibit 3; Exhibit 4.

---

[2] Blendtec's former corporate name was K-TEC, Inc., although it has always used the Blendtec® brand name. Accordingly, any reference to K-TEC in any cited documents and testimony is a reference to Blendtec.

2

For years, Vita-Mix received customer complaints about cavitation problems with its 64 ounce container.  As a result, Vita-Mix's marketing director at the time, Scott Hinckley, asked Vita-Mix's engineering department to make a container that would process smoothies better. Exhibit 2 at 43:16-44:23, 92:3-13 (Hinckley); Exhibit 5 at 94:16-98:3, 115:2-20 (Kolar). Blendtec's 4-sided jar design was also prone to cavitation, although to a lesser degree.  Exhibit 1 at A13719:20-A13721:12, A13739:20-A13741:23 (Galbraith), A13308:6-21 (Dickson).

### B.    BLENDTEC'S 5-SIDED JAR INVENTION

On Memorial Day weekend in 2001, defying conventional wisdom at the time,[3] Blendtec's Thomas Dickson decided to increase the size of the 4-sided blending jar at the base, hoping the larger internal area around the blades would minimize cavitation.  *Id*. at A13315:19-A13316:23 (Dickson).  To implement his concept, Mr. Dickson used a band saw to cut up several 4-sided jars and then glued the pieces back together so as to extend the width at the top of the jar all the way down to the base.  *Id*. at A13317:3-21, A13323:1-13324:14 (Dickson). Because he was working with pieces of existing jars where the handle placement was fixed, Mr. Dickson inserted a truncated wall to leave hand clearance for gripping the handle.  *Id*.  *See also* Exhibit 7 (A24975-76).  The resulting prototype was a 5-sided blending jar with a truncated wall as disclosed and claimed in Blendtec's patents, U.S. Patent No. 6,979,117 ("'117 patent," Exhibit 8) and U.S. Patent No. 7,281,842 ("'842 patent," Exhibit 9) (collectively "Blendtec's patents"). *See also* Exhibit 1 at A13323:1-14 (Dickson).

---

[3] A contemporaneous patent, U.S. Patent No. 6,431,744 filed in November 2000, teaches "the larger the blending container, the greater the risk of improper blending and unsatisfactory consistency," thus discouraging the solution Mr. Dickson contemplated.  Exhibit 6 at col. 2, lines 9-11.







| **K-TEC Patents, FIG. 10** | **K-TEC 5-Sided Jar (Exhibit 10)** |
|---|---|

Subsequent internal testing of the 5-sided prototype revealed amazing blending performance and efficiency.  Exhibit 1 at A13324:15-13326:25, A13343:10-23 (Dickson), A13437:11-13440:6 (Elgaaen), A13722:14-13724:20 (Galbraith).  The improved performance was unexpectedly caused not by the larger width of the jar as Dickson had initially hoped, but by the serendipitous placement of the truncated wall that shifted the blending vortex off center and caused a much more turbulent internal flow, preventing cavitation.  *Id.  See also id.* at A13533:13-20 (Wright); Exhibit 8 at col. 6, line 52 – col. 7, line 12 ('117 patent).  Early demonstrations of Blendtec's 5-sided container, including the first public introduction in September 2001, were met with "jaw-dropping" reactions by many in the industry.  Exhibit 1 at A13332-35 (Dickson), A13725:9-A13727:23, A13729:16-A13732:4 (Galbraith), A13527:4-17 (Wright).  Years later, Blendtec branded its 5-sided jar as the Wildside® jar.[4]

C.      VITA-MIX'S INVENTION

Around the same time, Vita-Mix engineer Brent Miller conceived of various "non-symmetrical" blending jar configurations (depicted as Figures 3, 4, and 6 below), which were ultimately disclosed in a provisional patent application filed on June 26, 2001.  *See* Exhibit 43.

---

[4] Blendtec's 5-sided Wildside jar is one of the products Vita-Mix accuses of infringement in this case.  *See* Dkt. 1.



Although Vita-Mix experimented with Miller's concepts and filed a patent application, Vita-Mix personnel testified that Vita-Mix never commercialized Miller's inventions.  Exhibit 2 at 86:6-87:24 (Hinckley); Exhibit 11 at 99:25-103:15 (Boozer).

### D.    BRENT MILLER'S DESIGNS FAIL AND VITA-MIX COPIES BLENDTEC

During Brent Miller's development work, in August 2000, Vita-Mix CEO and engineer, John Barnard, sent an email to David Barnard and Brent Miller expressing serious concerns about the viability of Miller's "container concept" due to "over heating problems," among other issues, and suggesting that Vita-Mix look to Blendtec for solutions.  Exhibit 12 ("We might be better off to make a container very similar to K-TEC").  By November 2001, just a couple months after Blendtec publicly introduced its 5-sided blending container, Vita-Mix engineers had already internally tested Blendtec's 5-sided container and verified its "smoothie performance advantages," causing Vita-Mix's CEO, Barnard, to suggest pursuing Blendtec's design instead of Miller's concepts, which continued to experience "overloading issues" and likely would not sell. Exhibit 13 ("Although [Blentec's container] might not provide all of the thick mixture advantages of Brent's concepts, it would fill our immediate needs quickly[.]").  A short time later, in January 2002, Barnard, an engineer born and raised in the blending industry, instructed Vita-Mix's engineering department to continue studying Blendtec's new container design to figure out "by what mechanism it processes so fast," and to "pursue a similar project," recognizing that Blendtec "may try to patent the concept."  Exhibit 14.  Vita-Mix's urgency in

5

duplicating Blendtec's ground-breaking design was spurred by reports from major clients, like Caribou Coffee, which "absolutely LOVE[D] the new Blendtec container" because it did the "impossible" by accomplishing twice the work in half the time as compared to prior equipment. *See* Exhibits 15, 16. *See also* Exhibits 17, 18 (Vita-Mix email: "we have already lost the Ruby Tuesday's/Coke business to Blendtec. … 'The Blendtec EZ Blend beat the s*#t out of the Vita-Mix'").[5]

Heeding Mr. Barnard's directive, Vita-Mix engineers launched a "Smoothie Container Development Program" in February 2002, the focus of which was <u>not Brent Miller's designs</u>, but rather a blatant copy of Mr. Dickson's 5-sided jar as the "example design." Exhibit 20.  The presentation from Vita-Mix's engineering department even included a "confidential" photograph of Blendtec's 5-sided jar taken at a Baskin-Robbins. *Id.* at A16507, A16511.

 

*See also* Exhibit 1 at A13872:20-A13873:14, A13889:3-7 (Barnard); Exhibit 11 at 133:5-134:6 (Boozer).

---

[5] In another example, Baskin Robbins saw Blendtec's 5-sided jar as a potential solution to its need for a blending container that could efficiently blend both smoothies and milkshakes.  Exhibit 1 at A13357:14-13358:14 (Dickson); A13731:2-13732:1, A13767:2-A13768:16 (Galbraith).  Because of the novel 5-sided design, Vita-Mix viewed Mr. Dickson's fledging company as "the most serious threat" to the Baskin Robbins account in several years.  Exhibit 19.  *See also* Exhibit 14; Exhibit 1 at A13868:5-A13869:6 (Barnard).  In response to the overwhelming demand for Blendtec's innovation, Vita-Mix's marketing director, Hinckley, recognized that Vita-Mix would lose "every account" to Blendtec if it did not duplicate Blendtec's new container.  Exhibit 16 ("I'm sure Blendtec is going to every account and showing them this container, which blows ours away").

In May 2003, Vita-Mix issued a press release to introduce its copy of Blendtec's 5-sided container, called the "MP container," which Vita-Mix touted as the long-awaited solution to cavitation. Exhibit 21 ("The new container eliminates cavitation and produces a more thoroughly blended product"). Vita-Mix's MP container was identical to Blendtec's 5-sided jar and to the preferred embodiment depicted in Blendtec's subsequent patents. Exhibits 10, 22; Exhibit 8 at A24964.

  

**Blendtec Patents, Fig. 10**       **Blendtec Wildside Jar**       **Vita-Mix MP Container**

Vita-Mix engineers admitted that the MP container was simply a copy of Blendtec's invention. Exhibit 23 at 121:9-123:9 (Katz).

## E.    VITA-MIX WILLFULLY INFRINGES BLENDTEC PATENTS

In September 2005, knowing that Blendtec's '117 patent would soon issue, Vita-Mix considered changing the design of the MP container to a simple square container to avoid infringement of Blendtec's forthcoming patent. *Id*. at 77:2-12, 79:12-80:16 (Katz).[6]  In the end, however, Vita-Mix could not give up the performance achieved by Blendtec's invention; so it did not adopt any of its non-infringing design alternatives and instead made an admittedly cosmetic and invisible modification by curving the truncated wall under the handle and called it the "XP container." *Id*. at 42:9-44:19, 58:10-21 (Katz); Exhibit 2 at 160:5-14 (Hinckley);

---

[6] Vita-Mix also designed and tested over a dozen other jar configurations that were completely different from Blendtec's 5-sided design. Exhibit 2 at 159:1-15 (Hinckley); Exhibit 23 at 46:13-56:7 (Katz). However, the non-infringing designs "cavitated" and "some didn't blend at all." *Id*.

8035144_3.docx

Exhibit 24 ("We have created a container that is equal to our old design in blending performance … most will never even notice the change"); Exhibit 25; Exhibit 1 at A13902:17-23 (Barnard).

Blendtec sued Vita-Mix for patent infringement in the United States District Court for the District of Utah on February 6, 2006.[7]  Exhibit 26.  After several years of hard-fought litigation, a jury returned a verdict on June 17, 2010 finding that Vita-Mix willfully infringed Blendtec's patents and awarding Blendtec over $11 million in damages.  Exhibit 27.  On January 26, 2011, the Utah court entered a permanent injunction prohibiting Vita-Mix from making, using, or selling Blendtec's patented 5-sided container.  Exhibit 28.  That same day, the district court awarded Blendtec enhanced damages due in large part to "Vita-Mix's deliberate copying of K-TEC's five-sided jar."  Exhibit 29 at 8.[8]  Ultimately, the district court's final judgment awarded Blendtec approximately $24 million.  Exhibit 32.  The Federal Circuit affirmed the district court's judgment on September 6, 2012.  *See K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364 (Fed. Cir. 2012).

### F.    VITA-MIX FAILS TO PROVE BLENDTEC'S 5-SIDED JAR IS BRENT MILLER'S INVENTION

As part of its defense to Blendtec's willful infringement claims in the Utah case, Vita-Mix contended the Miller '456 patent[9] was prior art to Blendtec's patents.  Exhibit 33. Throughout the Utah case, and in various reexamination proceedings at the Patent Office, Vita-Mix's attorneys attempted—unsuccessfully—to rewrite history, arguing in various ways that the 5-sided container design copied from Blendtec was actually based on the work of Brent Miller.

---

[7] Blendtec subsequently added the '842 patent to the lawsuit after it was issued on October 16, 2007.
[8] The district court expressly noted Vita-Mix's blatant copying in other orders as well.  Exhibit 30 at 11 ("Vita-Mix's initial response to K-TEC's five-sided jar in the marketplace was the development of the MP container, which the court has found is a direct copy of K-TEC's patented jar."); Exhibit 31 at 25 ("[T]he court has already found in its Infringement Order that Vita-Mix copied the K-TEC Patents.").
[9] This is the grandparent to the '004 patent asserted by Vita-Mix in the present case, and it contains essentially the same written description of Brent Miller's invention as the June 26, 2001 provisional application.

1.      **Utah Litigation**

In the Utah lawsuit, for example, Vita-Mix asserted an interfering patents[10] counterclaim alleging that the Miller '456 patent and the '478 patent claimed the same invention as Blendtec's '842 patent.  *See* UDkt. 489.[11]  The Utah court dismissed this counterclaim, adopting the detailed reasoning in Blendtec's motion papers that explained why Blendtec's 5-sided jar is a different invention from that disclosed in the Miller '456 and '478 patents.  Exhibit 34; UDkt. 417.

At trial, Vita-Mix defended against the willful infringement charge by arguing that its infringing containers were "based on a Brent Miller patent and … not based on anything that K-TEC created."  *See* Exhibit 1 at A13962:19-A13963:10 (Barnard).  Vita-Mix also tried to rely on various notes and sketches from Brent Miller's files to expand the disclosure of the Miller '456 patent beyond what it actually discloses.  Exhibit 35 at A5751-5803.  The Utah court rejected Vita-Mix's efforts to re-write the nature of Brent Miller's invention, finding it "improper to consider evidence outside the Miller Patent to determine what the patent discloses."  Exhibit 36 at 2-3 ("Even if the Miller Invention described a theory or idea that could be put to use to improve blending in a similar way to the way described in the K-TEC patents, neither Mr. Miller nor Vita-Mix appreciated the existence of these ideas.").

During trial, Vita-Mix tried to prove that the Miller '456 patent disclosed the same 5-sided jar design of Blendtec's invention as claimed in its patents.  Specifically, Brent Miller

---

[10] An interference is a contest between two inventors who have claimed the same invention in their patents to determine priority of invention – *i.e.*, which party was the first to invent the commonly claimed invention.  *See* MPEP § 2301; *Vas-Cath, Inc. v. Curators of University of Missouri*, 473 F.3d 1376, 1378 (Fed. Cir. 2007) ("A patent interference proceeding … is conducted for the purpose of determining priority of invention as between competing applicants for patent on the same invention.").  Interference proceedings most commonly occur in the Patent Office between a pending patent application and another application or issued patent.  *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1264 (Fed. Cir. 2002) ("Most interferences arise in the PTO").  The Patent Office has the authority to declare an interference under 35 U.S.C. § 135 "[w]henever an application is made for a patent which, in the opinion of the Director, would interfere with any pending application, or with any unexpired patent."  When the owners of two issued patents claim to have patented the same invention, the Patent Act confers jurisdiction on the Federal Courts to conduct interference actions between two issued patents.  *See* 35 U.S.C. § 291.

[11] Citations to publicly available docket entries in the District of Utah litigation, Case No. 2:06-cv-00108, are cited as "UDkt. _."

himself tried to convince the jury that he conceived of a square jar with one truncated corner, which he claimed was part of his original invention disclosure.  Exhibit 1 at A12918-A12923 (Miller).  Vita-Mix retained a technical expert, Dr. Lee Swanger, who tried to convince the jury that the Miller '456 patent anticipated Blendtec's 5-sided jar patents by disclosing the design of a square jar with a truncated corner like Blendtec's 5-sided jar.  *Id*. at A13164-A13187 (Swanger). The jury rejected Vita-Mix's invalidity assertions, necessarily concluding that the Miller '456 patent <u>does not disclose or suggest Blendtec's 5-sided jar invention</u>.  Exhibit 27.  Following the trial, the Utah court concluded that "Vita-Mix's arguments that its [infringing] blending jars were based on the work of Brent Miller is not persuasive."  Exhibit 29 at 9.

## 2. <u>Patent Office Reexamination Proceedings</u>

Vita-Mix also relied on the Miller '456 patent to argue invalidity of Blendtec's patents in reexamination proceedings at the Patent Office.  Vita-Mix attorneys attempted to characterize the non-symmetrical configurations depicted in the Miller '456 patent, specifically Figure 4, in a manner that the Patent Office found was not supported by Miller's original written description. *See, e.g.,* Exhibit 37 at 6-12; Exhibit 38 at 11-12.  A panel of three examiners at the Patent Office rejected Vita-Mix's arguments, finding no support for Vita-Mix's characterizations of Figure 4. *See, e.g.,* Exhibit 39 at 16-17; Exhibit 40.  The Board of Patent Appeals at the Patent Office ("Board") agreed with the examiners, stating that "Miller '456 <u>only</u> discloses that the embodiments depicted in Figures 3, 4, and 6 are 'non-symmetrical.'"  Exhibit 41 at 15-16 (emphasis added).  Like the Utah court, the Board also found "significant evidence that a blending jar having the features recited in claim 1 [of Blendtec's '842 patent] sold by K-TEC was copied by Vita-Mix" and that Vita-Mix "did not commercialize" Brent Miller's non-symmetrical container designs from the Miller '456 patent.  *Id*. at 21-22.  Ultimately, the Board found Blendtec's 5-sided jar invention distinct and non-obvious from the disclosure set forth in

the Miller '456 patent.  *Id*. at 25-25.  The Federal Circuit summarily affirmed the Board's

decision.  Exhibit 42.

In summary, the Utah district court, a federal jury, several Patent Office examiners, the

Board of Patent Appeals, and the Federal Circuit have all unanimously concluded (a) that the

disclosure of the Miller '456 patent (*i.e.*, the grandparent to the asserted patent in this action)

does not disclose or render obvious the 5-sided jar invention claimed in Blendtec's patents and

sold by Blendtec (*i.e.*, the accused product in this case), and (b) that Vita-Mix copied the accused

5-sided container design from Blendtec and, therefore, did not invent it.

### G.    VITA-MIX CHANGES BRENT MILLER'S INVENTION DISCLOSURE

Immediately after Blendtec first notified Vita-Mix of its patent rights in the 5-sided jar,[12]

Vita-Mix attorneys filed a continuation application on April 24, 2006, which ultimately issued as

the '478 patent.  For more than seven years thereafter, while prosecuting this and a subsequent

continuation application, Vita-Mix attorneys methodically manipulated the written description of

Brent Miller's original patent application in an effort to acquire patent claims that would cover

the 5-sided jar invention Vita-Mix copied from Blendtec.  As set forth below, Vita-Mix's

insatiable desire to rewrite the details of Brent miller's invention resulted in the addition of

significant new subject matter to the specification of Vita-Mix's continuation applications.

#### 1.    June 26, 2001 Provisional Application

The original Miller specification filed as the June 26, 2001 provisional application states

that the bottom surfaces of prior art blending containers are "typically formed flat with a

regularly-shaped perimeter, for example, a square or a circle, and the blades are rotatable in the

center of that regular configuration."  Exhibit 43 at 1:14-16.  In contrast to his view of the prior

---

[12] In March 2005, Blendtec formally notified Vita-Mix that the MP container infringed U.S. Patent No. 6,854,876, the parent of Blendtec's '117 and '842 patents.  Exhibit 44; Exhibit 1 at A13806:10-A13807:5.  *See also* United States District Court, District of Utah, Case No. 2:05-cv-209.  This initial case was voluntarily dismissed to pursue reexamination of the '876 patent.

art, Mr. Miller described his invention as using a blade assembly that is "not centered relative to the bottom surface" with a bottom surface that is either a regular shape (*i.e.*, "circular, square, rectangular") or "a **non-symmetrical** shape such as shown in Figs. 3, 4 and 6[.]" *Id*. at 4:17-23 (emphasis added).  He went on to cite the "non-symmetrical" configurations as a critical contributing factor to the purpose of the invention of creating a non-uniform flow, which results in improved blending.  *Id*. at 3:55-63.



The Miller provisional application only describes the configurations of Figs. 3, 4, and 6 as being "non-symmetrical."  *Id*. at 5:10-18.  It does not provide any relative dimensions of Figs. 3, 4, and 6 to support the presence of any symmetry whatsoever.  Nor does the Miller provisional application refer to the blade assembly being located on a line of symmetry.[13]  Instead, the provisional application indicates the opposite, requiring an "off-centered blade assembly" and a bottom surface that *lacks symmetry – i.e.*, "non-symmetrical."[14]

### 2.  ‘478 Patent History

On August 8, 2006, Vita-Mix's attorneys made several significant amendments to the description of Figures 3, 4, and 6, including the following statement that certain points in Figure 4 are "equidistant" from the blade axis, thus introducing the concept of symmetry *for the first time*.

---

[13] The only distance-related description in the Miller provisional application states that the "curved area 27" shown on Figs. 3, 4, and 6 is "nearest to the axis" of the blades.  *Id*. at 5:18-21.

[14] *See* Random House Webster's Unabridged Dictionary, at 1306 (2d Ed. 2001) (defining the prefix "non-" to mean the "negation or absence of something"); *id*. at 1926 (defining "symmetry" as "the correspondence in size, form, and arrangement of parts on opposite sides of a plane, line, or point") (Exhibit 63).

> In the example shown in Fig. 4, the ~~flattened area~~ surface 28 is shown ~~in Fig. 3 has been modified to provide for~~ as including as many as four generally flat walls 35, 36, 37, and 38.  Walls 35 and 38 intersect generally flat walls 33 at intersections 34, and the intersection of walls 35 and 36, and walls 37 and 38 form two lobes 29, rendering the overall configuration generally heart-shaped.  As shown, each lobe 29 is generally equidistant from the center of surface 28.  And in Fig. 6, the ~~flattened area~~ surface 28 has been rounded, as at 30, to provide an overall configuration of generally a teardrop shape.



**Original Figure 4 (Provisional App)**



**Figure 4 as amended (new numbers in red)**

Exhibit 45 at 2-4.

In the Utah litigation, Vita-Mix wanted to rely on the revised description of Figure 4 in the '478 patent to invalidate Blendtec's patents, ostensibly recognizing that the added content was not found in the original Miller '456 patent.  So Vita-Mix tried to use the '478 patent to imbue that new subject matter into the Miller '456 patent.  Prior to trial, Blendtec filed a motion *in limine* seeking exclusion of the '478 patent because the "amendment made by Vita-Mix to the '478 patent during prosecution constitutes new matter which is not supported by the '456 patent," and is therefore "not prior art."  Exhibit 46.  The Utah court did not rule on that motion prior to trial.  During trial, however, when Brent Miller and Vita-Mix's counsel attempted to introduce the '478 patent as allegedly "identical" to the Miller '456 patent, the district court *sustained* Blendtec's objection that the '478 patent was "not prior art," and precluded Vita-Mix from relying on the '478 patent.  Exhibit 1 at A13035-A13036.  The Federal Circuit affirmed, stating that the Utah court's instructions and rulings concerning the Miller patent were not

13

improper or unfair, because they "were tailored to enforcing its prior summary judgment order that excluded evidence that Vita-Mix failed to prove was prior art."  *K-TEC*, 696 F.3d at 1377.

### 3.    '004 Patent File History

Vita-Mix failed to acquire claims in the '478 patent that could arguably cover Blendtec's 5-sided jar invention, even with its amendments.  So Vita-Mix filed a second continuation application on June 25, 2007 to continue its revisions of Brent Miller's invention disclosure. This application ultimately became the asserted '004 patent.  Exhibit 47.  Vita-Mix's first strategy was to provoke an interference[15] with Blendtec's patents by copying the claims from Blendtec's '842 patent into Vita-Mix's application.  *See* Exhibits 48, 49.  In response, the Patent Office issued an office action on August 6, 2009 setting forth a variety of reasons why Vita-Mix's patent specification lacked the written description support for claims covering a rectangular blending jar with 4 side walls and a fifth truncated wall—*i.e.*, Blendtec's accused 5-sided Wildside jar.  Exhibit 50 at 9-13.  By March 2010, the Utah district court had rejected Vita-Mix's interfering patents claim, *see* Exhibit 34, and Vita-Mix decided to abandon its interference arguments at the Patent Office.

On September 23, 2009, more than 8 years after Brent Miller's original provisional application was filed, Vita-Mix's attorneys amended its application to present claims reciting a bottom surface having "only one line of symmetry" with the blade axis located "on the line of symmetry" and a bottom wall that is only "partially sloped."  Exhibit 51 at 3-7.  The Patent Office examiner rejected these new claims for lacking written description support in the specification, stating:

> There is no support for only a portion of the bottom surface 16 being sloped. Since the structural configuration of the "stepped regions" … is unknown and not depicted in the drawing Figures as

---

[15] *See* footnote 10, *supra*.

originally filed, it appears from the specification and drawings that the entire bottom surface 16 is sloped.

\* \* \* \*

No support was found for the subject matter relating to the bottom surface of the container having only one line of symmetry and the blade is rotatable about a vertical axis located on said line of symmetry.  This aspect of the claims relating to "symmetry" contradicts the instant disclosure which emphasizes the non-symmetrical perimeter or non-symmetrical bottom surface 16 deemed critical to the proper functioning and efficiency of the blender container … The amended claims now recite a bottom wall that is *necessarily* symmetrical in design rather than being non-symmetrical as described in the specification.  Furthermore, the specification describes that "the axis of rotation of blades 21, as defined by shaft 22, is not positioned on the centroid of the bottom surface 16" (p. 5, lines 20-23). This is not considered to support that the blade is rotatable about a vertical axis located on said line of symmetry since the specification does not relate the not being positioned on the centroid aspect to any particular geometric line of the container.

Exhibit 52 at 9 ("[T]he presently claimed subject matter appears incongruous with the essence of the disclosed invention.") (emphasis in original).  In response, Vita-Mix again amended the specification of its application by adding the following *new* disclosure to support its *new* claims.

As illustrated in the figures. the configurations in Figs. 3. 4. and 6 are not regular polygons and have a periphery defining only one line of symmetry (LS), and the vertical axis of the blade assembly is located on that line of symmetry and not centered relative to the bottom surface. In the configurations of Figs. 3. 4. and 6. the vertical axis is located closer to the curved surface 27 is closer to the vertical axis than corners 34 or lobes 29 that are opposite curved surface 27. As shown in Figs. 2 and 5, the vertical axis 22 is not centered relative to the side wall 27 at the height of the blade assembly.

\* \* \* \*

The bottom surface may be partially sloped and contain sloped regions and non-sloped regions. As shown in Figs. 2 and 5. for example. the sloped regions may lead to hub 23, which includes portions having a generally planar surface.

15

Exhibit 53 at 2-3.  Vita-Mix also revised the figures of the application to include, *for the first time*, a designated line of symmetry.



*Id.*[16]  The examiner's hand-written notes shown in the above figures indicate the examiner considered the line of symmetry to be an "added" element.  Although Vita-Mix contended that its amendments were not adding new matter, *see id.* at 13, the Patent Office examiner never expressly agreed with that position.  And because the priority date was not material to any of the prior art references relied on by the examiner to reject claims (as each reference predated the provisional application), the examiner did not further address Vita-Mix's amendments under the written description portion of the Patent Act (35 U.S.C. § 112, ¶ 1).[17]

The examiner did, however, continue to criticize Vita-Mix for adding new disclosure to its application, but those criticisms were made in the context of an indefiniteness argument under 35 U.S.C. § 112, ¶ 2.  *See* Exhibit 54 at 3-8; Exhibit 55 at 10-15; Exhibit 56 at 3-7.  Given the substantial nature of Vita-Mix's alterations to its specification, the examiner maintained his indefiniteness position, forcing Vita-Mix to appeal the issue to the Board.  *See* Exhibits 57-59.  On appeal, the Board informed the examiner that he had erroneously raised that issue—*i.e.*, Vita-Mix's amendments to the specification—under the wrong paragraph of § 112 and stated that

---

[16] *See also* Exhibit 64, which is a comparison of the specification of the '004 patent with the original specification of the provisional application, illustrating the extensive amendments Vita-Mix made in its continuation applications.

[17] *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008) (explaining the Patent Office does not make findings regarding priority dates "as a matter of course in prosecution," unless the filing date of the earlier application was actually needed to reject the claims, "for example, in the case of an interference or to overcome a reference" with an intervening priority date.).

8035144_3.docx

such arguments "should have been raised under a 35 U.S.C. § 112, first paragraph rejection (written description requirement)" in order to evaluate "whether a claimed invention is entitled to the benefit of an earlier priority date[.]"  Exhibit 60.  Given the examiner's procedural mistake in relying on the wrong statutory grounds, the Board reversed the rejection on that basis alone and did not address the substantive merits of the apparent written description/new matter issue.[18]  *Id.*  Just a few days after the Board's reversal, perhaps out of exhaustion from battling Vita-Mix *for seven years* on its continuation application, the examiner issued a notice of allowance for the claims without further comment on the *unresolved* priority date issue in Vita-Mix's continuation application.  *See* Exhibit 61.

### H.    BLENDTEC'S PRIOR ART ANTICIPATES THE '004 PATENT

Vita-Mix alleges in its Complaint that Blendtec's 5-sided Wildside jar, which was first sold in 2001, infringes the asserted claims of the '004 patent.  *See* Dkt. 1 at 4-9.  By virtue of this admission in the Complaint,[19] Vita-Mix cannot dispute that if the asserted '004 patent claims are not entitled to the June 26, 2001 provisional application date, the accused 5-sided Wildside jar and Blendtec's related patents are anticipatory prior art to the asserted claims rendering the claims invalid.  *See Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier."); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) (same, citing *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier.")); Exhibit 65.

---

[18] The statutory prohibition on new matter set forth in the statement, "No amendment shall introduce new matter into the disclosure of the invention," 35 U.S.C. § 132(a), is enforced through the written description requirement of 35 U.S.C. § 112, ¶ 1.  *See, e.g., Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1378-79 (Fed. Cir. 2008).

[19] Although Vita-Mix's allegation that the Wildside jar satisfies every limitation of the asserted claims is properly held against Vita-Mix as an admission for purposes of this Motion, Blendtec reserves the right to contest the presence of one or more claim limitations in the Wildside jar in later proceedings in this case if necessary.

## III.     ARGUMENT

### A.     VITA-MIX'S INFRINGEMENT CLAIMS ARE BARRED BY ISSUE PRECLUSION

"Issue preclusion acts to 'preclude[ ] relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*, 821 F.Supp.2d 948, 952 (N.D. Ohio 2011) (quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990)).  Four requirements must be met before issue preclusion applies: (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.  *Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (citing *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589–90 (6th Cir. 2009)).[20]

"Issue preclusion does not require that the parties have litigated the exact legal claim in the prior proceedings. What matters is the underlying issues of fact." *Georgia-Pacific*, 821 F.Supp.2d at 954.  In other words, "[t]he 'identity of issues' element requires that 'the key issue in both cases is the same[.]'" *Georgia-Pacific*, 701 F.3d at 1098 (quoting *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 908–09 (6th Cir. 2001)).  *See also Vigil v. The Walt Disney Co.*, 2003 WL 22016805 at *5 (N.D. Cal. 2003) ("Litigated issues, when their determination is essential to the judgment, may not be relitigated by the same parties even in an action on a different claim.") (applying issue preclusion to bar patent infringement action based on prior

---

[20] The Federal Circuit applies the same four-factor test for issue preclusion.  *See Biafora v. United States*, 773 F.3d 1326, 1333 (Fed. Cir. 2014).

judgment concerning different, but related patents). The underlying purpose of issue preclusion is to prevent "successive litigation of an issue of fact or law already litigated and resolved in a valid court determination essential to the prior judgment." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). The United States Supreme Court has explained that this doctrine guards against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979) (footnote omitted).[21] Thus, issue preclusion ensures that "once a legal or factual issue has been settled by the court after a trial in which it was fully and fairly litigated that issue should enjoy repose." *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 480 (Fed. Cir. 1991).

The test for issue preclusion is clearly met here. For six years, Blendtec and Vita-Mix vigorously litigated the Utah lawsuit to a final judgment that was affirmed on appeal. That judgment found that Vita-Mix willfully infringed Blendtec's patents and that the specification of the Miller '456 patent did not anticipate or render obvious Blendtec's patent claims covering its 5-sided jar invention. Exhibit 32. Blendtec's willful infringement claim was predicated on the fact that Vita-Mix copied the 5-sided container design from Blendtec, and that the 5-sided design was not derived from Brent Miller's inventions as disclosed in the Miller '456 patent. Conversely, Vita-Mix defended against the willful infringement charge by contending that Brent Miller invented the 5-sided jar design before Blendtec, rendering Blendtec's patent claims

---

[21] *See also Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."); *United States v. Mendoza*, 464 U.S. 154, 158 (1984) ("Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation."); *Ashe v. Swenson*, 397 U.S. 436, 443 (1970) ("When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.").

invalid.  Accordingly, in reaching the judgment of willful infringement and no invalidity, the Court and the jury *necessarily* concluded (a) that Blendtec's 5-sided jar design was patentably distinct from the inventions disclosed in the Miller '456 patent, (b) that Brent Miller did not invent the configuration of Blendtec's 5-sided blending container, and (c) that Vita-Mix copied the 5-sided design from Blendtec and did not derive it from Brent Miller's invention.  These factual findings are binding on the parties to this case, such that Vita-Mix *cannot prevail* on any claim that requires a finding that Blendtec's 5-sided jar practices the invention of Brent Miller.

Yet, that is exactly the factual predicate that Vita-Mix's infringement claims require. First, a finding of infringement with respect to the Wildside jar necessarily requires finding that Blendtec's 5-sided jar is actually Brent Miller's invention.  *See, e.g.,* 35 U.S.C. § 102(f) ("A person shall be entitled to a patent unless … he did not himself invent the subject matter sought to be patented.");[22] *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1403 (Fed. Cir. 1997) ("subject matter derived from another … is itself unpatentable to the party who derived it[.]"); *Madstad Engineering, Inc. v. U.S. Patent and Trademark Office*, 756 F.3d 1366, 1368 (Fed. Cir. 2014) ("The named inventor must have invented the invention independently and not derived the idea from another.").  Because it has been fully, fairly, and finally adjudicated that Vita-Mix copied the 5-sided jar design from Blendtec, and that Brent Miller's patent application does not disclose the 5-sided jar invention, Vita-Mix's claims are barred.

In addition, Vita-Mix has to establish that the '004 patent is entitled to the June 26, 2001 provisional application date to prevail in this action.  That is because the application for the asserted '004 patent was not filed until 2007, and the accused 5-sided jar was first sold six years earlier in 2001.  In other words, without the June 26, 2001 priority date, the accused infringing

---

[22] This is the former version of Section 102, which applies to all patents issuing from applications filed prior to March 16, 2013, including Vita-Mix's asserted '004 patent.

product (and Blendtec's patents) become prior art to the asserted patent claims, rendering the claims invalid.  Accordingly, Vita-Mix's infringement claims necessarily require a finding that Brent Miller's original provisional application shows that Brent Miller invented the accused 5-sided container design as of June 26, 2001.  *See TurboCare Division of Demag Delaval Turbomachinery Corp. v. General Electric Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001) (affirming summary judgment of invalidity for lack of written description; "No reasonable juror could find that [an appellant's] original disclosure was sufficiently detailed to enable one of skill in the art to recognize that [the appellant] invented what is claimed[.]").  Yet, such a finding is diametrically at odds with the adjudicated facts underlying the judgment in the Utah case—*i.e.*, that the Miller '456 patent does not disclose or even suggest Blendtec's 5-sided jar configuration as recited in Blendtec's patents.

Simply stated, the Utah case fully and finally adjudicated the fact that Brent Miller's original patent application did not disclose or suggest a square blending jar with a truncated corner (*i.e.*, Blendtec's 5-sided Wildside jar).  The prior case also finally adjudicated the fact that Brent Miller did not invent the design of Blendtec's 5-sided jar, and that Vita-Mix copied that design from Blendtec.  It follows that Vita-Mix is precluded as a matter of law from asserting infringement claims that, if successful, would result in a judgment that Blendtec's 5-sided jar is encompassed by Brent Miller's patented inventions stemming from his original June 26, 2001 application.  The Court should, therefore, dismiss Vita-Mix's infringement claim as barred by issue preclusion.

## B.  THE '004 PATENT IS NOT ENTITLED TO THE PRIORITY DATE OF THE PROVISIONAL APPLICATION AND IS INVALID

Beyond issue preclusion, the '004 patent claims are invalid because they rely on new subject matter added to the continuation applications and are, therefore, not entitled to the

original filing date of the provisional application as a matter of law.  "To obtain the benefit of the filing date of a parent application, the claims of the later-filed application must be supported by the written description in the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'" *Anascape, Ltd. v. Nintendo of America, Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) (quoting *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)).  "[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification[.]'"  *University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (quoting *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000)).  Stated differently, "[t]he purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not[.]"  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (reversing jury verdict of infringement, finding claims invalid as a matter of law for lack written description support in original parent application).

"The 'written description' requirement serves a teaching function, as a '*quid pro quo*' in which the public is given 'meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time.'"  *University of Rochester*, 358 F.3d at 922 (quoting *Enzo Biochem, Inc. v. Gen–Probe Inc.*, 323 F.3d 956, 963 (Fed. Cir. 2002)).  The Supreme Court explained long ago that the written description requirement is meant to "guard against prejudice or injury from the use of an invention which the party may otherwise innocently suppose not to be patented."  *Id*. at 924 (quoting *Evans v. Eaton*, 20 U.S. 356, 433–34 (1822)).  Thus, the requirement for "reasonable clarity" in the *original* specification demands that "one skilled in the art, reading the original disclosure, *immediately discern* the limitation at issue in the claims."

22

8035144_3.docx

*Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (citations and quotations omitted) (emphasis added).

It is the patent owner's burden to "come forward with evidence to prove entitlement to claim priority to an earlier filing date" when intervening prior art is presented that would render the asserted claims invalid without the earlier priority date.  *See PowerOasis*, 522 F.3d at 1305-06.  Because the Patent Office does not make findings regarding priority dates "as a matter of course in prosecution," the presumption of validity for an issued patent *does not extend to a patent's claim of an earlier priority date* unless the filing date of the earlier application was actually addressed and resolved during prosecution.  *Id*. at 1305 ("There would be no reason for the PTO to undertake what could be a very time consuming written description analysis simply to pronounce the effective filing date of each claim, absent some dispute over it during prosecution.").[23]  Although compliance with the written description requirement is a question of fact, it is amenable to summary judgment "in cases where no reasonable fact finder could return a verdict for the non-moving party."  *Id*. at 1307.  Indeed, because the written description issue "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art," *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010), "courts regularly resolve written description questions referencing solely the specification itself."  *Trading Technology Int'l, Inc. v. BCG Partners, Inc.*, 852 F.Supp.2d 1027, 1042 (N.D. Ill. 2012) (citing cases).[24]

---

[23] *See also Dynamic Drinkware, LLC v. National Graphics*, -- F.3d --, 2015 WL 5166366 at *4 (Fed. Cir., Sept. 4, 2015) ("a presumption that a patent is entitled to the benefit of the filing date of its provisional precursor … would be unsound because the PTO does not examine provisional applications as a matter of course; such a presumption is therefore not justified.").

[24] *See e.g., Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1347 (Fed. Cir. 2011) ("[a] patent also can be held invalid for failure to meet the written description requirement based solely on the face of the patent specification."); *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1339 (Fed. Cir. 2010) (finding an expert's conclusion "cannot override the objective content" of the specification at issue).

Because Blendtec has established that the asserted patent claims, without the benefit of the filing date of the provisional application, would be invalid based on the intervening prior art of the accused Wildside jar or Blendtec's related patents, *see* Dkt. 1 and Exhibit 65, Vita-Mix bears the burden to present evidence that proves the '004 patent claims are entitled to the provisional filing date. *See PowerOasis*, 522 F.3d at 1305-06.  Vita-Mix cannot do so.  Based on the four corners of the provisional application, no reasonable jury could find sufficient support for the "only one line of symmetry" claim limitations of the asserted claims.

During prosecution of the asserted '004 patent claims, Vita-Mix's attorneys pointed to Figures 3, 4, and 6 of Miller's specification as the basis for the claim limitations requiring "only one line of symmetry" and a blade assembly located on the one line of symmetry.  *See* Exhibit 53 at 13.[25]  This position, however, requires inferring that various points along the periphery of the bottom wall in those figures are equidistant to a hypothetical, undisclosed line passing through the blade axis.  Such a presumption is not permitted under the law.  Although figures in a patent application can serve as written description support in appropriate circumstances, the law is clear that "figures in a patent are not drawn to scale unless otherwise indicated[.]"  *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000).  The law "disfavor[s] … reading precise proportions into patent drawings which do not expressly provide such proportions."  *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005).  *See also In re Wright*, 569 F.2d 1124, 1127 (CCPA 1977) (rejecting Patent Office's decision to rely on "a comparison of the relative dimensions" in patent figures; "Absent any written description in the specification of quantitative values, arguments based on measurement of a drawing are of little

---

[25] The Patent Office never expressly agreed with this position, because the priority date of the asserted claims was never material to any of the prior art that was relied on to reject any of the proposed claims during prosecution.  All prior art relied on by the examiner predated even the provisional application.  *See PowerOasis*, 522 F.3d at 1305 ("Since the PTO did not make a determination regarding priority, there is no finding for the district court to defer to.").

8035144_3.docx

value.").  This principle applies in the context of evaluating a patent owner's claim to the earlier

filing date of a related application.  *See, e.g., Go Medical Industries Pty., Ltd. v. Inmed Corp.*,

471 F.3d 1264, 1271-72 (Fed. Cir. 2006) (finding patent drawings in parent application

insufficient to support dimensional claim limitations "such that Go is not entitled to claim the

priority date of that application.").

The patent owner in *Hockerson* argued that the figures in the patent specification relating

to the design of an athletic shoe clearly depicted "a groove that is wider than the fins" on the

sole.  *Id.*  The argument was rejected with the following reasoning.

> HHI's argument is unavailing.  The '792 patent is devoid of any
> indication that the proportions of the groove and the fins are drawn
> to scale.  HHI's argument thus hinges on an inference drawn from
> certain figures about the quantitative relationship between the
> respective widths of the groove and fins.  Under our precedent,
> however, it is well established that patent drawings do not define
> the precise proportions of the elements and may not be relied on to
> show particular sizes if the specification is completely silent on the
> issue.

*Id.*[26]

In the *Anascape* case, the Federal Circuit found the asserted patent claims were not

entitled to the filing date of the parent application despite the patent owner's reliance on the

original patent figures for support.  *See* 601 F.3d at 1341 (reversing jury verdict of infringement

and finding the asserted claims invalid).  The patent owner argued that the amendments made to

---

[26] *See also Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1300 (Fed. Cir. 2014) (affirming district court's conclusion that claim construction position was frivolous, despite patent owner's argument that the "relative sizes shown in the drawings rebut the Court's finding"; citing *Hockerson* to state that "patent drawings do not define the precise proportions of elements"); *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1351 (Fed. Cir. 2013) (finding patent figures could not be relied on where the figures do not evidence actual dimensions); *Cummins-Allison Corp. v. SBM Co., Ltd.*, 484 Fed.Appx. 499, 507 (Fed. Cir. 2012) (finding support in earlier application based on comparison of relative dimensions from patent figures because written description provided express statements of dimensions to support such an analysis); *Franklin Elec. Co., Inc. v. Dover Corp.*, 2007 WL 634430 at *6 (Fed. Cir. 2007) (finding ambiguity in patent figures in construing claim language; "Admittedly, figure 7 appears to depict contact between the right side of the spill connector and the upward extension" but "there is no mention of contact" in the written description; "We need not resolve the ambiguity here because patent figures are generally not intended to convey such detail.").

8035144_3.docx

the written description during prosecution were not "new matter" because the original figures depicted the claimed subject matter, and that the original description was merely a "preferred embodiment" that "did not disclaim the broader scope" of the asserted claims.  *Id*. at 1336-39. The Federal Circuit disagreed, concluding that the patent owner's *post hoc* interpretation of the figures "[did] not match the description in the patent."  *Id*. ("A patentee is not deemed to disclaim every variant that it does not mention. However, **neither is a patentee presumed to support variants that are not described**.") (emphasis added).

> Whether or not the inventor could have described the '525 invention more broadly, "[i]t is not sufficient for purposes of the written description requirement of §112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose."

*Id*. at 1340 (quoting *Lockwood*, 107 F.3d at 1572).

The same principles apply here.  Vita-Mix's position hinges on drawing an inference from the figures in the provisional application about the quantitative relationship between the perimeter of the bottom wall and a hypothetical (undisclosed) line through the blade axis.  In stark contrast to the inferences Vita-Mix urges, the express teachings of the provisional application describe the bottom wall perimeter as being "non-symmetrical."  Thus, the only clear teaching in Brent Miller's original description is that there is an *absence of symmetry* in Figures 3, 4, and 6, precluding any reasonable inference of symmetry as Vita-Mix now claims.  As the Federal Circuit explained in *Anascape*, it is not enough for Vita-Mix to argue that Miller "could have" described Figures 3, 4, and 6 as having "only one line of symmetry" in the original application.  Here, Miller did not only fails to describe his invention as requiring a single line of symmetry, he did the opposite by describing the figures as *lacking symmetry* and touting the processing benefits of asymmetry.  Brent Miller's provisional application does not provide

26

"sufficient detail that one skilled in the art can clearly conclude" that Miller invented the "only one line of symmetry" claim limitations as of June 26, 2001.  *Anascape*, 601 F.3d at 1335.

It is also not enough that the provisional application generally refers to using an "off-centered blade assembly" with "a regularly configured or symmetrical bottom surface."  Exhibit 43 at 5.  Such a broad disclosure does not adequately describe the infinite "possible permutations" encompassed within that category for purposes of the written description requirement.[27]  *University of Rochester*, 358 F.3d at 921 ("generalized language may not suffice if it does not convey the detailed identity of an invention.").  The Federal Circuit has explained:

> [O]ne cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention.  In order to satisfy the written description requirement, the blaze marks directing the skilled artisan to that tree must be in the originally filed disclosure.

*Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1326-27 (Fed. Cir. 2000).[28]  Even if Vita-Mix argues that the broad "forest" of concepts disclosed in the provisional could encompass the "tree" of a bottom surface having "only one line of symmetry," that particular tree was not singled out in the original disclosure as a material aspect of the invention.  Brent Miller *never* described his invention (whether in the application itself, during deposition or trial testimony, or in his contemporaneous notes) as using a bottom surface with *only one line of symmetry* and a blade assembly *located on that line of symmetry*.  That was a construct of Vita-Mix's attorneys

---

[27] Mr. Miller claimed that his general concept of an off-centered blade potentially encompassed an "infinite" number of possible container configurations that he did not describe in his patent application.  Exhibit 62 at 189:13-22 ("As I indicated earlier, once you have the basic non-centroid axis area thing going, there is an infinite number of shapes that you could do. And shapes that are in here, again, are shapes that I wanted to investigate analytically and experimentally to push the envelope to see where the limits were.").

[28] *See also Powdermagic, Ltd. v. Rossignol Ski Co.*, 2005 WL 3981617 at *3 (D. Utah 2005) (applying *Purdue Pharma* to enter summary judgment of invalidity for lack of written description support).

8035144_3.docx

introduced for the first time in 2009[29] in a desperate effort to justify, after the fact, Vita-Mix's blatant misappropriation of Mr. Dickson's 5-sided jar invention over a decade ago.

In addition, Vita-Mix cannot contend that the "only one line of symmetry" limitations are inherent in the original provisional application. "The very essence of inherency is that one of ordinary skill in the art would recognize that a reference *unavoidably* teaches the property in question." *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1383 (Fed. Cir. 2009) (emphasis added) (citing *In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981) ("Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient."); *Hitzeman v. Rutter*, 243 F.3d 1345, 1355 (Fed. Cir. 2001) ("an inherent property must necessarily be present in the invention ... and it must be so recognized by persons of ordinary skill in the art")).  The "only one line of symmetry" limitations are not unavoidably and necessarily present in the provisional application.  First, the provisional application refers to bottom surfaces that are "circular, square, [and] rectangular," none of which have *only one* line of symmetry.  It also discloses the configurations of Figures 3, 4, and 6, describing them as "non-symmetrical."  Nothing in the provisional application indicates that there is *necessarily and unavoidably* a single line of symmetry that runs through the location of the blade axis in Figures 3, 4, and 6 or that Mr. Miller's invention *requires* one—and only one—line of symmetry.  Simply contending that Figures 3, 4, and 6 appear as if they *might include* a single line of symmetry, or that those figures would make such a feature obvious, is **<u>not enough</u>** to satisfy the written description requirement as a matter of law. *See Agilent*, 567 F.3d at 1383 (granting summary judgment of no written description support and

---

[29] Vita-Mix's August 2006 amendment to the specification of the '478 patent arguably introduced the "one line of symmetry" concept by referencing two points as "equidistant" to the blade axis.  However, whether it was introduced in the 2006 amendment or the 2009 amendment is not material.  The accused Blendtec 5-sided container was first sold in 2001, predating both amendments by several years.

reversing Patent Office Board decision to the contrary; that the disclosed structure "might include" or "might result" in the asserted claim limitation "is insufficient under this court's precedent to establish inherency."); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998) (reversing jury verdict finding written description support in parent application; "A disclosure in a parent application that merely renders the later-claimed invention obvious is not sufficient to meet the written description requirement; the disclosure must describe the claimed invention *with all its limitations*.") (emphasis added).[30]

It is not surprising that Vita-Mix added new subject matter to its continuation applications before it could justify patent claims covering a design it did not invent, but copied from its competitor.  Such was the result under similar circumstances in *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, 2012 WL 6562220 (E.D. Va. Aug. 13, 2012), *aff'd* at 542 F.3d 1363 (Fed. Cir. 2008).  There, Hamilton Beach filed a "continuation application, expressly for the purpose of writing claims to cover Sunbeam's Cook & Carry" slow cooker.  *Id*. at *8.  Because Sunbeam's Cook & Carry product included a slightly different latching mechanism, Hamilton Beach amended the written description relating to the "clip" latching mechanism in its continuation application.  *Id*. at *9.  The Eastern District of Virginia rejected all of Hamilton Beach's arguments as to why the "alternative phrasing of the 'clip' language" did not add new matter to the specification.  *Id*. at *10-11.  The Virginia court's analysis is instructive here:

> Sunbeam's argument, which the Court accepts, is elegant in its simplicity: Hamilton Beach, by its own admission, wrote claims to cover Sunbeam's Cook & Carry.  In doing so, it had to redefine both the meaning and location of the "clip," injecting new matter into the '928 patent to support its broader claims, as Sunbeam's "clip" was the '831's antithesis.  Consequently, Hamilton Beach

---

[30] *See also Lockwood*, 107 F.3d at 1571-72 (it is not enough that the later claimed subject matter "would be obvious over what is expressly disclosed" in the original application; "[e]ntitlement to a filing date … extends only to that which is disclosed.").

> cannot meet its burden to establish priority to the filing date of the
> '831 application.

*Id* at *12.

Blendtec advances the same elegantly simple argument: Vita-Mix filed a continuation application targeting Blendtec's 5-sided container, but was forced to make significant amendments to the written description in order to justify the claims it sought, thereby injecting new matter into the specification. Accordingly, the '004 patent claims are not entitled to the June 26, 2001 provisional application date, but are "at best" entitled only to the actual continuation filing date: June 25, 2007. *Agilent*, 567 F.3d at 1383 ("If not supported in the parent application, fundamental fairness requires that the claims to new matter receive, at best, the filing date of the continuing application."). The accused 5-sided jar and related Blendtec patents are, therefore, prior art to the asserted patent claims rendering them invalid. Dkt. 1; Exhibit 65; *Bristol-Myers*, 246 F.3d at 1378 ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier."); *Tronzo*, 156 F.3d at 1158 (reversing jury verdict; "Because claims 1 and 9 are not entitled to the filing date of the '262 patent's parent application and are anticipated by intervening prior art, we reverse the district court's judgment[.]"). The Court should, therefore, enter summary judgment in Blendtec's favor, finding Vita-Mix's asserted patent claims invalid as a matter of law.

## IV.    CONCLUSION

In view of the foregoing, Blendtec respectfully asks the Court to grant this Motion and enter summary judgment that (a) Vita-Mix's patent infringement claims are barred by issue preclusion, and (b) the claims of the '004 patent are not entitled to the June 26, 2001 provisional application date and are, consequently, anticipated by the accused 5-sided blending jar and Blendtec's patents and invalid.

8035144_3.docx

Pursuant to Local Rule 7.1(f), the undersigned hereby certifies that this case has been assigned to the "complex" case management track under the Court's Case Management Order (Dkt. 25), and that the following memorandum, exclusive of the table of context, table of authorities and cover sheet, complies with the page limitations for dispositive motions under the complex case track.

Dated this 5th day of October, 2015.

HOLLAND & HART LLP

By: */s/ Mark A. Miller*
    Brett L. Foster (*Pro Hac Vice*)
    Mark A. Miller (*Pro Hac Vice*)
    L. Grant Foster (*Pro Hac Vice*)
    222 S. Main St., Suite 2200
    Salt Lake City, UT 84101
    Telephone: (801) 799-5800
    Facsimile: (801) 364-9124
    Email: bfoster@hollandhart.com
          gfoster@hollandhart.com
          mmiller@hollandhart.com

    Kyle B. Fleming
    RENNER OTTO
    1621 Euclid Avenue
    Cleveland, OH 44115
    Telephone: 216-621-1113
    Facsimile: 216-621-6165
    Email: kfleming@rennerotto.com

8035144_3.docx

## CERTIFICATE OF SERVICE

I certify that on October 5, 2015 I served a copy of the foregoing document to the following by

☐    U.S. Mail, postage prepaid
☐    Hand Delivery
☐    Fax
☒    Electronic Service by LexisNexis File & Serve


Nikolaus A. Woloszczuk
Patricia Young
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
nick.woloszczuk@lw.com
patricia.young@lw.com

David K. Callahan
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
david.callahan@lw.com

Hugh E. McKay
Tracey L. Turnbull
Brodie M. Butland
PORTER, WRIGHT, MORRIS & ARTHUR
950 Main Avenue, Suite 500
Cleveland, Ohio  44113
hmckay@porterwright.com
tturnbull@porterwright.com
bbutland@porterwright.com


                              /s/  Mark A. Miller

8035144_3.docx