# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation, | ) ) ) ) | Civil Action No.: 1:15-cv-01118-PAG |
| | ) | Judge: Hon. Patricia A. Gaughan |
| Plaintiffs, | ) ) | VITA-MIX'S OPPOSITION TO |
| | ) | BLENDTEC'S MOTION FOR SUMMARY |
| v. | ) ) | JUDGMENT RE: ISSUE PRECLUSION AND PRIORITY DATE |
| Blendtec, Inc., | ) ) | |
| Defendant. | ) ) | |

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF THE ARGUMENT ...................................................................1

II.  FACTUAL BACKGROUND ........................................................................3

    A.   The Miller Patent Family .............................................................3
    B.   The Utah Litigation Involving Blendtec's Patents And Vita-Mix's
        Products Is Not Relevant To This Case .........................................5

III. LEGAL STANDARD .................................................................................5

    A.   Blendtec Cannot Meet Its Burden Of Proving That The Asserted Claims
        Are Not Entitled To The Provisional's Priority Date .................................5

IV.  THE '004 PATENT IS ENTITLED TO THE 2001 PRIORITY DATE OF ITS
    PROVISIONAL APPLICATION ...................................................................7

    A.   Blendtec Bears The Burden Of Proving That The Asserted Claims Of The
        '004 Patent Are Not Entitled To The Provisional's Priority Date ...........7
    B.   The Provisional Application Provides Written Description Support For
        The Asserted Claims Of The '004 Patent ......................................8
        1.   The provisional provides sufficient written description support;
            figures alone are sufficient...........................................9
        2.   Contrary to Blendtec's argument, the provisional does not teach
            away from the single line of symmetry limitation and the text
            supports the single line of symmetry. .............................13
        3.   The '004 Patent's file history confirms the '004 Patent is entitled
            to the provisional's priority date. .................................15
        4.   Blendtec ignores controlling Federal Circuit precedent and
            misapplies the law....................................................17
        5.   The single line of symmetry is not "missing descriptive matter,"
            and it is inherently disclosed by the figures in the provisional.................19
        6.   Vita-Mix's continuation applications do not contain any "new
            matter" and that inquiry is irrelevant here. ..............................20
    C.   Blendtec's Patents And Products Are Not Prior Art To The '004 Patent
        And Do Not Anticipate The '004 Patent.........................................23

V.   VITA-MIX'S CLAIMS ARE NOT BARRED BY ISSUE PRECLUSION ...................24

    A.   Legal Standard ......................................................................24
    B.   The Prior Litigation Did Not Resolve Any Issue Of Fact Pertinent To The
        Validity Of The '004 Patent Or Blendtec's Infringement .........................25
        1.   The determination that Blendtec's patent claims are not invalid has
            no bearing on the validity or infringement of the '004 Patent. .................25

i

2.     The prior litigation did not determine whether the invention and asserted claims of the '004 Patent cover the configuration of Blendtec's 5-sided blending container.........................................................27

3.     Blendtec's accused products can simultaneously embody Blendtec's patents while also embodying and infringing Vita-Mix's '004 Patent.......................................................................................28

4.     The determination in the prior litigation that Vita-Mix's accused product was not "derived" from the '004 patentee's work is not relevant...................................................................................................29

VI.     CONCLUSION........................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace and Agric. Implement Workers, UAW*,
97 F.3d 155 (6th Cir. 1996) .................................................................................. 24

*All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*,
309 F.3d 774 (Fed. Cir. 2002) .............................................................................. 12

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003) ............................................................................. 8

*Anascape, Ltd. v. Nintendo of Am., Inc.*,
601 F.3d 1333 (Fed. Cir. 2010) ........................................................... 6, 11, 12, 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................... 6

*Application of Wright*,
569 F.2d 1124 (CCPA 1977) ................................................................................ 18

*Ariad Pharm., Inc. v. Eli Lilly and Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc) ............................................... 6, 8, 9, 20

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
365 U.S. 336 (1961) ............................................................................................. 12

*Asetek Danmark A/S v. CMI USA, Inc.*,
No. 13-CV-00457-JST, 2015 WL 1848967 (N.D. Cal. Apr. 21, 2015) .................. 6

*Autogiro Co. of Am. v. U.S.*,
384 F.2d 391 (Ct. Cl. 1967) ................................................................................... 9

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996) ....................................................................... 28, 29

*Brooktree Corp. v. Adv. Micro Devices, Inc.*,
977 F.2d 1555 (Fed. Cir. 1992) ..................................................................... 16, 21

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
986 F. Supp. 2d 574 (W.D. Pa. 2013) ................................................................. 29

*Cmmw. Sci. and Indus. Research Org. v. Buffalo Tech. (USA), Inc.*,
542 F.3d 1363 (Fed. Cir. 2008) ........................................................................... 21

iii

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
    948 F.2d 1264 (Fed. Cir. 1991) ........................................................ 19

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
    291 F.3d 1317 (Fed. Cir. 2002) ................................................ 11, 12

*Ctr. Transport, Inc. v. Four Phase Sys.*, Inc.,
    936 F.2d 256 (6th Cir. 1991) ........................................................ 24

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
    No. 2015-1214, 2015 WL 5166366 (Fed. Cir. Sept. 4, 2015) ................ 22

*Emsat Adv. Geo-Location Tech., LLC v. Cellco P'ship*,
    No. 4:08-CV-816, 2014 WL 4925772  (N.D. Ohio Sept. 30, 2014) ........ 14

*Go Med. Indus. Pty., Ltd. v. Inmed Corp.*,
    471 F.3d 1264 (Fed. Cir. 2006) ...................................................... 18

*Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*,
    2012 WL 6562220 (E.D. Va. Aug. 13, 2012) .................................. 23

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000) ...................................................... 18

*In re Driscoll*,
    562 F.2d 1245 (CCPA 1977) ........................................................ 12

*In re Skvorecz*,
    580 F.3d 1262 (Fed. Cir. 2009) ...................................................... 9

*In re Wertheim*,
    646 F.2d 527 (CCPA 1981) .......................................................... 22

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008) ...................................................... 28

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) ...................................................... 6

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
    381 F.3d 1142 (Fed. Cir. 2004) ...................................................... 11

*Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*,
    590 F.3d 1326 (Fed. Cir. 2010) ...................................................... 14

*Kridl v. McCormick*,
    105 F.3d 1446 (Fed. Cir. 1997) ...................................................... 4

*Krippelz v. Ford Motor Co.*,
  667 F.3d 1261 (Fed. Cir. 2012) ................................................. 26

*K-Tec, Inc. v. Vita-Mix Corp.*,
  696 F.3d 1364 (Fed. Cir. 2012) .............................................. 5, 26

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005) ............................................. 8, 12

*Medichem, S.A. v. Rolabo, S.L.*,
  437 F.3d 1157 (Fed. Cir. 2006) ................................................. 27

*Microsoft Corp. v. i4i Ltd. P'ship.*,
  131 S. Ct. 2238 (2011) ............................................................... 7

*Norian Corp. v. Stryker Corp.*,
  363 F.3d 1321 (Fed. Cir. 2004) ................................................. 16

*Nystrom v. TREX Co., Inc.*,
  424 F.3d 1136 (Fed. Cir. 2005) ................................................. 18

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................. 28

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) ............................................. 8, 12

*Prima Tek II, L.L.C. v. A-Roo Co.*,
  222 F.3d 1372 (Fed. Cir. 2000) ................................................. 29

*Rexnord Corp. v. Laitram Corp.*,
  274 F.3d 1336 (Fed. Cir. 2001) ................................................. 28

*RF Del., Inc. v. Pacific Keystone Techs., Inc.*,
  326 F.3d 1255 (Fed. Cir. 2003) ................................................. 24

*Schering Corp. v. Amgen Inc.*,
  222 F.3d 1347 (Fed. Cir. 2000) ................................................. 21

*Schumer v. Lab. Comput. Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002) ................................................... 7

*SDS USA Inc. v. Ken Specialties Inc.*,
  122 F. Supp. 2d 533 (D.N.J. 2000) ........................................... 20

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
  753 F.3d 1291 (Fed. Cir. 2014) ................................................. 18

v

*Spansion, Inc. v. Int'l Trade Com'n*,
   629 F.3d 1331 (Fed. Cir. 2010) ................................................................. 4

*SRI Int'l v. Matsushita Elec. Corp.*,
   775 F.2d 1107 (Fed. Cir. 1985) ............................................................... 28

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008) ............................................................ 7, 8

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) ............................................................... 19

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
   264 F.3d 1111 (Fed. Cir. 2001) ................................................................. 9

*Utter v. Hiraga*,
   845 F.2d 993 (Fed. Cir. 1988) ................................................................ 27

*Vas-Cath Inc. v. Mahurkar*,
   935 F.2d 1555 (Fed. Cir. 1991) ................................................. 9, 10, 11, 12

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
   944 F.2d 870 (Fed. Cir. 1991) ................................................................ 29

*Waldemar Link, GmbH & Co. v. Osteonics Corp.*,
   32 F.3d 556 (Fed. Cir. 1999) ................................................................. 20

## STATUTES

35 U.S.C. § 102 ....................................................................................... 26

35 U.S.C. § 103(a) (2006) ....................................................................... 26

35 U.S.C. § 112 .................................................................................... 6, 16

35 U.S.C. § 120 ......................................................................................... 6

35 U.S.C. § 132(a) .................................................................................. 20

35 U.S.C. § 282 ......................................................................................... 7

## RULES AND REGULATIONS

37 CFR §1.601(j) .................................................................................... 27

37 CFR §41.202(a)(3) .............................................................................. 27

Fed. R. Civ. P. 56(a) ................................................................................. 6

## I.    SUMMARY OF THE ARGUMENT

The principal issue before this Court is whether the claims of Vita-Mix's patent, U.S. Patent No. 8,753,004 (the "'004 Patent"), are entitled to the priority date of its provisional application, as shown on the face of the issued patent. This inquiry requires no more than comparing the elements of the '004 Patent's claims to the disclosure of the provisional application. Vita-Mix demonstrates entitlement to the provisional priority date using just *two figures* from that provisional; the chart below aligns the elements of exemplary claim 1 of Vita-Mix's '004 Patent in the left column, with two figures from the provisional application in the right column:

| Claim Element | Disclosure Of Claim Element In Provisional Application No. 60/301,081 |
|---|---|
| **Claim 1.**  A container for a blender comprising a bottom surface that is at least partially sloped, |  |
| the bottom surface having a periphery defining only one line of symmetry<br><br>and at least five sides on the periphery of the bottom surface, |  |

1

| Claim Element | Disclosure Of Claim Element In Provisional Application No. 60/301,081 |
|---|---|
| and a single blade assembly for chopping and blending foods extending from the bottom surface<br><br>and rotatable about a vertical axis at the center of the blade assembly, |  |
| the vertical axis located on the line of symmetry,<br><br>wherein the vertical axis is not centered relative to the bottom surface. |  |

Giving legal weight to the maxim that "a picture is worth a thousand words," the law holds that patent drawings can provide the requisite "written description" support for claims. Blendtec avoids this simple and fundamental principle, taking this Court instead on the detour of a prior litigation between the parties that was heard before a district court in Utah and was resolved more than 3 years ago. That case did not involve the '004 Patent, which issued years after the prior case concluded. No issue or fact decided in the prior litigation bears on the validity of Vita-Mix's patent or Blendtec's infringement, and Vita-Mix is not precluded from maintaining its claims against Blendtec.

2

Blendtec simply does not meet its burden to show that the provisional would not convey to a **person of skill in the art** that the '004 Patent inventor had possession of the claimed subject matter as of the filing date of the provisional. Moreover, Blendtec falls well short of meeting its burden to prove that there is no genuine dispute as to any material fact and that it is entitled to a judgment as a matter of law on either the priority date of Vita-Mix's '004 Patent, or on "issue preclusion." This Court should deny Blendtec's motion.

## II.    FACTUAL BACKGROUND

### A.    The Miller Patent Family

Brent Miller, a NASA engineer for more than 30 years, led the Vita-Mix research and development project that resulted in provisional application no. 60/301,081 ("the provisional"). The inventions described in the provisional are blender containers that overcome the problems in the art encountered when blending viscous liquids. Exh. 1 at 1-2 (prov.).[1] Prior art blenders had difficulty blending viscous liquids, such as frozen drinks, because a uniform flow would develop in the container and lead to the formation of an "ice bridge" over the blades such that the blades would spin uselessly in an "air pocket"—without blending the remaining contents. *Id*. at 1-2, 4.

Mr. Miller solved this problem with an inventive combination of alterations to the standard blender container shape that disrupts the uniform flow of a viscous liquid and prevents the formation of an ice bridge. Generally speaking, those alterations included adding a slope to the bottom surface, displacing the blade assembly from the center of the bottom surface, and employing a bottom surface with a non-standard shape, as opposed to a circle or a square. *Id*. at 2.

---

[1] Citations to "Exh." are to exhibits attached to the declaration of Nikolaus A. Woloszczuk in support of Vita-Mix's Opposition to Defendant Blendtec's Motion For Summary Judgment Re: Issue Preclusion and Priority Date.

Three patents have since issued from and claim priority to the provisional; U.S. Patent Nos. 7,063,456 (the "'456 Patent"); 7,267,478 (the "'478 Patent); and the '004 Patent. Exhs. 2, 3, and 4. There is no dispute that Vita-Mix—through Mr. Miller—was first. Mr. Miller and his co-inventors (collectively "patentee") filed the provisional on June 26, 2001—which was *before* the priority date of Blendtec's own patents.[2] Further, hundreds of pages of contemporaneous documents and sworn testimony confirm that Mr. Miller had begun the process of conceiving of, and reducing his invention to practice as early as 1998—long before Thomas Dickson—according to Blendtec—used a band saw and glue to "serendipitously" arrive at his container design.[3] Mot. at 3-4.

The '004 Patent's application was filed in June 2007 and (as noted above) claims priority to the 2001 Miller provisional. The Patent Office thoroughly examined the application over the course of several years. As part of that examination process, the examiner objected to some claims—on grounds similar to those Blendtec now raises—alleging they lacked written description support. Mot. Ex. 52 at 5-10 (Feb. 17, 2010 Office Action). However, Vita-Mix's response convinced the examiner that the claims *did* have written description support and the

---

[2] During the Utah case, Blendtec did not dispute that the '456 Patent, which claims priority to the provisional, was prior art to the Blendtec patent that it now alleges anticipates the '004 Patent. *See e.g.,* Memorandum In Support of Defendant Blendtec's Motion For Summary Judgment Re: Issue Preclusion and Priority Date (D.I. 28) ("Mot.") at 1; Declaration of Mark A. Miller (D.I. 29) Exhibit ("Mot. Ex.") 1 at 2 (82:15-18).

[3] Although the Utah court found that these materials were not prior art to Blendtec's patents (Mot. at 9), they are competent evidence to demonstrate conception and reduction to practice. *Spansion, Inc. v. Int'l Trade Com'n*, 629 F.3d 1331, 1356 (Fed. Cir. 2010) (conception date can be corroborated with evidence including oral testimony from a non-inventor and laboratory notebooks); *Kridl v. McCormick*, 105 F.3d 1446, 1450 (Fed. Cir. 1997) ("[T]here is no final single formula that must be followed in proving corroboration. Rather, the sufficiency of corroborative evidence is determined by the 'rule of reason.' Accordingly, a tribunal must make a reasonable analysis of all of the pertinent evidence to determine whether the inventor's testimony is credible.") (citations and quotation marks omitted).

examiner withdrew those grounds for rejection. *Compare* Mot. Ex. 53 at 13-16 (May 21, 2010 Response to Office Action) *with* Mot. Ex. 54 (August 17, 2010 Non-Final Rejection). The '004 Patent's application was ultimately reviewed by three Administrative Law Judges of the Patent Trial and Appeal Board ("the Board"), who held that the examiner's remaining objections were baseless. Mot. Ex. 60. The Patent Office issued a Notice of Allowance in April 2014 and the '004 Patent issued in June 2014. Mot. Ex. 61; Exh. 4.

### B. The Utah Litigation Involving Blendtec's Patents And Vita-Mix's Products Is Not Relevant To This Case

In 2006, Blendtec sued Vita-Mix in the District of Utah alleging infringement of Blendtec's patents. Vita-Mix counterclaimed alleging that Blendtec's patents were invalid and not infringed. Blendtec ultimately prevailed at trial and the district court's judgment was upheld by the Federal Circuit. *K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364 (Fed. Cir. 2012).

That case has little to do with the matter now before this Court. The Utah case involved Blendtec's patents and whether Vita-Mix's accused products infringed them. Blendtec's patents are not asserted in this case and Vita-Mix has not made its previously accused products for years. This case involves Vita-Mix's patent and whether Blendtec's accused products infringe it. Although Vita-Mix disagrees with many of Blendtec's characterizations of the Utah case, it will not burden this Court with a point-by-point rebuttal on issues irrelevant to this motion. As shown below, none of the issues or facts decided in that case bear on the validity of the '004 Patent or Blendtec's infringement of it.

### III. LEGAL STANDARD

### A. Blendtec Cannot Meet Its Burden Of Proving That The Asserted Claims Are Not Entitled To The Provisional's Priority Date

To prevail on its summary judgment motion, Blendtec must show that there is "no genuine dispute as to any material fact" and that "[it] is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(a). But "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [Vita-Mix's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is only appropriate if no reasonable jury could find for the nonmoving party. *Id.* at 248.

Blendtec's burden is high. The Patent Act provides: "An application for patent for an invention disclosed in the manner provided by [the first paragraph of this title] in an application previously filed in the United States ... shall have the same effect, as to such invention, as though filed on the date of the prior application . . . ." 35 U.S.C. § 120. To obtain the benefit of a parent application's priority date under section 120, the claims of the later-filed application must be supported by the written description in the parent application. *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010).

In turn, the written description requirement of 35 U.S.C. § 112 paragraph 1, "requires an objective inquiry into the four corners of the ***specification from the perspective of a person of ordinary skill in the art***." *Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) .[4] Written description support exists where the disclosure "reasonably conveys to those ***skilled in the art*** that the inventor had possession of the claimed subject matter as of the filing date." *Id.* "[C]ompliance with the written description requirement is a question of fact." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072 (Fed. Cir. 2005); *see also Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-CV-00457-JST, 2015 WL 1848967, at *15 (N.D. Cal. Apr. 21, 2015) ("Because the issue is one of fact, it is generally tried to a jury.").

To prevail, Blendtec bears the burden of production of going forward with "sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted,

---

[4] All emphases added unless otherwise noted.

prior art that is dated earlier than the apparent effective date of the asserted patent claim." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1328-1329 (Fed. Cir. 2008). Only where Blendtec does so, does Vita-Mix have "the burden of going forward with evidence and argument to the contrary." *Id.* at 1329. But the "ultimate burden" to prove invalidity "never shifts" from Blendtec, which bears the burden of persuasion to prove with clear and convincing evidence that the challenged claims are not entitled to an earlier filing date. *Id.*

The '004 Patent claims are presumed valid. 35 U.S.C. § 282. To invalidate a patent claim as anticipated, Blendtec bears "a heavy burden of persuasion" and must prove its defense by "clear and convincing" evidence. *Microsoft Corp. v. i4i Ltd. P'ship.*, 131 S. Ct. 2238, 2242, 2246 (2011). "The burden of proving invalidity on summary judgment is high." *Schumer v. Lab. Comput. Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002). "Whether a patent is anticipated … is a question of fact. *Id.* at 1315 (citation omitted). Therefore to prevail on summary judgment Blendtec must prove that there are no genuine disputes as to any material fact under the clear and convincing standard.

## IV. THE '004 PATENT IS ENTITLED TO THE 2001 PRIORITY DATE OF ITS PROVISIONAL APPLICATION

The asserted claims of the '004 Patent are entitled to the 2001 priority date of its provisional application, and Blendtec cannot meet its heavy burden to show otherwise.

### A. Blendtec Bears The Burden Of Proving That The Asserted Claims Of The '004 Patent Are Not Entitled To The Provisional's Priority Date

Blendtec bears the ultimate burden of proving invalidity, and must prove that there are no genuine disputes of material fact as to whether the '004 Patent is not entitled to the earlier filing date. Yet, Blendtec attempts to improperly shift the burden of establishing the '004 Patent's priority date to Vita-Mix. *See, e.g.,* Mot. at 20 ("Vita-Mix has to *establish* that the '004 patent is entitled to the June 26, 2001 provisional application date to prevail in this action."). That is not

7

the law. Blendtec can bring the priority date of the '004 Patent's claims into question by coming forward with art that allegedly anticipates and also pre-dates the filing date of the application from which they issued. *Tech. Licensing Corp.*, 545 F.3d at 1328-29 (clarifying that *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) did not hold that the patentee has the burden of persuasion of entitlement to an earlier priority date). Here, where Vita-Mix (as discussed below) has presented evidence and argument to the contrary, Blendtec must prove the absence of any genuine disputes of material fact that the '004 Patent is not entitled to the earlier date, under the "clear and convincing" evidence standard. *Id*. Blendtec has not done so.

      **B.**    **The Provisional Application Provides Written Description Support For The Asserted Claims Of The '004 Patent**

Vita-Mix's '004 Patent is entitled to its provisional application priority date, because, as shown below, the provisional provides written description support for the claims at issue. That written description inquiry is focused on whether the disclosure "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc.* 598 F.3d at 1351-1352; *see also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003). ("[T]he applicant for a patent is therefore required to recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.") (quotation marks omitted). This is analyzed from the perspective of what a person of ordinary skill would understand from the disclosure:

> [T]he patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before. Placed in that context, it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention . . . .

*LizardTech, Inc. v. Earth Res. Mapping, Inc*., 424 F.3d 1336, 1345 (Fed. Cir. 2005) (citation omitted).

The written description test is flexible and "does not demand any particular form of disclosure, or that the specification recite the claimed invention in *haec verba* . . . ." *Ariad Pharm., Inc.* 598 F.3d at 1351-1352 (citation omitted); *see also In re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009) ("The form and presentation of the description can vary with the nature of the invention . . . .") (citation omitted). Indeed, "drawings alone may provide a 'written description' of an invention as required by § 112." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1565 (Fed. Cir. 1991); *see also Autogiro Co. of Am. v. U.S.*, 384 F.2d 391, 398 (Ct. Cl. 1967) ("[W]here a visual representation can flesh out words, drawings may be used in the same manner and with the same limitations as the specification.") (citations omitted). Further, the disclosure need not be a "model of clarity." *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001).

> 1.    *The provisional provides sufficient written description support; figures alone are sufficient.*

Blendtec's sole allegation is that the limitation for a blender container with "a bottom surface having a periphery defining only one line of symmetry"[5] lacks written description support to a person of ordinary skill in the art. Mot. at 24; *see also* Exh. 4 at Claim 1 ('004 Patent). However, Blendtec provides no report from a person of ordinary skill in the art, only attorney argument, and does not even establish the qualifications of a person of ordinary skill in the art. As shown below, the provisional provides ample written description support for that limitation, as well as every other limitation of the asserted claims.

As previously noted, the provisional was filed on June 26, 2001; it is comprised of an approximately six-and-a-half page textual description of the inventions as well as six figures that depict preferred embodiments that "incorporat[e] the concepts of the present invention." Exh. 1

---

[5] Also referred to as the "one line of symmetry" or "single line of symmetry" limitation.

at 3:1-2 (prov.). A review of the provisional makes it readily apparent that there are at a minimum genuine issues of fact as to whether a person of ordinary skill in the art would recognize that the patentee had possession of the later-filed claims of the '004 Patent at the time the provisional was filed, including the "only one line of symmetry" limitation.[6]

Figures 3, 4, and 6—the patentee's chosen "exemplary container[s] for a blender incorporating the concepts of the present invention"—each demonstrate a blender container having a bottom surface with "a periphery defining only one line of symmetry":



*Id*., Figs. 3, 4, 6.

These three figures are the only drawings of the bottom surface of the invention and plainly and consistently exhibit a single line of symmetry. Taken on their own, these drawings provide sufficient written description support for the one line of symmetry limitation. *See Vas-Cath Inc.*, 935 F.2d at 1565. In *Vas-Cath*, the patentee sought claims covering a dual-lumen blood catheter previously disclosed in a design patent application which was comprised *only* of drawings. *Id*. at 1558-59. The patentee conceded that intervening art between the design application and the utility applications would anticipate the utility patents if they were not entitled to the priority date of the design patent. *Id.* at 1559. The question then was whether the

---

[6] Because Blendtec has only alleged that the "one line of symmetry" limitation does not have written description support, (Mot. at 24), Vita-Mix's analysis will focus on the written description support for that limitation. Exhibit 5 identifies the provisional's written description support for *every* limitation of the asserted claims. *See* Exh. 5.

drawings alone in the design application provided adequate written description support for the utility patent claims. The Federal Circuit answered in the affirmative and overturned the lower court's judgment of invalidity. *Id*. at 1565, 1567.

This principle that drawings are sufficient to provide written description support is well-established. *See also Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1322-23 (Fed. Cir. 2002) (reversing summary judgment of invalidity; patentee's European patent application could be relied on for an earlier filing date because written description support was provided by drawings showing the claimed alternate location even though no specification text expressly described that a "workover port" of a subsea wellhead device could be located at the alternate location claimed in the continuation patent); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1154-56 (Fed. Cir. 2004) (patent drawings and figures can provide written description support, affirming grant of JMOL reversing a jury verdict that claims lacked an adequate written description, and finding a claim limitation requiring a flow channel that was "significantly thicker and wider" than an adjacent layer was supported by a patent figure even though the specification did not describe that aspect of the flow channel with words).

The figures of the provisional are sufficient to demonstrate written description support for the asserted claims of the '004 Patent; as shown in *Vas-Cath*—which involved a disclosure of figures without ***any*** accompanying words—there is no requirement that an invention be described with words when a figure can convey that the inventor was in possession of the later sought claims. Just as the shape of a circle itself discloses the element of a radius, the figures of the provisional disclose the element of a single line of symmetry.

Blendtec's citation to *Anascape, Ltd. v. Nintendo of Am. Inc.*, does not change this result. 601 F.3d 1333 (Fed. Cir. 2010). In *Anascape*, the Federal Circuit simply was not persuaded that

11

the drawing in question actually depicted the limitations the patentee sought and obtained in a continuation application. *Id*. at 1336. The Federal Circuit did not hold that the drawings **could not** provide written description support, only that they **did not**; its holding is limited to the facts of that case and provide no support for Blendtec. *See Vas-Cath*, 935 F.2d at 1564 ("It should be readily apparent from recent decisions of this court involving the question of compliance with the description requirement of § 112 that **each case must be decided on its own facts**. Thus, the precedential value of cases in this area is extremely limited.") (quoting *In re Driscoll*, 562 F.2d 1245, 1250 (CCPA 1977)).

Blendtec also complains that the patentee did not call special attention to the "single line of symmetry" apparent in the provided figures. Mot. at 26-27. But there is no "requirement that the [provisional's] drawings 'describe what is novel or important' . . . . There is 'no legally recognizable or protected essential element, gist or heart of the invention in a combination patent.'" *Vas-Cath Inc.*, 935 F.2d at 1565 (quotation marks omitted) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 345 (1961)); *see also Cooper Cameron Corp.*, 291 F.3d at 1323 (there is no "'essential element' test mandating an inquiry into what an inventor considers to be essential to his invention . . . .").

Moreover, the failure to "specifically mention a limitation that later appears in the claims is not a fatal one when one skilled in the art would recognize upon reading the specification that the new language reflects what the specification shows has been invented." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002); *see also LizardTech, Inc.,* 424 F.3d at 1345 ("[I]t is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention . . . ."); *PowerOasis, Inc.*, 522 F.3d at 1306 ("[A] prior

12

application need not contain precisely the same words as are found in the asserted claims . . . ."). Here, it is clear that the provisional and its figures provides ample written description support for each and every limitation of the asserted claims. Blendtec's attorney argument does not prove otherwise and is insufficient to meet its burden to show that ***one of skill in the art*** would not be able to determine that the figures of the provisional disclose each and every limitation of the asserted claims.

> 2.     *Contrary to Blendtec's argument, the provisional does not teach away from the single line of symmetry limitation and the text supports the single line of symmetry.*

Blendtec tries to dodge the unavoidable disclosure in the figures—which each depict a blender container with a bottom surface that is symmetrical and in fact symmetrical about a single axis, i.e., having a single line of symmetry—by pointing instead to the provisional's textual description of those figures as being "non-symmetrical." Mot. at 26.[7] Blendtec's argument is that a person of ordinary skill upon reading the words "non-symmetrical" in conjunction with three figures that do in fact have a single line of symmetry would *necessarily* conclude that the patentee did not actually possess the blender container shapes as actually disclosed as preferred embodiments in the figures.[8] *Id.*

---

[7] Blendtec's cites to the provisional's disclosure which distinguishes the "non-symmetrical shapes as shown in Figs. 3, 4, and 6" from shapes that are "circular, square, rectangular." Mot. at 12 (citing Exh. 1 at 4:17-23). But this actually supports that when the patentee used the word "non-symmetrical" he did not mean "asymmetrical" but rather was distinguishing from shapes such as circles, squares, and rectangles which have ***multiple*** lines of symmetry.

[8] Blendtec has identified the claim term "a bottom surface having a periphery" as one that is in dispute and needs to be construed by the Court. Exh. 8 at 1 (Blendtec's Final List of Claim Terms Pursuant to L. P. R. 4.1(c)). Because the term "a bottom surface having a periphery" is part of the claim limitation "a bottom surface having a periphery defining only one line of symmetry," any construction of a part of the limitation will affect the meaning of the limitation as whole, since the "line of symmetry" is relative to the periphery of the bottom surface. This further highlights that Blendtec's motion is premature as "[a] district court must base its analysis of written description under § 112, ¶ 1 on proper claim construction." *Koninklijke Philips Elecs.*

13

But Blendtec's descriptions of the text "non-symmetrical" as an "express teaching[]" and the figures' intrinsic characteristic of a single line of symmetry as an "inference" are unsupported and contrary to the fact that experts for ***both*** sides in the prior litigation agreed that "non-symmetrical" was not inconsistent with an object having a single line of symmetry. Blendtec's own expert admitted that Figure 3 of the '004 Patent's specification is "non-symmetrical," despite having a single line of symmetry. Exh. 6 at ¶ 65 (Expert Report of Fred P. Smith). And Vita-Mix's expert similarly explained that "non-symmetrical" as used in the provisional meant that a figure being rotated would not again have the same configuration it had at a given starting point until a full 360 degree revolution had been completed, which is consistent with a figure having a single line of symmetry. Exh. 7 at 9:22-11:21 (Utah Case Trial Transcript). [9]

This expert testimony and opinion is the only evidence before this Court as to what persons of ordinary skill understand "single line of symmetry" to mean, and refutes Blendtec's attorney argument that the provisional figures and text do not convey a single line of symmetry. At a minimum, this proves that genuine factual disputes exist that preclude summary judgment.

Moreover, the text of the provisional supports the presence of a single line of symmetry in the embodiments shown in the figures. Figure 4 is described as being "generally heart-shaped"

---

*N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1336 (Fed. Cir. 2010); *Emsat Adv. Geo-Location Tech., LLC v. Cellco P'ship*, No. 4:08-CV-816, 2014 WL 4925772, at *2 (N.D. Ohio Sept. 30, 2014) ("[W]ithout first establishing the scope of the asserted claims, it would be impossible to determine whether plaintiffs are entitled to a particular priority date. Likewise, it would be improper to let an asserted defense dictate claim construction, or to unfairly restrict plaintiffs from advocating for alternative priority dates. The Court will not permit the tail to wag the dog.")).

[9] Blendtec's selective quotation from a Board of Patent Appeals and Interferences decision that "Miller '456 only discloses that the embodiments depicted in Figures 3, 4, and 6 are 'non-symmetrical'" is misleading. Mot. at 10 (citing Mot Ex. 41 at 15-16) (emphasis added by Blendtec). That quotation was taken from a reexamination proceeding of Blendtec's '117 patent and the Board was only considering whether Miller '456 disclosed Blendtec's claimed "truncated wall." Mot. Ex. 41 at 16.

and Figure 6 as having "generally a teardrop shape." Exh. 1 at 5:22-26. Comparing the figures to this text, it is evident that the patentee was referring to the respective symbolic representations of a heart and a teardrop rather than an anatomical heart or actual teardrop. These symbols each have a single line of symmetry and thus are consistent with Figures 3, 4, and 6 and with the asserted claims of the '004 Patent.

        3.    *The '004 Patent's file history confirms the '004 Patent is entitled to the provisional's priority date.*

A review of the '004 Patent's file history also demonstrates that the asserted claims are entitled to the provisional's 2001 priority date. Although Blendtec pointed to an office action where the PTO examiner issued a written description rejection (Mot. at 12-15), it failed to complete the story, omitting the fact that the patentee submitted a response to that rejection which explained precisely where written description support for each challenged element could be found, including by pointing to figures based entirely on the provisional's original figures. Mot. Ex. 53 at 13-16 (May 24, 2010 Response to Office Action). Indeed, the patentee specifically rebutted the examiner's contention that the specification did not provide written description support for the "one line of symmetry" limitation, in part by pointing to original language found in the provisional as well as Figures 3, 4, and 6. *Id*. at 15-16 ("Original Figs. 3, 4, and 6 illustrate irregular polygons that have a periphery defining only one line of symmetry. … Applicants submit amended drawings to annotate this feature *shown since the earliest filing date of the parent application.*"). Blendtec also failed to note that this argument won the day—the patent examiner subsequently withdrew this rejection. Mot. Ex. 54 (August 17, 2010 Non-Final Rejection). Thus Blendtec, via attorney argument, is simply attempting to re-hash a written description argument that the PTO, via a person of skill in the art, carefully considered and rejected more than five years ago.

15

The PTO examiner ultimately maintained a rejection under 35 U.S.C. § 112 ¶ 2, arguing that an annotated version of Figure 4 showing seven walls was not "explicitly supported by the provisional" such that the use of the claim terms "side surfaces," "side walls," and "sides" rendered the claims indefinite. Mot. Ex. 60 at 3. The Board correctly reversed this rejection as "flawed." *Id.* But the Board did not, as Blendtec suggests, give any credence to the possibility that the subject matter of the '004 Patent was lacking written description support in the provisional, noting only that such objections (if there are any) are properly raised under 35 U.S.C. § 112 ¶ 1. *Id.* at 4. There was no recognition by the Board of an "apparent written description/new matter issue" as Blendtec claims. Mot. at 17.

Nor is there any weight to Blendtec's disparaging speculation that the examiner allowed the '004 Patent to issue "perhaps out of exhaustion" rather than to raise what Blendtec calls "the unresolved priority date issue." Mot. at 17 (emphasis omitted). First, the law rejects Blendtec's approach; "[i]ntrospection and speculation into the examiner's understanding of the prior art or the completeness or correctness of the examination process is not part of the objective review of patentability." *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1329 (Fed. Cir. 2004); *see also Brooktree Corp. v. Adv. Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992) ("[P]atent examiners presumed to have done their job."). Second, the examiner himself told the Board that "*if necessary*" he would "consider rejections under 35 U.S.C. § 112 ¶ 1 in any future prosecution of this or related applications." Mot. Ex. 58 at 38 (Examiner's Answer Brief). The law presumes, and the facts confirm, that the examiner, who is a person of skill in the art, looked at the priority issue carefully, and found in Vita-Mix's favor.[10]

---

[10] Further supporting this conclusion is the fact that the examiner who examined the '004 Patent had previously examined ***the very Blendtec patents*** that Blendtec now claims anticipate the '004 Patent and that same examiner was aware of Blendtec's patents during the prosecution of the

In summary, the '004 Patent's prosecution history only further demonstrates that the asserted claims are entitled to the provisional's priority date, that Blendtec cannot meet its burden to prove that the provisional did not convey to one of skill in the art that the '004 patentee had possession of the claimed subject matter as of that date, and that Blendtec cannot demonstrate that there are no genuine disputed issues of material fact.

        4.    *Blendtec ignores controlling Federal Circuit precedent and misapplies the law.*

Blendtec brushes aside the long-standing principle that figures can provide written description support and instead improperly focuses on a narrow and inapplicable line of cases that caution against relying on drawings for "precise proportions" that are not otherwise disclosed in the specification. Mot. at 24-26. These cases do not apply here because the presence of a single line of symmetry in the three different figures of preferred embodiments in the provisional does not depend on precise measurements or assumptions—a teardrop or heart shape *of any size* has only a single line of symmetry.

The presence of the single line of symmetry in the provisional's three figures is the direct result of the very shapes disclosed by the patentee; it is not dependent upon the precise length of any part of the blender containers depicted for the same reason that the presence of a radius in a circle does not depend upon the particular length of the circumference. Blendtec contorts itself to avoid this common sense conclusion contending that the presence of the single line of symmetry

---

'004 Patent. Mot. at 17; *compare* Exh. 4 at 1 *with* Mot. Ex. 8 at 1 and Mot. Ex. 9 at 1 (each showing Charles E. Cooley as Primary Examiner); *see also* Mot. Ex. 48 at 1 (requesting institution of interference proceeding between the '004 Patent's application and Blendtec's patent no. 7,281,842) (December 11, 2007, Preliminary Amendment and Applicant's Interference Suggestion). If the examiner believed that the claims of the '004 Patent were not entitled to the provisional's priority date, he undoubtedly would have raised the issue and challenged the claims using the Blendtec patents with which he was very familiar.

"hinges on an inference from the figures in the provisional about the quantitative relationship between the perimeter of the bottom wall and a hypothetical (undisclosed) line through the blade axis." Mot. at 26. A "line of symmetry" is the line (*l*) that divides a plane figure into mirror-images on either side of the line, and a figure with a line of symmetry is "said to have bilateral symmetry or to be symmetrical by reflection in the line *l*." Exh. 9 (A Concise Dictionary of Mathematics). There are no "inferences" about "quantitative relationships" that must be made to find the figures are symmetrical and in fact only have a single line of symmetry; it is apparent on its face to anyone with an elementary understanding of geometry—much less a person of ordinary skill in the art.

None of the cases Blendtec cites undermine that the provisional's figures are competent to provide written description support for the claims of the '004 Patent. *Go Med. Indus. Pty., Ltd. v. Inmed Corp.*, does not support Blendtec because the drawings needed to, but did not measure out to the precise length of the patentee's "best mode." 471 F.3d 1264, 1271 (Fed. Cir. 2006) (finding patent invalid for failure to comply with the former best mode requirement of 35 U.S.C. § 112 ¶ 1 where the patentee tried to show compliance through figures). Further, *Nystrom v. TREX Co., Inc.*, and *Application of Wright* each concerned whether drawings from *prior art references* could be relied on as disclosing claim limitations involving **precise ratios or dimensions**. 424 F.3d 1136, 1148 (Fed. Cir. 2005) (holding that drawings could not be so relied on); 569 F.2d 1124, 1127-28 (CCPA 1977).[11] None of these cases are relevant to the written

---

[11] Blendtec's citations to claim construction cases are also inapt. *See Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc*., 222 F.3d 951, 954 (Fed. Cir. 2000) (holding that a figure could not support a particular claim construction *disavowed* during prosecution); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291 (Fed. Cir. 2014) (upholding sanctions imposed for patentee's objectively unreasonable claim construction arguments contradicted by unambiguous claim language).

description inquiry here where the presence of a line of symmetry does not depend upon precise ratios or measurements derived from the figures.

>    5.    *The single line of symmetry is not "missing descriptive matter," and it is inherently disclosed by the figures in the provisional.*

As a last resort, Blendtec protests that the figures do not "inherently" disclose a single line of symmetry. Mot. at 28. But Vita-Mix need not rely on the doctrine of "inherency." That doctrine can be used to fill in gaps in a written description or prior art disclosure that is "silent" about a particular characteristic. *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991); *see also Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998). It can be relied upon when the disclosure is "missing descriptive matter" but it can be shown that the characteristic "must necessarily be present in the parent application's specification such that one skilled in the art would recognize such a disclosure." *Id.*

Here, Vita-Mix does not need to rely upon inherency because—as shown above—the single line of symmetry is not "missing descriptive matter;" it is fully disclosed by the figures in the provisional. But to the extent the Court finds otherwise, the single line of symmetry *is* inherently present in the figures. Remarkably, Blendtec contends that inherency cannot be established because the figures merely "appear as if they ***might include*** a single line symmetry." Mot. at 28. But the presence of a single line of symmetry in the figures is beyond any reasonable dispute; it does not "appear as if [the figures] might include a single line of symmetry," and it does not rely on "probabilities" or "possibilities" as Blendtec suggests. *Id*. It would be no different if Blendtec argued that a circle does not disclose a diameter or radius because a drawing of a circle was not annotated with those words.

Simply put, none of Blendtec's arguments or cited cases can support its strained contention that the three figures in the provisional depicting ***preferred*** embodiments of the

19

invention that each plainly show a blender container with a single line of symmetry somehow would not convey to a person of ordinary skill that the patentee possessed a blender container with that limitation.

>      6.    *Vita-Mix's continuation applications do not contain any "new matter"*
>            *and that inquiry is irrelevant here.*

Whether a continuation application's specification discloses "new matter" makes no difference where the provisional application fully discloses the claims. *See SDS USA Inc. v. Ken Specialties Inc.*, 122 F. Supp. 2d 533, 544 (D.N.J. 2000) ("Entry of a new matter only possibly affects claims that depend on that 'new matter.'") (citing *Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed. Cir. 1999)). Where the provisional fully supports the claims at issue (as is the case here, *supra* at Section IV.B) the claims do not "depend" upon the alleged new matter, and the new matter inquiry is mooted. *Id.*; *see also Anascape, Ltd.*, 601 F.3d at 1337 (refusing to consider amendments to a patent's specification when determining whether the claims were entitled to the parent application's priority date through adequate written description support); *Ariad Pharm., Inc.*, 598 F.3d at 1348 (holding that there is "no statutory penalty" for the introduction of new matter into a patent's *specification*, and clarifying that whether new matter has been introduced in a *claim* is considered under the written description analysis). Vita-Mix has demonstrated adequate written description support for the asserted claims without relying on any of the specification amendments that Blendtec alleges are new matter; therefore the new matter inquiry is irrelevant.

Throughout its motion, Blendtec asserts that the '004 Patent contains new matter under 35 U.S.C. § 132(a). Mot. at 1, 11, 16-17, 21, 30. Blendtec goes further, accusing Vita-Mix of "methodically manipulat[ing] the ['004 Patent's] written description. *Id.* at 11. This argument is little more than a retread of Blendtec's refusal to acknowledge that figures of the provisional are

competent to provide written description support, as the amendments to the '004 Patent's specification simply expanded descriptions of the provisional's figures and did not introduce new matter. The reasons given above that demonstrate the provisional provides written description support for the asserted claims of the '004 Patent also refute Blendtec's new matter argument.

Whether new matter has been added to a patent application or specification is a question of fact. *Cmmw. Sci. and Indus. Research Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1380 (Fed. Cir. 2008). The particular facts include "the nature of the disclosure, the state of the art, and the nature of the added matter." *Brooktree Corp.*, 977 F.2d at 1574. "The fundamental inquiry is whether the material added by amendment was inherently contained in the original application." *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000).

None of the specification amendments to the '004 Patent or any of its parent patents to which Blendtec points constitute new matter. The amendment to the specification of Vita-Mix's '478 Patent with which Blendtec takes issue does nothing more than further explicate Figure 4 (which was disclosed in the provisional). Mot. at 13. The figure itself was amended to fully describe the container by connoting all of its subparts by adding numbers to the walls and the points at which those walls intersect. *Id*. An accompanying paragraph of the specification was amended to describe these added numbers. *Id*. In each case, these amendments could not have added any new matter because they simply describe in increased detail a figure that had been present since the filing of the provisional. The amendment explaining that the lobes of Figure 4 are equidistant from the center of the container did not "introduc[e] the concept of symmetry" to the specification as Blendtec protests. Mot. at 12-13. The relation of the lobes being equidistant

21

to the center of the container has long been apparent from Figure 4 itself, as has the line of symmetry, *supra* at Section IV.B.1, as is a diameter or radius to a circle.[12]

And the amendments to the '004 Patent's figures and specification to which Blendtec points were also simply comprised of more in-depth annotations of figures from the provisional and additions to two paragraphs describing the figures.[13] Mot. at 15-16. Blendtec claims that the addition of dotted lines to Figures 3, 4, and 6 that show the line of symmetry somehow caused the line of symmetry to come about "for the first time." Mot. at 16 (emphasis omitted). But an unannotated figure is not devoid of elements or features; the annotations themselves do no work to create elements that the figure inherently possesses—they simply aid the viewer, again, as would a dotted line showing a circle's radius. Blendtec has not shown that any new matter was introduced to the '004 Patent's specification or to any of its parent patents.[14]

---

[12] Blendtec's characterization that the Utah court held that the '478 Patent is not prior art to Blendtec's patent is inaccurate. Mot. at 13. As Blendtec admits, the Utah court never ruled prior to the Utah trial on Blendtec's motion in limine regarding whether the "amendment made by Vita-Mix to the '478 patent during prosecution constitutes new matter." *Id*. Moreover, in that same motion in limine, Blendtec argued that the '478 Patent was not properly disclosed as a prior art reference and for that reason alone, should be excluded at trial. Mot. Ex. 46 at 1-2. Blendtec also argued that the '478 Patent should be excluded because it might otherwise "mislead, confuse, and distract the jury." *Id*. at 2. Given the arguments that Blendtec made in its motion in limine, the sustaining of the objection at trial provided no indication as to whether the court made a substantive ruling that the '478 Patent was not prior art due to any alleged "new matter." But even if such a determination had been made, it would only mean that it had not been shown that the *claims* of the '478 Patent were supported by the provisional, which is irrelevant to the inquiry here. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, No. 2015-1214, 2015 WL 5166366, at *6 (Fed. Cir. Sept. 4, 2015); *In re Wertheim*, 646 F.2d 527, 537 (CCPA 1981).

[13] One of the paragraphs identified by Blendtec as added in amendment does not concern the "single line of symmetry" but instead describes the figures' depiction of a partially sloped bottom surface. Mot. at 15-16. As explained above, such a paragraph is not new matter as it simply describes the figures. Blendtec does not even allege that the provisional lacks adequate written description support for the limitation of "a bottom surface that is at least partially sloped." Further, attached Exhibit 5 demonstrates the provisional provides sufficient written description for this limitation (and all limitations of the asserted claims). *See* Exh. 5.

[14] Blendtec's reliance on *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, is misplaced. Mot. at 29-30 (citing 2012 WL 6562220 (E.D. Va. Aug. 13, 2012), *aff'd*, 542 F.3d 1363 (Fed.

In summary, the provisional clearly discloses each and every limitation of the asserted claims of the '004 Patent; therefore, the '004 Patent is entitled to its provisional's priority date. And Blendtec has not met its burden to demonstrate that the challenged claims are not entitled to an earlier filing date, nor has it met its burden to demonstrate that are no genuine disputes of material fact. This Court should therefore deny Blendtec's motion.

### C. Blendtec's Patents And Products Are Not Prior Art To The '004 Patent And Do Not Anticipate The '004 Patent

Because the '004 Patent is entitled to its provisional's priority date, or at least because Blendtec has not shown with clear and convincing evidence that the '004 Patent is not so entitled, Blendtec's patents and products, which have priority dates after the provisional, are not prior art to the '004 Patent and cannot invalidate it. Mot. at 17. Further, Blendtec has asked this Court to invalidate the '004 Patent on summary judgment asserting that no genuine issues of material fact exist such that no reasonable jury could find that the '004 Patent is entitled to its provisional's priority date *and* that no genuine issues of material fact exist such that no reasonable jury could find that the '004 Patent is *not* anticipated by Blendtec's Wildside jar. Mot. at 17, 30. But even Blendtec is not willing to fully commit as it footnotes that it "reserves the right to contest the presence of one or more claim limitations in the Wildside jar in later proceedings." *Id*. at 17 n. 19. It cannot be that summary judgment of invalidity by anticipation could be proper if the moving party is not even willing to admit for certain that the allegedly

Cir. 2008)). In the instant case, the '004 patentee simply amended the specification to include more fulsome descriptions of previously disclosed figures. But in *Hamilton Beach,* the patentee attempted to broaden the definition of the term "clip" to include a hook and catch embodiment with the catch located on the slow cooker's sidewall, when the original specification only disclosed a hook and lever style clip with the hook clipping onto the lid and not onto the sidewall. *Id*. at *10-11. Blendtec's burden is to show that the claims of the '004 Patent lack adequate written description support, it cannot satisfy that burden by pointing to cases where written description support was not found as a result of another court's fact specific review of an unrelated patent.

anticipating art contains each and every element of the challenged claims. This Court should deny Blendtec's motion for summary judgment of invalidity on this basis alone.[15]

## V.    VITA-MIX'S CLAIMS ARE NOT BARRED BY ISSUE PRECLUSION

### A.    Legal Standard

Issue preclusion or collateral estoppel is appropriate only when each of the following four elements are present:

> 1) The precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
>
> 2) determination of the issue must have been necessary to the outcome of the prior proceeding;
>
> 3) the prior proceeding must have resulted in a final judgment on the merits; and
>
> 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace and Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996); *see also RF Del., Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003) ("[T]he law of the regional circuit applies to the issue of collateral estoppel.") (citation omitted). The party seeking to invoke issue preclusion bears the burden of demonstrating that each of the four elements are met. *Ctr. Transport, Inc. v. Four Phase Sys.,* Inc., 936 F.2d 256, 260 (6th Cir. 1991).

---

[15] As noted above, the examiner of the '004 Patent also examined Blendtec's patents (*supra* at Section IV.B.3 n. 10). Because the examiner never raised Blendtec's patents as prior art against the '004 Patent, he must have concluded that Blendtec's patents were not prior art (i.e., the '004 Patent was entitled to the provisional's priority date) or that Blendtec's patents did not anticipate or render obvious the '004 Patent's claims—or perhaps both.

**B.     The Prior Litigation Did Not Resolve Any Issue Of Fact Pertinent To The Validity Of The '004 Patent Or Blendtec's Infringement**

Vita-Mix's case against Blendtec is centered around one question: Do Blendtec's accused products infringe the claims of the '004 Patent? Blendtec claims that this *precise issue* was litigated and decided in the prior litigation. But scouring the record from that case will not unearth a single reference to the '004 Patent, because it did not **exist** until nearly two years **after** the prior litigation was fully resolved. The '004 Patent has never been asserted against Blendtec before this instant case. No court has ever considered Blendtec's infringement of the '004 Patent. No court has ever considered the validity of the '004 Patent. Nor did the prior litigation even consider whether Blendtec infringed patents **related** to the '004 Patent. Blendtec does not point to a single underlying issue of fact that was decided in the prior litigation that bears on Blendtec's infringement of the '004 Patent. Blendtec devotes many pages repeating the accounts of the prior litigation as viewed through its own lens. Yet, as will be shown, none of the alleged issues or facts decided in the prior litigation identified by Blendtec are relevant to this case. With no common identity of precise issues or underlying facts between this case and the prior litigation, Blendtec has not met its burden to show issue preclusion is appropriate.

1.     *The determination that Blendtec's patent claims are not invalid has no bearing on the validity or infringement of the '004 Patent.*

In the prior litigation, Vita-Mix alleged that the asserted claims of Blendtec's patents were invalid as anticipated by Vita-Mix's '456 Patent and also as obvious in view of the '456 Patent in combination with other prior art. The jury found that Vita-Mix had not proven invalidity of Blendtec's asserted claims by clear and convincing evidence and the district court upheld that verdict. Mot. Ex. 27 at 1; Mot. Ex. 29 at 3-4. The issues decided were:

1) That the '456 Patent does not disclose each and every element of Blendtec's asserted claims;[16] and

2) that the '456 Patent in combination with other identified prior art would not have rendered Blendtec's asserted claims obvious at the time of invention to a person of ordinary skill in the art.[17]

Blendtec's patents include a narrow limitation which the Blendtec patentee called a "truncated wall." *See e.g.*, Mot. Ex. 8 at Claim 1.[18] In upholding the jury's verdict of no anticipation or obviousness, the Utah district court pointed to witness testimony averring that the '456 Patent (and other prior art) did not disclose the "truncated wall" as substantial supporting evidence. Mot. Ex. 29 at 3-4. But whether the '456 Patent, the '004 Patent, or indeed ***any*** prior art discloses a "truncated wall" is not relevant to this case. Vita-Mix does not need to prove invalidity of Blendtec's patents, which may be embodied by Blendtec's accused products, in order to show that those products infringe the '004 Patent.

That Blendtec's patents were not invalidated by the patents related to the '004 Patent is not "diametrically at odds" with a finding that Blendtec's accused products (which embody Blendtec's patents) also infringe the '004 Patent. Mot. at 21. The claims of the '004 Patent are broader than those of Blendtec's patents which were found to be patentable *because* the Blendtec patent claimed a specific narrow limitation of a "truncated wall." Mot. Ex. 29 at 3-4. The '004 Patent describes and claims a broader foundational design of blender containers having five or more sides (among other limitations) while Blendtec's patents contain narrow claims that require

---

[16] *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1265 (Fed. Cir. 2012); *see also* 35 U.S.C. § 102.

[17] 35 U.S.C. § 103(a) (2006).

[18] This "truncated wall" element was construed by the Utah court as "a wall (planar or non-planar) that truncates, in essence, the typical corner that would otherwise be formed between two side walls" wherein "typical corner" refers to a corner that "but for the addition of the truncated wall, would otherwise be typical—or in other words identical—to the other corners of the blending jar." *K-Tec, Inc.,* 696 F.3d at 1371. This complex construction reveals the idiosyncratic nature of the "truncated wall" claim limitation.

a specific "truncated wall" limitation. There is nothing inconsistent with the validity of the narrow claims of Blendtec's patents despite the earlier disclosure that led to the '004 Patent's broader claims. *Utter v. Hiraga*, 845 F.2d 993, 998 (Fed. Cir. 1988) ("There is no inconsistency in awarding a generic count to one inventor, while awarding a patentably distinct species count to another.") The validity of Blendtec's patents is no bar to Vita-Mix's assertion of the '004 Patent.[19]

> 2.     *The prior litigation did not determine whether the invention and asserted claims of the '004 Patent cover the configuration of Blendtec's 5-sided blending container.*

Blendtec argues that it was determined in the prior litigation that the '004 patentee "did not **invent** the configuration of Blendtec's 5-sided blending container." Mot. at 20. This is inaccurate. The only issues of fact determined in the prior litigation pertaining to Vita-Mix's and Blendtec's accused products was that Blendtec was the first to formulate its particular blender container design and that Vita-Mix's accused products were based on that design. Mot. Ex. 29 at 8. But that finding has nothing to do with whether the '004 patentee is the inventor of the issued **claims** of the '004 Patent and whether those claims cover Blendtec's accused products. Again, the Utah court could not have answered this question because the '004 Patent had not yet issued.

---

[19] Similarly the Utah court's dismissal of Vita-Mix's interfering patents counterclaim is not material. Mot. at 9. Interference is determined by comparing the ***claims*** of the purportedly interfering patents. 37 CFR §1.601(j) (current version at 37 CFR §41.202(a)(3)); Exh. 10 at 2 ¶ 4 (Blendtec's Motion to Dismiss filed in the Utah litigation). Two patents interfere if "(1) invention A either anticipates or renders obvious invention B, where Party A's claimed invention is presumed to be prior art vis-à-vis Party B and (2) vice versa." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1161 (Fed. Cir. 2006). Thus the lack of an interference between the ***claims*** of Vita-Mix's and Blendtec's patents is consistent with, but even narrower than, the findings that Vita-Mix's '456 Patent did not invalidate Blendtec's patents. For the reasons explained above, that determination is not relevant to the issues before this Court.

And Vita-Mix need not have been the first to design Blendtec's particular blender container embodiment in order to assert the claims of the '004 Patent—which have priority over and thus pre-date Blendtec's design. A patentee is not required to describe the numerous potential embodiments of the claimed invention. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001) ("Our case law is clear that an applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention.") (citing *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc)); *see also Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1370 (Fed. Cir. 2008). Indeed, the law recognizes that this would be "requir[ing] the impossible." *SRI Int'l*, 775 F.2d at 1121. Contrary to Blendtec's assertion (Mot. at 21), the fact that the '004 patentee did not put pen to paper and sketch Blendtec's chosen embodiment (figuratively speaking) is immaterial to the infringement analysis; the question is whether the accused product contains each element of the asserted claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude.") (quotation marks and citation omitted). It does not matter who was responsible for the particular design of Blendtec's accused products, what matters is whether the embodiment of that design meets the limitations of the claims of the '004 Patent.

3. *Blendtec's accused products can simultaneously embody Blendtec's patents while also embodying and infringing Vita-Mix's '004 Patent.*

That Blendtec's patents were not invalidated in the prior litigation and that Blendtec's accused products may embody those patents, does not mean that those accused products do not also infringe (and embody) the claims of the '004 Patent. *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("The existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the

28

right to exclude others and confers no right on its holder to make, use, or sell.") (quoting *Vaupel*

*Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991)).

Blendtec's patents do not immunize it against claims of patent infringement—particularly

with respect to the broader claims of the '004 Patent which are entitled to an earlier priority date.

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 986 F. Supp. 2d 574, 626 (W.D. Pa. 2013),

*aff'd in part, rev'd and vacated in part on other grounds, Carnegie Mellon U. v. Marvell Tech.*

*Group, Ltd.*, 2014-1492, 2015 WL 4639309, (Fed. Cir. Aug. 4, 2015) ("A novel and non-obvious

after-issued patent may be valid over a prior-issued patent, but that does not mean that, if

practiced, the technology disclosed in the after-issued patent would not infringe the prior-issued

patent.") (citing *Bio-Tech. Gen. Corp.*, 80 F.3d at 1559); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222

F.3d 1372, 1379 n.2 (Fed. Cir. 2000) (explaining that a "blocking patent" is an earlier pioneer

patent that must be licensed to practice a later patent).[20] There is no factual determination from

the prior litigation that precludes a finding that Blendtec's accused products embody both

Blendtec and Vita-Mix patents and that each party's patents are valid.

> ### 4. *The determination in the prior litigation that Vita-Mix's accused product was not "derived" from the '004 patentee's work is not relevant.*

Whether the Utah court found that Vita-Mix had not developed its accused products

based upon the work of the '004 patentee is irrelevant to the infringement and validity issues in

this case. Whether Vita-Mix was found to have willfully infringed Blendtec's patents is also

irrelevant to the infringement and validity issues in this case. How or from where Vita-Mix's

accused products were "derived" is irrelevant. Mot. at 19-20. Vita-Mix has not made those

products for years and they are not at issue in this case. Nor does it matter from where Blendtec

---

[20] Although the '004 Patent issued after Blendtec's patents, because of its earlier priority date it is the "prior-issued patent."

"derived" its infringing products. The only issue in the instant litigation is whether Blendtec's products infringe the '004 Patent's claims. As demonstrated above, Vita-Mix's '004 Patent is entitled to its priority date and is not anticipated by Blendtec's patents or products. *Supra* at Sections IV.B-C. And Blendtec's infringement will be demonstrated at the appropriate stage of this litigation. Blendtec's irrelevant allegations that Vita-Mix copied a Blendtec blender container simply does not inform any analysis pertinent to the validity of the '004 Patent or Blendtec's infringement of it.

In summary, the prior litigation did not resolve any factual issues germane to Vita-Mix's assertion of the '004 Patent against Blendtec. The central focus of the prior litigation was Blendtec's patents and Vita-Mix's accused products; none of those patents or products are at issue in this litigation. And the determination that Vita-Mix's patents did not invalidate Blendtec's patents does not bear on the validity of the '004 Patent or on Blendtec's infringement of it. Blendtec's motion for summary judgment based on issue preclusion should be denied.

## VI.     CONCLUSION

As shown above, the asserted claims of the '004 Patent *are* entitled to the provisional's priority date as the figures, text, and prosecution history all demonstrate. And Blendtec also failed to identify any fact or issue decided in the prior litigation that bars Vita-Mix's claims in this matter. At a minimum, Blendtec has not proven that there is no genuine dispute as to any material fact and that it is entitled to a judgment as a matter of law. For these reasons and the foregoing, Vita-Mix respectfully requests that Blendtec's motion be denied.

Date: November 23, 2015

/s/ *David K. Callahan*
David K. Callahan
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 876-7700
david.callahan@lw.com

Patricia Young
Nikolaus A. Woloszczuk
Latham & Watkins LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
patricia.young@lw.com
nick.woloszczuk@lw.com

Hugh E. McKay (0023107)
Tracey L. Turnbull (0066958)
Brodie M. Butland (0084441)
Porter, Wright, Morris & Arthur- Cleveland
950 Main Avenue, Suite 500
Cleveland, Ohio 44113
(216) 443-9000
hmckay@porterwright.com
tturnbull@porterwright.com
bbutland@porterwright.com

*Attorneys for Plaintiffs*

## **LOCAL RULE 7.1(f) CERTIFICATION**

This case has been assigned to the complex track (dkt. 25) and this memorandum adheres to the page limitation of thirty pages as set forth in Local Rule 7.1(f).

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 23, 2015 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

<u>/s/ *David K. Callahan*</u>
David K. Callahan