UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Vita-Mix Corporation, et al., ) | CASE NO. 1: 15 CV 1118 |
| ) | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| Vs. ) | |
| ) | |
| Blendtec, Inc., ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendant. ) | |

## **INTRODUCTION**

This matter is before the Court upon Defendant Blendtec's Motion for Summary Judgment Re: Issue Preclusion and Priority Date (Doc. 27). This is a patent infringement case. For the reasons that follow, the motion is DENIED.

## **FACTS**

For purposes of this motion, the underlying facts of the case appear largely undisputed.

Plaintiffs, Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation (collectively "plaintiff") bring this lawsuit against defendant Blendtec, Inc. alleging patent infringement.  According to the complaint, defendant infringes Patent No. 8,753,004 ("'004 Patent").  Plaintiff and defendant both compete in the commercial blender market.

In the 1990s, both parties received customer complaints regarding "cavitation" problems associated with the parties' blenders.  It appears that the design of the blenders resulted in the development of an air pocket that prevented smooth blending.  In response, Thomas Dickson, an employee of defendant, decided to increase the base of the blender.  In so doing, Dickson also inserted a truncated wall in order to leave clearance for gripping the handle.  The results revealed improved performance and significantly reduced cavitation.  The results, however, stemmed not from the increased base size, but from the truncated wall.  Defendant publicly introduced its blender in September of 2001.

Around the same time, plaintiff engineer Brent Miller conceived various blending jar configurations which were ultimately disclosed in a provisional patent application filed on June 26, 2001.

In late 2001 and early 2002, plaintiff looked to defendant's design in order to determine how it reduced cavitation.  In an internal email, plaintiff indicated "if the concept has real processing merits, then we may want to pursue a similar project."  At the same time, plaintiff became aware that many of its customers found defendant's blender to be far superior to the blender plaintiff sold.  Plaintiff began losing a number of commercial accounts.  Thereafter, plaintiff launched a "Smoothie Container Development Program."  In 2003, plaintiff introduced its MP container.

In 2005, defendant obtained Patent No. 6,979,117 ("'117 Patent"). According to defendant, plaintiff made minor cosmetic changes to the MP container in the hopes of avoiding infringement of the '117 Patent.

On February 6, 2006, defendant sued plaintiff for patent infringement of the '117 Patent in the United States District Court for the District of Utah. During the case, defendant added patent infringement claims based on Patent No. 7,281,842 ("'842 Patent"), which issued after the commencement of the litigation. Also, during the course of the litigation, plaintiff obtained Patent No. 7,063,456 ("'456 Patent") and Patent No. 7,267,478 ("'478 Patent"). These patents are based on the provisional application filed by Miller in 2001. Plaintiff argued to the Utah court that the '456 Patent was prior art to defendant's patents. Plaintiff also asserted a counterclaim for "interfering patents.[1]" The Utah Court summarily dismissed the counterclaim concluding that "the claims of the patents do not interfere." In other words, the Court rejected plaintiff's argument that the '842 Patent discloses the same invention as those disclosed in the '456 Patent and the '478 Patent.

Plaintiff pursued reexamination proceedings before the USPTO. Plaintiff argued that the '842 Patent was invalid based on anticipation of the '456 Patent. A three-panel board of examiners rejected the arguments and the Board of Patent Appeals agreed with the examiners. In its holding, the board noted "Miller '456 only discloses that the embodiments depicted in Figures 3, 4, and 6 are "non-symmetrical," and in describing square and rectangular shapes, does not disclose that such shapes contain the claimed truncated walls as interpreted above." Plaintiff

---

[1] An interference claim is a challenge between two inventors who claim essentially the same invention in their patents. In the action, the Court determines which inventor was the first to invent the commonly claimed invention.

also argued before the Utah court that the '456 Patent is prior art to defendants' patents and that plaintiff's containers were based on that patent. Plaintiff presented expert testimony that the '842 Patent was invalid based on anticipation.

Plaintiff also attempted to introduce the '478 Patent into evidence. Defendant filed a motion in limine on the grounds that the '478 Patent contained new matter not supported by the '456 Patent. The trial court did not rule on the motion. At trial, however, the court did not allow the '478 Patent into evidence on the grounds that the '478 Patent is not prior art.

Ultimately, the case proceeded to trial and the jury found plaintiff liable for willful infringement. The jury expressly rejected plaintiff's arguments regarding invalidity based on anticipation or obviousness. The court entered a permanent injunction and awarded enhanced damages due to plaintiff's deliberate copying. The court rejected plaintiff's argument holding that, "Vita-Mix's arguments that its blending jars were based on the work of Brent Miller is not persuasive. The court addressed those arguments in earlier orders, including the order granting summary judgment for [Blendtec] that the Brent Miller's unpatented, undeveloped ideas did not anticipate the [Blendtec] patents." In all, the final judgment entered in favor of defendant totaled approximately $24 million. The Federal Circuit affirmed the judgment in all respects.[2]

In the meantime, plaintiff filed a second continuation application, which ultimately resulted in the issuance of the '004 Patent. The application was filed on June 25, 2007. In December of 2007, plaintiff sought an interference proceeding, which was rejected by the USPTO. Plaintiff did not further pursue an interference proceeding. Thereafter, on September 23, 2009, plaintiff amended its application. The patent examiner rejected the claims for lacking

---

[2] The Federal Circuit noted that plaintiff did not appeal the court's ruling that the '478 Patent is not prior art.

written description support in the specification.  In response, plaintiff amended the specification

and the figures.  The examiner's notes show that plaintiff added a line of symmetry.[3]  The

examiner criticized plaintiff for adding a new disclosure in its application, but raised the issue in

the context of indefiniteness pursuant to 35 U.S.C. § 112, ¶ 2.  Plaintiff appealed the issue and

the Board of Patent Appeals ("Board") concluded that the examiner raised the issue under the

wrong paragraph of Section 112.  (Doc. 29-60 at PAGEID 1238)("The issue of whether there is

support in the provisional application for the subject matter now being claimed should have been

raised under a 35 U.S.C. § 112, first paragraph rejection (written description requirement).").

The Board reversed the rejection on procedural grounds and never addressed ths issue under

Section 112 paragraph 1.  Shortly thereafter, the examiner issued a notice of allowance and the

'004 Patent issued in June of 2014.

Plaintiff filed this lawsuit alleging that defendant's blending jars infringe the '004 Patent.

Defendant moves for summary judgment and plaintiff opposes the motion.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010,

provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part
> of each claim or defense—on which summary judgment is sought. The court shall grant
> summary judgment if the movant shows that there is no genuine dispute as to any
> material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion

of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the

---

[3]     The notes indicate "Element LS added."

court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard. See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a

jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

Pursuant to the presumption of validity of 35 U.S.C. § 282, a party challenging an issued patent's validity must provide clear and convincing evidence that the patent is invalid. *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (applying the clear and convincing standard to a written description challenge). "[I]n deciding a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

**ANALYSIS**

Defendant moves for summary judgment on two grounds. According to defendant, the '004 Patent is invalid and is not entitled to the priority date of the provisional application. Defendant also argues that plaintiff's patent infringement claim is barred by issue preclusion. Each issue will be addressed in turn.

1. Invalidity

Defendant argues that the '004 Patent adds new material to the continuation applications and, therefore, it is not entitled to the priority date of the provisional application. Because the '004 is not entitled to the June 26, 2001 priority date, intervening prior art renders the '004 Patent invalid. Plaintiff responds that sufficient written description support is contained in the provisional application. Therefore, it is entitled to the provisional application priority date and is not invalid.

Defendant's arguments arise under 35 U.S.C. § 112, first paragraph, which states as follows:

> The specification shall contain a *written description* of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to *enable* any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the *best mode* contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112, ¶ 1 (emphasis added).

This paragraph embodies three distinct requirements of written description, enablement and best mode. *Univ. of Rochester*, 358 F.3d at 921. At issue here is the written description requirement. As applied to this case, this means that the language of the later-amended claims must find appropriate support in the original specification of the provisional application. That specification must include sufficient information to show that the inventor possessed the later-claimed invention at the time of the original disclosure. *Pandrol USA, LP v. Airboss Railway Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005). "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not; the applicant for a patent is therefore required to 'recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.'" *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (quoting *Vas-Cath Inc. v.*

*Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991)).

Although generally stated as the "possession" test, a showing of actual possession at the time of the original disclosure is not enough; rather, "the written description requirement is satisfied by the patentee's disclosure of 'such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention.'" *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 969 (Fed. Cir. 2002) (quoting *Lockwood v. American Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)).  In other words, the purpose of the test is to demonstrate possession of the claimed invention and possession is proved by full disclosure of what is claimed.  *Enzo*, 323 F.3d at 969.  "The possession test requires assessment from the viewpoint of one of skill in the art." *Pandrol*, 424 F.3d at 1165.

As an initial matter, there is some dispute between the parties as to the correct burden of proof in this case.  Upon review, the Court finds that pursuant to *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008), the initial burden of production lies with defendant.  The party challenging the validity of a patent must come forward with evidence that anticipating prior art exists that would render the patent invalid.  If so, the burden of production shifts to the patentee to provide evidence that either (1) the prior art does not actually anticipate; or (2) the prior art cited by defendant is not prior art because the patent is entitled to the benefit of a filing date that is before the alleged prior art.  The ultimate burden of persuasion, however, remains with defendant, as it is the party seeking to invalidate the patent.  *Id*.

Here, defendant provides the Court with a detailed claim chart showing how defendant's '117 Patent anticipates each and every claim of plaintiff's '004 Patent. Defendant also points out that plaintiff itself alleges that defendant's container infringes every element of the '004 Patent. Defendant notes that it is "axiomatic that that which would literally infringe if later

anticipates if earlier." *See, Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001).  Plaintiff does not provide the Court with sufficient evidence or argument regarding whether the '117 Patent anticipates the '004 Patent.  Rather, plaintiff simply notes that defendant does not concede infringement.  Plaintiff also points out that the patent examiner who allowed the '004 Patent also examined the '117 Patent.  According to plaintiff, the Court should presume that because the examiner knew of the '117 Patent he must have concluded that it was not prior art to the '004 Patent.  These arguments are rejected.  The fact that defendant does not concede infringement is not particularly relevant in that plaintiff itself expressly alleges literal infringement.  Moreover, the patent examiner's awareness of the '117 Patent does not establish a lack of anticipation.  In light of defendant's extensive and unrefuted analysis regarding anticipation, the Court finds that the '117 Patent is anticipatory prior art to the '004 Patent.

Having concluded that the '117 Patent anticipates the '004 Patent, the Court turns to whether the '117 is not prior art because "the patent is entitled to the benefit of a filing date that is prior to the alleged prior art." *Technology Licensing Corp.,* 545 F.3d 1316 at 1327.  In other words, the Court must now address plaintiff's argument that the '004 Patent is entitled to the June 26, 2001 priority date, *i.e.*, the date of the filing of the provisional application.

### One line of symmetry

The '004 Patent contains a claim requiring "a bottom surface having a periphery defining only one line of symmetry."  Plaintiff argues that the '004 Patent is entitled to the provisional filing date because the provisional application provides sufficient written description support for this claim limitation.

The "background art" section of the provisional application notes difficulties that arose regarding the blending of viscous liquids.  With regard to background art, the bottom container of the blender was  "typically formed flat with a regularly-shaped perimeter, for example, a square or circle, and the blades are rotatable in the center of that regular configuration."  Miller went on to disclose his invention as including "a rotatable mixing blade assembly [that] is positioned above the bottom surface, the blade assembly being displaced from the center of the bottom surface."  In addition, the "container includes a bottom surface having a non-symmetrically shaped perimeter."

The provisional application also indicates:

Another factor which contributes to the desired nonuniform flow created by the present invention is the fact that, in the preferred embodiment, the shape of the bottom surface [] is non-symmetrical or otherwise irregular.  That is, while the desirable flow can be created with an off-centered blade assembly [] and a regularly configured or symmetrical bottom surface[], the desired flow can be enhanced by, and in fact, even independently created by, a bottom surface [] which is irregular or non-symmetrical in configuration.

***

In summary as to the foregoing, at least three factors of the present invention enhance the flow in the blending of viscous fluids.  These factors relating to the off-center blade assembly, the non-symmetrical bottom surface and the sloped bottom surface, may singly or in combination enhance the flow pattern.

In addition to the foregoing, the provisional application contains the following relevant diagrams:



FIG. 3



FIG 4



FIG 6

Plaintiff points to the diagrams as providing sufficient written description because figures alone are sufficient to satisfy Section 112, Paragraph 1.  Plaintiff notes that all three figures contain a single line of symmetry.  Plaintiff also claims that the language in the provisional, read in conjunction with the figures, demonstrates that the provisional application contains sufficient written description to encompass the "single line of symmetry" limitation contained in the '004 Patent.  On the other hand, defendant argues that the provisional application discloses a blender with a "non-symmetrical" base.  The common and ordinary meaning (as well as the dictionary definition) of  "non-symmetrical" is diametrically opposed to a claim limitation *requiring* a "single line of symmetry."  According to defendant, a shape with a "single line of symmetry" is by definition "symmetrical."  Thus, the provisional does not provide support for this limitation in the '004 Patent.

Upon review, the Court finds that defendant is not entitled to summary judgment on invalidity.  Rather, the Court finds that a genuine issue of material fact exists as to whether the "single line of symmetry" limitation is taught in the provisional application.  The provisional indicates that, at that time, blender jars were typically formed with a "regularly-shaped perimeter," which the inventor denoted to mean a "square or circle."  Those shapes have multiple lines of symmetry.  Later, the inventor indicated that a "bottom surface [] which is *irregular or non-symmetrical* in configuration" will independently improve the blending of viscous liquids.  (Emphasis added).  The figures provided in the provisional all appear to be symmetrical about a line. The Court finds that a reasonable factfinder could determine that the text of the provisional, together with the figures, teach a blending jar with a single line of symmetry.

Defendant argues that the Court should not rely on the figures because the figures

themselves do not disclose a line of symmetry.  Specifically, no actual line is depicted in the figures and a person of ordinary skill in the art would have to infer that "various points along the periphery of the bottom wall...are equidistant to a hypothetical, undisclosed line...."  As plaintiff points out in response, however, the text of the provisional describes Figure 4 as "generally heart-shaped" and Figure 6 as "generally a teardrop shape."  The Court agrees with plaintiff that a reasonable factfinder could, *when read together*, conclude that the textual descriptions of the figures and the depictions themselves provide sufficient support to meet the written description requirement under Section 112, Paragraph 1.  Hearts and teardrops are typically understood to contain one line of symmetry.[4]  And, although defendant correctly notes that figures are not presumed to be drawn to scale, the Court is not relying on the figures *alone* to conclude that a question of fact exists.[5]  Nor is the Court required to determine scale or proportions to resolve the issue.

Both sides cite the prosecution history in support of their respective positions.  The Court finds that the evidence does not mandate summary judgment with regard to written description.  During the prosecution of the '004 Patent, the patent examiner issued an office action rejecting

---

[4] Defendant provides the Court with examples of hearts and teardrops that contain no lines of symmetry.  Those examples, however, are not at all similar to the figures set forth in the provisional.  The Court cannot read the text and the figures separately.  Rather, the Court must look at the provisional application as a whole.

[5] Both sides cite a number of cases discussing various instances in which courts either granted or denied summary judgment.  No party cites a case directly on point.  Regardless, however, the Court notes that each case decided under Section 112 must be decided on its own facts.  Thus, "the precedential value of cases in this area is extremely limited."  *Vas-Cath Inc. v. Manhurkar*, 935 F.2d 1555, 1564  (Fed. Cir. 1991)(*quoting In re Driscoll*, 562 F.2d 1245, 1250 (CCPA 1977)).

the "one line of symmetry" claim for lack of written description.  According to the rejection:

> This aspect of the claims relating to "symmetry" contradicts the instant disclosure which emphasizes the non-symmetrical perimeter or non-symmetrical bottom surface 16 deemed critical to the proper functioning and efficiency of the blender container (see for example p. 3, lines 1-5, p. 6, lines 13-21, and p. 8, lines 13-17). The amended claims now recite a bottom wall that is *necessarily* symmetrical in design rather than being non-symmetrical as described in the specification.

Plaintiff responded to the office action explaining that the figures and the phrase "non-symmetrical or otherwise irregularly shaped" provided ample support for Section 112, Paragraph 1's requirements.  The examiner did not maintain the objection going forward.  Defendant points out that the examiner added the phrase "Element LS added," which defendant claims demonstrates that a line of symmetry was not present in the provisional application.  The Court notes, however, that ultimately the examiner did *not* reject the claims on that basis.

Defendant further points out that the examiner did in fact "continue to criticize [plaintiff] for adding new disclosure to is application," but that the examiner erroneously raised the issue as indefiniteness instead of written description.  Subsequently, the Board overturned the examiner's rejection on the basis of the examiner's procedural error.  Defendant now argues that the examiner never addressed the "open" issue of the new matter.  The Court rejects defendant's argument for the simple reason that the "new matter" at issue before the Board has nothing to do with the claim limitation requiring a "single line of symmetry."  Thus, it is simply not relevant to the issues before the Court.[6]  In all, the Court finds that the prosecution history does not mandate summary judgment.  Although the examiner initially rejected the "single line of symmetry"

---

[6] For the same reason, the Board's opinion has little relevance to the "blade assembly located on said line of symmetry" issue, which the Court addresses in the next section.  Rather, the Board addressed the examiner's rejection regarding the disclosure of "seven possible 'side surfaces,' 'side walls' or 'sides'" and the identification of which wall many of the claims referred to.

claim for lack of a written description, after receiving plaintiff's argument in response to the rejection, the examiner dropped the rejection.

Defendant next argues that plaintiff cannot rely on the doctrine of inherency to satisfy the written description requirement. According to defendant, the "single line of symmetry" limitation is not inherently present in the provisional application. Simply noting that the figures "might include" a line of symmetry is insufficient.

The doctrine of inherency arises when a specification lacks sufficient written description to satisfy Section 112, paragraph 1, yet the patent nonetheless "unavoidably teaches the property in question." *Agilent Technologies, Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1383 (Fed. Cir. 2009). *See also*, *Tronza v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998). Here, plaintiff disavows reliance on the doctrine of inherency. Plaintiff claims that it need not rely on the doctrine because the text and figures in the provisional actually disclose the "single line of symmetry" limitation. Upon review, the Court agrees that summary judgment on the issue of inherency is not appropriate. The Court agrees that, having previously determined that a question of fact exists as to whether the provisional application contains sufficient written description, the Court need not reach defendant's argument that the doctrine of inherency is not satisfied.

Blade assembly...located on said line of symmetry

The text of the provisional describes the blade assembly as "displaced from the center of the bottom surface," "not centered relative to the bottom surface," and "off-centered." Defendant argues that this terminology does not provide written description support for the claim limitation requiring the blade assembly to be located on the "line of symmetry," which defendant

refers to as a "centerline." Defendant also argues that the mirror image of the drawings shows that the blade assembly is not located on "said" line of symmetry. In response, plaintiff argues that the figures provide sufficient written description because all three of them depict a blade assembly located on the line of symmetry. Because the text of the provisional does not "teach away" from the limitation, the figures alone are sufficient to satisfy Section 112, Paragraph 1's requirements. Plaintiff further notes that the patent examiner originally rejected the claim based on lack of written description support until he received plaintiff's argument pointing out the sufficiency of the disclosures. Upon receipt, the examiner did not maintain the rejection.

Upon review, and for essentially the same reasons set forth above, the Court finds that a question of fact exists as to whether the provisional application provides sufficient written description support for the claim limitation requiring a "blade assembly...located on said line of symmetry." The Court previously determined that a question of fact exists with regard to whether there is sufficient written description to support the existence of a "single line of symmetry" in the provisional application. If a reasonable trier of fact concludes that the provisional discloses a single line of symmetry, that same individual could reasonably conclude that the blade assembly is located on that line of symmetry. The Court rejects defendant's argument that the "mirror image" overlay shows that, as a matter of law, the blade assembly is not on the line of symmetry. The drawings need only convey "with reasonable clarity" that one skilled in the art would understand that Miller invented a "blade assembly...located on said line of symmetry." *See, Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1566 (Fed. Cir. 1991). Having reviewed the drawings, the Court finds that a reasonable juror could so conclude.

2. Issue preclusion

Defendant argues that the jury in the Utah litigation previously determined that plaintiff

willfully infringed defendant's patents.  The jury further determined that the '456 Patent does not anticipate or render obvious defendant's patents.  Defendant argues that its infringement claim in the Utah litigation was based on the fact that plaintiff copied its blending jar design and that Miller did *not* invent the jar disclosed in the '456 Patent.  According to defendant, plaintiff defended against the willful infringement claim by arguing that Miller invented the blending jar before defendant and, as such, defendant's patents were invalid.  The jury rejected these arguments.  Defendant claims that the jury thus necessarily concluded: (1) defendant's jar was patentably distinct from the inventions disclosed in the '456 Patent; (2) Miller did not invent the configuration of defendant's blending jar; and (3) plaintiff copied defendant's blending jar and did not derive it from Miller's invention.  Yet, to succeed here, plaintiff must establish that *Miller* actually invented the blending jar.

In response, plaintiff argues that the Utah litigation could not have involved whether defendant infringes the '004 Patent because that patent did not issue until nearly two years after the Utah litigation ended.  Nor did the prior litigation consider whether defendant infringed any patents related to the '456 Patent.  As such, issue preclusion does not bar this case.

> Under the doctrine of issue preclusion, traditionally called "collateral estoppel," issues which are actually and necessarily determined by a court of competent jurisdiction are conclusive in a subsequent suit involving the parties to the prior litigation.  The underlying rationale is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again.

*Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1570 (Fed. Cir. 1983).

The four factors the Court must consider are whether "(1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated;" (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded was fully represented in the

prior." *Id*.

Upon review, the Court finds that defendant is not entitled to summary judgment with regard to issue preclusion because defendant does not identify issues to be decided in this case that are "identical" to those involved in the Utah litigation. The gist of the Utah litigation was whether plaintiff's blending jar infringed defendant's patents. Here, however, the jury will be asked to assess whether defendant's blending jar infringes a patent that was issued two years *after* the Utah litigation ended. Defendant does not expressly articulate how issues decided in the Utah litigation will *necessarily* arise in this case. For example, defendant argues that the jury in the Utah lawsuit concluded that plaintiff copied defendant's blending jar. As a result, the jury must have determined that plaintiff's blending jar was not the product of Miller's invention. Yet, as plaintiff points out, the blending jar at issue in the Utah litigation is no longer sold and is not at issue in this lawsuit.

Defendant does point out that the jury determined that the '456 Patent does not render defendant's patents invalid. A finding that the '456 Patent does not render defendant's patents invalid, however, does not *necessarily require* a finding that the newly issued '004 Patent lacks sufficient written description support from the provisional application. Defendant points to no law in support of this theory. Moreover, defendant ignores that at trial plaintiff had the burden of proof to show invalidity by clear and convincing evidence. The fact that plaintiff was unable to convince the jury by clear and convincing evidence that each and every element in defendant's patents were present in the '456 Patent does not mean that the '004 Patent is not entitled to the provisional filing date.[7]  Nor is the Court convinced that the finding of willful

---

[7]  As plaintiff points out, the focus of the anticipation analysis was on whether the '456 Patent in conjunction with the prior art disclosed a truncated wall. In upholding the jury's verdict, the

infringement requires summary judgment in defendant's favor. Again, the Utah court and jury focused on a blending jar that is not before this Court and is no longer sold on the market. As such, the finding of willfulness is not relevant to determining whether defendant infringes that '004 Patent.

**CONCLUSION**

For the foregoing reasons, Defendant Blendtec's Motion for Summary Judgment Re: Issue Preclusion and Priority Date (Doc. 27) is DENIED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/28/16

---

Utah court held that sufficient evidence existed that the prior art (including the '456 Patent) does not disclose a truncated wall. The truncated wall limitation, however, is not at issue in this motion.