UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Vitamix Corporation,** *et al.*, | ) | **CASE NO. 1:15 CV 1118** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Blentec, Inc.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the parties' Claim Constructions Briefs (Docs. 38, 39). This is a patent case involving claims directed at a blending jar. The Court construes the disputed claim terms as follows:

(1) "not centered relative to the bottom surface" means "not positioned on the centroid of the bottom surface"

(2) "not centered relative to the side wall at height of the blade assembly" means "not positioned on the centroid of the area defined by the side wall at the height of the blade assembly"

1

(3) "bottom surface having a periphery" means "container's interior bottom surface having a periphery"

(4) "bottom surface that is at least partially sloped" is afforded its plain and ordinary meaning.

(5) "at least partially sloped bottom" is afforded its plain and ordinary meaning.

(6) "at least a portion of the bottom surface is sloped downwardly from a side toward the blade assembly" is afforded its plain and ordinary meaning.

(7) "bottom surface that is sloped" is afforded its plain and ordinary meaning.

**FACTS**

Plaintiffs, Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation (collectively "plaintiff") bring this lawsuit against defendant Blendtec, Inc. alleging patent infringement.  According to the complaint, defendant infringes Patent No. 8,753,004 ("'004 Patent").  Plaintiff and defendant both compete in the commercial blender market.  Plaintiff alleges that defendant directly infringes at least claim[s] 1-6, 8-9, 14, 20, 24, 28, 33, and 43 of the '004 Patent by making, using, offering to sell, and selling, without limitation, its "WildSide" and "WildSide+" product lines of blender jars.

**ANALYSIS**

"[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman v. Westview Instruments*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  "To ascertain the meaning of claims, [the court considers] three sources:  The claims, the specification, and the prosecution history." *Markman*, 52 F.3d at 979.  The words of a claim

2

are generally given their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). The ordinary and customary meaning is to be determined from the perspective of one of ordinary skill in the art at the time of the invention. *Id.* at 1313. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Accordingly, the court first looks to the claim itself, read in view of the specification. *Id.* at 1315 (The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."). However, while the court may look to the written description to define a term already in a claim limitation, the court may not read a limitation from the written description into a claim. *Id.* at 1323.

As stated above, the prosecution history should also be considered by the court when conducting claim construction. *Phillips*, 415 F.3d at 1317. The "prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*; *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution."). Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers. *Chimie*, 402 F.3d at 1384. Moreover, the prosecution history of a parent application applies with equal force to a later patent that contains the same claim limitation. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999); *see also*

*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) ("the prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application").  "The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter."  *Cybor Corp. v. Fas Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998).

All other evidence is considered extrinsic and may be relied upon by the court in its discretion.  *Markman*, 52 F.3d at 980; *Phillips*, 415 F.3d at 1317.  However, extrinsic evidence is less reliable than intrinsic evidence.  *Phillips*, 415 F.3d at 1318.  Thus, the court should restrict its reliance on extrinsic evidence to educating itself regarding the field of invention or to determining what a person of ordinary skill in the art would have understood the claim terms to mean.  *Id.* at 1319; *see also Markman*, 52 F.3d at 986 ("It is not ambiguity in the document that creates the need for extrinsic evidence but rather unfamiliarity of the court with the terminology of the art to which the patent is addressed.").  Extrinsic evidence may not be used for the purpose of varying or contradicting the terms of the claims.  *Markman*, 52 F.3d at 981.

As a result, excessive reliance should not be placed on dictionaries.  *Phillips*, 415 F.3d at 1321.  "The main problem with elevating the dictionary to such prominence is that it focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent.  ...  [H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification."  *Id.*

The parties have identified seven claim terms that they deem must be construed by the Court.  (1) not centered relative to the bottom surface; (2) not centered relative to the side wall at

height of the blade assembly; (3) bottom surface having a periphery; (4) bottom surface that is at least partially sloped; (5) at least partially sloped bottom; (6) at least a portion of the bottom surface is sloped downwardly from a side toward the blade assembly; and (7) bottom surface that is sloped.

1.  "not centered relative to the bottom surface"

Plaintiff's proposed construction: "not positioned on the centroid of the bottom surface"

Defendant's proposed construction: "sufficiently off-center with respect to the bottom surface to create a flow pattern where the up-flow of ingredients occurs only over a portion of the circumference of the blades and an uninterrupted down flow through the blades will occur around the remaining portion of the circumference"

The Court's construction: "not positioned on the centroid of the bottom surface"

Defendant argues that plaintiff's proposed construction would encompass containers that produce an air flow pattern that the invention aims to eliminate. According to defendant, both the claims and specification emphasize the disadvantage of the vortex flow pattern in prior art blenders. That flow pattern is described as follows:

> [T]he fluid is drawn down through the blades, generally near the center thereof. The fluid then returns to the main body of the container by passing upwardly through the gap between the circumferential tip of the blades and the perimeter of the container.

The '004 Patent provides that this flow pattern is not acceptable for blending viscous liquids. Defendant argues that the '004 Patent discloses that an object of the invention is to provide a container that "creates an irregular flow pattern to discourage the formation of an air pocket around the blades[.]" Defendant further argues that the '004 Patent "links" the non-centered blade feature of the invention to a "very specific nonuniform flow pattern." According

5

to defendant, as a result of the noncentered blade assembly, "a fluid flow pattern, shown by the arrows in Fig.1 is created.  This flow pattern is to be contrasted with the flow pattern of the prior art and avoids those problems."  According to defendant, Fig. 1 demonstrates that the up-flow is to occur only over a portion of the circumference of the blades 21, and uninterrupted down flow through the blades will occur around the remaining portion of the circumference.[1]

Defendant's argument essentially centers around the claim that plaintiff's proposed construction will encompass blender jars that produce the unwanted flow pattern described in the prior art.  Thus, in layman's terms, it appears that defendant is claiming that unless the vertical axis of the blade assembly is "sufficiently" off-center, the unwanted flow pattern will in fact result.

In response, plaintiff argues that the patentee of the '004 Patent acted as lexicographer for the "not centered" language.  Specifically, plaintiff notes that the specification in the patent states that:

> The container 15 of the present invention includes several features which enable it to more efficiently blend ingredients which were heretofore difficult to blend....  One of those features relates to the position of the blade assembly 20 in container 15.  As shown in the drawings, blade assembly 20 is not centered relative to bottom surface 16.  That is...the axis of rotation of 55 blades 21...is not positioned on the centroid of the bottom surface.

Plaintiff further argues that defendant's proposed construction violates a number of other principles of claim construction.  According to plaintiff, defendant's proposed construction is exceedingly confusing.  Plaintiff argues that it would be impossible to determine infringement or

---

[1] Defendant further argues that the prosecution history supports its argument.  Defendant points out that plaintiff argued to the Patent Trial and Appeal Board that the "not centered" limitations are directed at solving the flow problem.

invalidity based on defendant's proposed definition because an individual would need to build the blender jar in order to determine if the limitation is met.  In addition, defendant wrongfully attempts to import unclaimed functional limitations into the claim term.  According to plaintiff, the specification's description predicts that a certain fluid flow pattern would result from the "features" of the invention.  But, the patent's claims only cover the structure of the blender jar and do not attempt to claim any resulting function.  In addition, plaintiff points out that the flow pattern does not result solely from the placement of the blade assembly.  Rather, other features, including the non-symmetrical bottom surface and the sloped bottom surface also contribute to the enhanced flow pattern.  Thus, the Court should not read the functional limitation solely onto the "centered" claims.

Defendant also argues that the extrinsic evidence supports its proposed construction. Defendant relies on an engineering textbook that explains that the position of the blade is critical because any slight deviation in position may result in undesirable flow pattern, including those patterns the patent is designed to avoid.  As such, defendant claims that a person of ordinary skill in the art would understand "not centered" as requiring the blade axis to be off center such that the beneficial tumbling flow pattern "taught in the '004 Patent" is achieved.  Defendant also relies on its expert report, in which its expert opines that one of ordinary skill in the art would not understand the term "not centered" to mean *any* degree of shift from the centroid because not all of those shifts would obtain the desired flow.  In addition, defendant points out that the inventor testified that the invention's purpose is to "cut" the vortex and so that it dissipates.

Upon review, the Court construes "not centered relative to the bottom surface" to mean "not positioned on the centroid of the bottom surface."  "When a patentee explicitly defines a

7

claim term in the patent specification, the patentee's definition controls." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363 (Fed. Cir. 2009).  Here, as pointed out by plaintiff, the patentee provided an express definition of this phrase:

> As shown in the drawings, blade assembly 20 is not centered relative to bottom surface 16.  That is...the axis of rotation of 55 blades 21...is not positioned on the centroid of the bottom surface.

By using the phrase "that is" the patentee demonstrated his intent to define the term "not centered relative to the bottom surface." *See, e.g., Lectec Corp. v. Chattem, Inc.*, 2010 WL 10861324 (Fed. Cir. 2010)(using phrase "i.e.," which translates into "that is" to demonstrate that patentee clearly expressed intent to define the term); *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322 (Fed. Cir. 2009)(use of "i.e." signals intent to define the word to which it refers). The patentee defined the term to mean "not positioned on the centroid of the bottom surface." Because the patentee expressly defined this term, the Court adopts this construction.

The Court rejects defendant's argument that the term requires further construction to account for the fact that the purpose of the patent is to achieve a desired air flow.  As an initial matter, plaintiff correctly notes that the Court should not import a functional limitation to a nonfunctional phrase.  *See, Ecolab, Inc. V. Envirochem, Inc.*, 264 F.3d 1358 (Fed. Cir. 2001)("where the function is not recited in the claim itself by the patentee, we do not import such a limitation").  Here, the phrase "not centered relative to the bottom surface" contains no functional limitation and the Court will not impose one.  Moreover, defendant's argument that this phrase must be construed to mean "sufficiently off-center with respect to the bottom surface to create a flow pattern where the up-flow of ingredients occurs only over a portion of the circumference of the blades and an uninterrupted down flow through the blades will occur

8

around the remaining portion of the circumference" is misguided in light of the specification. Defendant argues that the specification discloses that "off centered" must produce the desired airflow. But the specification expressly provides that "...while a desired airflow can be created with an off-centered blade assembly and a regularly configured or symmetrical bottom surface, the desired flow can be enhanced by, *and even independently created* by, a bottom surface which is irregular or non-symmetrical in configuration."  (4:19-24) Thus, contrary to defendant's position, the off-centered blade assembly need not create the desired airflow in and of itself. Thus, it is not proper to read such a limitation into the claim language.

Having concluded that the patentee defined the term in the patent, the extrinsic evidence relied on by defendant need not be considered by the Court.  *See, e.g., Martek Biosciences*, 579 F.3d at 1382.

2.  "not centered relative to the side wall at height of the blade assembly"

Plaintiff's proposed construction: "not positioned on the centroid of the area defined by the side wall at the height of the blade assembly"

Defendant's proposed construction: "sufficiently off-center with respect to side wall at the height of the blade assembly to create a flow pattern where the up-flow of ingredients occurs only over a portion of the circumference of the blades and an uninterrupted down flow through the blades will occur around the remaining portion of the circumference

The Court's construction: not positioned on the centroid of the area defined by the side wall at the height of the blade assembly

The parties make no arguments separate from those raised above.  Accordingly, the Court will construe the "not centered" terms consistently throughout the various claims in the '004

Patent.  *See, e.g., Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361 (Fed. Cir. 2005).

     3.  "<u>bottom surface having a periphery</u>"

<u>Plaintiff's proposed construction</u>: plain and ordinary meaning; or, alternatively, "container's interior bottom surface having a periphery"

<u>Defendant's proposed construction</u>: "bottom surface having a periphery defined by the intersection of the upper surface of the bottom wall and the interior surface of the side walls and which includes a curved area having a radius of curvature that generally approximates the curvature of the circle that the tips of the blades transcribe while rotating"

<u>The Court's construction</u>: "container's interior bottom surface having a periphery"

Defendant argues that there are two essential characteristics of the "periphery" claim limitation.  First, the bottom surface periphery is limited to the internal geometry of the container, which defendant defines as "the intersection of the side walls and the bottom surface." Second, the bottom surface periphery must include a "curved area that approximates the radius of the curvature transcribed by the spinning blades."

In response, plaintiff argues that the claim term should be given its plain and ordinary meaning.  To the extent construction is necessary, plaintiff argues that the Court should define the term to mean "container's interior bottom surface having a periphery."  In other words, plaintiff does not dispute that the claim is directed at the interior–as opposed to the exterior–periphery.  Plaintiff disputes, however, that the claim includes the "curved area" language suggested by defendant.  According to plaintiff, defendant is attempting to import a limitation from exemplary embodiments.

Upon review, the Court accepts plaintiff's alternative proposed construction.  The parties

do not dispute that the claim is directed at the interior bottom surface.  The Court finds however, that limiting the terms to the "plain and ordinary" meaning does not resolve the parties' dispute.  As defendant points out, blender containers often have interior and exterior bottom peripheries that do not align.  Thus, the plain and ordinary meaning will not suffice.  Defendant  points out that during prosecution, the Patent Office issued a final office action rejecting plaintiff's patent claims based on the Walter patent, which described a container periphery with only one line of symmetry.  In response, plaintiff appealed the examiner's final action and noted that the examiner improperly relied on the bottom periphery of the exterior (as opposed to the interior) walls in Walter.  The argument overcame the Walter rejection.  Because this Court can look to the prosecution history in order to "inform" the meaning of the claims, the Court finds that the prosecution history confirms that the meaning of the claim term is "container's interior bottom surface having a periphery."  Defendant's alternative proposal that the bottom surface is "defined by the intersection of the upper surface of the bottom wall and the interior surface of the side walls" is needlessly confusing and convoluted and adds nothing to the meaning of the term that is not already encompassed by simply noting that "periphery" refers to the "interior" bottom surface.

       The Court also rejects defendant's proposed construction that the bottom surface periphery must include a "curved area that approximates the radius of the curvature transcribed by the spinning blades."  Defendant argues that the provisional application contained the following language:

> It should be noted that a common feature of all of these configurations is the **curved area 27 on the side of bottom surface** 16....  In fact, as can be observed, the radius of curvature of area 27 generally approximates the curvature of the circle that the tips of blades 21 transcribe when rotating.

11

(Provisional Application at 5:27-31)(emphasis added).  Notably, this language is not contained in the '004 Patent.  Rather, the language was amended in 2006 such that the specification for the '004 Patent reads:

> It should be noted that a common feature of all of these configurations is the side wall on the side of bottom surface 16 adjacent to blade assembly 20.  **Side wall 27 is shown as being curved** having a radius of curvature that generally approximates the curvature of the circle that the tips of blades 21 transcribe when rotating.

Thus, in the patent that was issued and is currently before the Court for construction, the preferred embodiments are described as having a side wall that is curved and not a curved side of the bottom surface.  Defendant argues that if "Vita-Mix wants the asserted claims to benefit from the original 2001 priority date, the original written description should govern the Court's claim construction.  Alternatively, if Vita-Mix wants the amended description to govern claim construction, the asserted claims must be limited to the August 8, 2006 amendment date as the priority date."  Defendant, however, cites no law to this Court which would require or allow the Court to construe the claims of an issued patent based on language contained in a provisional application where the parties appear to dispute whether the claim limitation is the same.[2]  Absent some citation by the parties, the Court declines to do so in this case.

Moreover, defendant acknowledges that "Vita-Mix relies exclusively on the language that its lawyers altered in 2006 to make the curved area appear optional rather than essential.  This strategic amendment does not reflect the original character of the claimed invention."  (Doc.

---

[2]  The Court is aware that it is permitted to consider the prosecution history of parent patents where the claim terms are the same.  *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004).   Notably, however, and as set forth more fully herein, defendant in no way concedes that the "side wall" amendment is not "new matter."

12

43 at 12).  Based on this statement alone, the Court finds that it cannot accept defendant's proposed claim construction.  Defendant asks the Court to impart a "curvature" limitation in construing

 "bottom surface having a periphery," yet acknowledges that the "curved area" "appears" *optional* in the language set forth in the '004 Patent.

It appears that defendant is asking the Court to consider the language in the provisional application while still maintaining an argument that the language constitutes new matter and, therefore, plaintiff is not entitled to the priority date of the provisional application.  The Court notes, however, that claim construction is not the proper vehicle to address the issue of priority date.  The Court previously allowed defendant to file an early summary judgment motion addressing priority date and defendant failed to raise this issue in that motion.

Because the intrinsic evidence wholly fails to support defendant's proposed construction, and because plaintiff's proposed construction is supported by the intrinsic evidence, the Court declines to consider the extrinsic evidence relied on by defendant.

4.  "bottom surface that is at least partially sloped"

Plaintiff's proposed construction: plain and ordinary meaning; or, alternatively, "bottom surface that includes a sloped portion but that may also include other non-sloped portions"

Defendant's proposed construction: "bottom surface that has some regions that are inclined at an angle relative to the normal plane such that the distance between each blade and the bottom surface will vary as the blades rotate"

The Court's construction: plain and ordinary meaning

Defendant argues that this term, as well as a number of other terms requiring that the

13

bottom surface be sloped in some fashion, should be construed to include a limitation that the surface is inclined "at an angle relative to the normal plane such that the distance between each blade and the bottom surface will vary as the blades rotate." According to defendant, the varying distance between the blades and the bottom surface contributes to the nonuniform flow described in the invention. Defendant claims that the variation in distance is not described as a possible or preferred outcome. Rather, according to defendant, it is a "necessary characteristic" needed to enhance the flow pattern.

Defendant notes that the extrinsic evidence is consistent with its construction of this claim. Defendant's expert report provides as follows:

> The '004 patent's description of the sloped bottom feature does not say that sometimes the sloping will result in this variation of distances. It states that "as a result" of the sloped bottom surface, that distance variation is created. Therefore, a person of ordinary skill in the art of blender engineering and design, reading the '004 patent claims within the context of the '004 patent as a whole, would understand that when the claims incorporate the sloped bottom feature, the recited sloping refers to a slope that will create the changing distances as explained in the '004 patent.

Thus, according to defendant, its expert confirms that the '004 Patent requires that the slope create a varying blade distance as required under defendant's proposed construction.

In response, plaintiff argues that the "sloped" terms should be given their plain and ordinary. According to plaintiff, these words are easily understood by lay judges. Plaintiff argues that the '004 Patent claim language, specification, and file wrapper simply does not contain the limitation suggested by defendant. Plaintiff argues that to the extent any construction is necessary, the Court should construe the phrase "bottom surface that is at least partially sloped" to mean "a bottom surface that includes a sloped portion but that may also include other non-sloped portions." Plaintiff claims that the patent examiner used this definition multiple

14

times throughout the prosecution of the '004 Patent.  Plaintiff also argues that defendant's construction of these terms improperly imports a limitation from a preferred embodiment.  The preferred embodiment, however, is only one way in which the patentee envisioned that the invention could be practiced.  Plaintiff notes that defendant fails to point to any statement that demonstrates an intent on the part of the patentee to limit the invention.

Plaintiff further points out that defendant's construction does not specify the orientation of the axis of rotation of the blade assembly.  As such, under defendant's proposed construction, the blender jar could have a completely flat bottom surface, which contradicts any person's understanding of the term "sloped."  Plaintiff points out that defendant's own expert acknowledges that a blender jar with a completely flat bottom surface would satisfy defendant's proposed claim construction.[3]

In response, defendant argues that the specification indicates that the only way a sloped bottom surface could contribute to the desired flow pattern is if a varying distance between the blades and the bottom surface exists as the blades rotate.  Defendant also argues that the patentee acted as a lexicographer in defining certain "sloped" terms.  Defendant notes the following:

> An additional feature which contributes to the nonuniform flow is the fact that in the preferred embodiment, bottom surface 16 is inclined at an angle A relative to the plane normal to the axis of rotation of blade assembly 20.  That is, bottom surface 16 is not horizontal and does not intersect shaft 22 of blade assembly at a right angle....
>
> Thus, bottom surface 16 slopes downwardly at angle A from the location of blade assembly 20 toward the side of container 15 furthest away from blade assembly 20.  That is, bottom surface 16 is the lowest at the area of the largest blade clearance 26.

---

[3]  In addition, plaintiff argues that defendant does not seek any construction for the term "at least partially sloped bottom surface," which results in an anomaly when interpreting the dependent claims.

Upon review, the Court finds that the "sloped" terms should be given their plain and ordinary meaning.  In essence, plaintiff argues that defendant disavowed the plain and ordinary meaning of "sloped" and, instead, intended "sloped" to require a varying distance between the blade and the bottom during blade rotation.

"Disavowal requires that 'the specification or prosecution history make clear that the invention does not include a particular feature."  The Federal Circuit has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."  *Hill-Rom Services, Inc. V. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014)(citations and quotations omitted).  "[E]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the scope using words or expressions of manifest exclusion or restriction."  *Id*.

Here, defendant argues that the patentee acted as a lexicographer and expressly defined the relevant term.  The language defendant points to, however, demonstrates that the patentee is describing the preferred embodiment.  ("An additional feature which contributes to the nonuniform flow is the fact that *in the preferred embodiment* bottom surface....").[4]
  And, "it is not enough that the only embodiments, or all of the embodiments, contain a particular limitation to limit a claim term beyond its ordinary meaning."  *Aria Diagnostics, Inc. v. Sequenon, Inc.*, 726 F.3d 1296 (Fed. Cir. 2013)(citations and quotations omitted).   Defendant

---

[4] This is in direct contrast to the patentee's language used in connection with the term "not centered," wherein the patentee indicated that "[t]he container *of the present invention*" includes a blade assembly that is not centered" and went on to define the term "not centered."

16

points to no "words or expressions of manifest exclusion or restriction" such that the claims must be interpreted as defendant suggests.

Here, defendant points to language describing only the preferred embodiment.  The Court will not import a limitation from the preferred embodiment where the claims in the patent are not so limited and the preferred embodiment describes *a number of factors* singly and in combination that contribute to the enhanced flow.  Moreover, as plaintiff notes, defendant's proposed construction would result in entirely flat bottom surfaces meeting the definition of "sloped.[5]"  Defendant points to nothing in the prosecution history suggesting that the "sloped" terms should be limited in the way defendant suggests.   For these reasons, the Court rejects defendant's proposed construction and, instead, concludes that the "sloped" terms should be given their plain and ordinary meaning.

  5.  "at least partially sloped bottom"

Plaintiff's proposed construction: plain and ordinary meaning; or, alternatively, "bottom surface that includes a sloped portion but that may also include other non-sloped portions"

Defendant's proposed construction: None

The Court's construction: plain and ordinary meaning

The parties make no arguments separate from those raised above.  Accordingly, the Court will construe the "sloped" terms consistently throughout the various claims in the '004 Patent. *See, e.g., Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361 (Fed. Cir. 2005).

---

[5]     Defendant notes that it need not address whether the bottom surface "can or cannot be a flat, horizontal surface."  Alternatively, the Court could simply add additional language to confirm that the bottom is not horizontal.

17

6. "<u>at least a portion of the bottom surface is sloped downwardly from a side toward the blade assembly</u>"

<u>Plaintiff's proposed construction</u>: plain and ordinary meaning

<u>Defendant's proposed construction</u>: "some regions of the bottom surface are inclined downwardly from a side toward the blade assembly at an angle relative to the normal place such that the distance between each blade and the bottom surface will vary as the blades rotate"

<u>The Court's construction</u>: plain and ordinary meaning

The parties make no arguments separate from those raised above. Accordingly, the Court will construe the "sloped" terms consistently throughout the various claims in the '004 Patent. *See, e.g., Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361 (Fed. Cir. 2005).

7. "<u>bottom surface that is sloped</u>"

<u>Plaintiff's proposed construction</u>: plain and ordinary meaning

<u>Defendant's proposed construction</u>: "some regions of the bottom surface are included at an angle relative to the normal place such that the distance between each blade and the bottom surface will vary as the blades rotate"

<u>The Court's construction</u>: plain and ordinary meaning

The parties make no arguments separate from those raised above. Accordingly, the Court will construe the "sloped" terms consistently throughout the various claims in the '004 Patent. *See, e.g., Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361 (Fed. Cir. 2005).

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court construes the disputed claims as set forth herein.

IT IS SO ORDERED.


                                               /s/ Patricia A. Gaughan
                                               PATRICIA A. GAUGHAN
                                               United States District Judge

Dated: 5/20/16