UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VITA-MIX CORPORATION, VITA-MIX MANAGEMENT CORPORATION, and VITA-MIX MANUFACTURING CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>BLENDTEC, INC.,<br><br>Defendant. | Civil Action No. 1:15-cv-01118-PAG<br><br>Judge Patricia A. Gaughan |

**BLENDTEC'S OPPOSITION TO VITA-MIX'S MOTION TO COMPEL**

Defendant Blendtec, Inc. ("Blendtec") hereby respectfully submits its opposition ("Opposition") to Plaintiffs Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation's (collectively "Vita-Mix") Motion to Compel ("Motion").

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  AN ADDITIONAL 4 YEARS OF SALES DATA WILL NOT HELP TO PROVE
     COMMERCIAL SUCCESS AND WOULD BE ONEROUS TO GATHER. .......................... 2

III. BLENDTEC'S RESPONSES TO VITA-MIX'S IMPROPER REQUESTS FOR
     ADMISSION ARE APPROPRIATE AND SUFFICIENT ....................................................... 4

     A.  Vita-Mix's RFAs Can Only Serve to Harass Blendtec and Waste Time and
         Resources Rather Than Narrow Issues for Trial ........................................................... 4

     B.  Blendtec's Objections are Proper Because Vita-Mix's RFAs Improperly Require
         Explanations, Are Vague and Ambiguous, and Are Improper Under the Local
         Patent Rules ................................................................................................................. 6

     C.  Blendtec's Denials Based on Its Objections Do Not Contradict Its Other
         Testimony and Discovery Responses ......................................................................... 10

     D.  Blendtec Should Not Be Forced to Provide Additional Answers to Vita-Mix's
         Requests for Admission Because They Are Improper and Will Not Narrow Any
         Issues for Trial ........................................................................................................... 12

IV.  CONCLUSION ............................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Havenfield Corp. v. H & R Block, Inc.*,
  67 F.R.D. 93 (W.D. Mo. 1973) ............................................................................................... 7

*Henry v. Champlain Enters., Inc.*,
  212 F.R.D. 73 (N.D.N.Y. 2003) ............................................................................................. 7

*Honeycutt v. First Fed. Bank*, No. 02-2710 MI/V,
  2003 WL 1054235 (W.D. Tenn. Mar. 5, 2003) ...................................................................... 7

*Johnstone v. Cronlund*,
  25 F.R.D. 42 (E.D. Pa. 1960) .............................................................................................. 5, 6

*Lantz v. N.Y. Cent. R. Co.*,
  37 F.R.D. 69 (N.D. Ohio 1963) .............................................................................................. 5

*Minn. Mining & Mfg. Co. v. Norton Co.*,
  36 F.R.D. 1 (N.D. Ohio 1964) ................................................................................................ 5

*Moore v. Rees*, No. 06-cv-22-KKC,
  2007 WL 1035013 (E.D. Ky. Mar. 30, 2007) ..................................................................... 6, 9

*Perez v. Miami-Dade Cty*,
  297 F.3d 1255 (11th Cir. 2002) .............................................................................................. 5

*Piskura v. Taser Int'l*, No. 1:10-cv-248,
  2011 U.S. Dist. LEXIS 141443 (S.D. Ohio Nov. 7, 2011) ..................................................... 5

*Sommerfield v. City of Chicago*,
  251 F.R.D. 353 (N.D. Ill. 2008) ............................................................................................. 7

*Stallings-Daniel v. Northern Trust Co.*, No. 01 C 2290,
  2002 U.S. Dist. LEXIS 4488 (N.D. Ill. Mar. 18, 2002) ......................................................... 7

*Sulzbacher v. Travelers Ins. Co.*,
  2 F.R.D. 491 (W.D. Mo. 1942) .............................................................................................. 5

*United Coal Cos. v. Powell Constr. Co.*,
  839 F.2d 958 (3d Cir. Pa. 1988) ............................................................................................. 7

*Wigler v. Electronic Data Systems Corp.*,
  108 F.R.D. 204 (D. Md. 1985) ........................................................................................... 4, 5

**Other Authorities**

8A Wright, Miller & Marcus, *Fed. Prac. & Proc.* § 2252 (2d ed. 1994) ...................................... 5

x

**Rules**

N.D. Ohio L.P.R. 3.1-3.7 ................................................................................................................ 9

N.D. Ohio L.R.P. 2.3 ................................................................................................................... 10

I. **INTRODUCTION**

Vita-Mix claims that it needs an additional 4 years of sales information, on top of the decade of sales information it already has, in order to prove the commercial success of the WildSide jar. However, Blendtec has already agreed to stipulate to its commercial success. And if Vita-Mix still wants to prove the commercial success of the WildSide jar on its own, without relying on Blendtec's stipulation, then it already has 10 years' worth of data, which is ample to prove commercial success. Plus, the additional 4 years of sales data are not readily or reasonably accessible to Blendtec anymore. Thus, the burden to Blendtec of attempting to gather the information far outweighs any marginal relevance of the additional information.

Vita-Mix also complains about Blendtec's responses to 137 requests for admission ("RFAs") where all of the RFAs are improper and can only serve to harass Blendtec. None of the requests can be answered without detailed explanations, and providing more detailed responses to the RFAs would have been akin to answering 137 interrogatories. And it would be impossible for Blendtec to answer most of the RFAs because they are vague and ambiguous and subject to multiple interpretations. Also, many of the RFAs are improper according to the Local Patent Rules. And none of the RFAs would serve the goal of Fed. R. Civ. P. 36 of narrowing issues for trial, but rather would frustrate that purpose. For the first time in its Motion, Vita-Mix reduced the number of RFAs for which it is seeking responses from 137 to 25, which demonstrates that Vita-Mix realizes that at least 112 of its RFAs were improper.

For at least these reasons, explained in more detail below, Blendtec should not be forced to provide superfluous sales information that would be onerous to even attempt to provide and should not be forced to provide amended responses to Vita-Mix's improper RFAs.

1

### II. AN ADDITIONAL 4 YEARS OF SALES DATA WILL NOT HELP TO PROVE COMMERCIAL SUCCESS AND WOULD BE ONEROUS TO GATHER.

Vita-Mix claims that the additional sales information it is seeking is somehow necessary to prove the commercial success of the WildSide jar, but it would be completely superfluous information.  First, Blendtec has already stipulated to the commercial success of the WildSide jar.  Second, even though it is unnecessary in light of Blendtec's willingness to stipulate, Vita-Mix has ample data to prove the commercial success of the WildSide jar because it already has 10 years' worth of sales of the accused WildSide jar. Third, the burden in even attempting to gather the information would be extremely onerous for Blendtec because it is archived in an old accounting system that does not have the capability of running a search for and retrieving the requested information.  Thus, Blendtec should not be forced to try to gather information that is not readily or reasonably accessible when it would not help to prove any issue in the case, especially when Blendtec has already admitted to the fact Vita-Mix is trying to prove and when Vita-Mix already has ample information to prove the fact on its own.

Blendtec has already admitted that the WildSide product was commercially successful, as Vita-Mix points out in its Motion. Blendtec's denial of each of Vita-Mix's requests for admission based on its objections does not in any way change Blendtec's position that its WildSide product was a commercial success.  Thus, the commercial success of the WildSide jar is not an issue in dispute in the current case. [1]   This is especially true considering both parties explored the commercially successful WildSide jar in detail in the last litigation between them. Blendtec would not have won a $24 million dollar judgment and an injunction against Vita-Mix

---

[1] Blendtec does not admit that the nexus requirement is met for secondary considerations when the commercial success of the WildSide product was achieved more than five years prior to the filing of the patented invention and more than a decade prior to the issuance of the patented invention, and therefore, could not be attributed to the claimed invention.  However, the additional information requested by Vita-Mix also would not help to prove that issue in the case.

for copying Blendtec's WildSide jar if it were not a commercially successful product.  Thus, Blendtec should not be forced to provide information to prove a fact not in dispute.

Apart from Blendtec's stipulation, Vita-Mix already has 10 years' worth of the sales data—from 2001 to 2010—for the WildSide jar.  A decade of sales data is ample information to prove the commercial success of the WildSide jar and, again, is unnecessary because Blendtec agrees it was a commercially successful product.  Therefore, the additional sales data Vita-Mix seeks—from 2010 to 2014—is not needed for Vita-Mix to prove commercial success, and Blendtec should not be made to provide information that is superfluous.

The cases cited by Vita-Mix in its Motion are misplaced because they all deal with trying to keep out evidence to prevent the patent owner from proving commercial success. Here, there is no dispute on this issue.  Blendtec has already admitted the WildSide jar was commercially successful.  And even if Vita-Mix wanted to prove the commercial success of that product on its own, Vita-Mix already has 10 years' worth of sales data for the WildSide jar, which is beyond sufficient to prove its commercial success.

Even if there were any reason or need for Blendtec to produce an extra 4 years of sales for the WildSide jar, on top of the 10 years Vita-Mix already has in its possession, the burden of gathering that information is extremely heavy and would far outweigh any marginal relevance of the information.  Since the prior case, Blendtec switched to a new accounting system. The irrelevant and excessive information that Vita-Mix is seeking is stored in the old accounting system, which was developed and operated by two people that are no longer with the company. The old accounting system cannot filter out only WildSide sales for a report.  *See* Declaration of Elsha Heppler ("Heppler Decl.").  In order to obtain that information, someone, who is not an expert in the old system, would have to manually gather it.  *Id.*  To do that, someone would have

3

to manually create a list of item numbers for WildSide jars and WildSide jar packages that existed in the old system.  *Id.*  To create that list, someone would have to manually go into the system and open up every single bill of materials ("BOMs") to see whether it included a WildSide jar.  *Id.*  There are over 8,000 BOMs in the old accounting system.  *Id.*  That task would take someone at least two full weeks of working around the clock to complete it.  *Id.*  Once the manual list was created, someone would have to export all sales out of the old accounting system for every product, including every jar and every jar package, ever sold in the old system, regardless of the type of jar or jar package.  *Id.*  Then, someone would need to manipulate all of the sales information exported from the old system to gather only items that were on the list that was manually created from manually searching through thousands and thousands of BOMs.  *Id.*

Thus, the cost and burden of gathering this information that will not help prove any issue in the case far outweighs any marginal relevance it may have.  Blendtec should not be made to conduct this burdensome task, especially when Vita-Mix already has 10 years' worth of sales data to prove commercial success of the WildSide jar, which it does not need to do considering Blendtec has already agreed that the product was commercially successful.

### III.   BLENDTEC'S RESPONSES TO VITA-MIX'S IMPROPER REQUESTS FOR ADMISSION ARE APPROPRIATE AND SUFFICIENT

#### A. Vita-Mix's RFAs Can Only Serve to Harass Blendtec and Waste Time and Resources Rather Than Narrow Issues for Trial

Vita-Mix propounded 137 complex RFAs which would only serve to harass Blendtec. As Vita-Mix points out in its Motion, RFAs are meant to narrow the issues for trial and do so by asking the opposing side to simply admit or deny facts already known by the requesting party. *Wigler v. Electronic Data Systems Corp.*, 108 F.R.D. 204, 206-207 (D. Md. 1985).  Requests are improper where they are meant to harass the other side.  *See id.; Perez v. Miami-Dade Cty*, 297

4

F.3d 1255, 1268 (11th Cir. 2002) (quoting 8A Wright, Miller & Marcus, *Fed. Prac. & Proc.* § 2252 (2d ed. 1994)) (finding that it is harassing to use RFAs as "a weapon [to] drag[] out the litigation and wast[e] valuable resources," rather than "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial[,]" and the purpose behind the RFAs is frustrated).

Courts have rejected RFAs for a number of reasons including when there are too many RFAs and they give the appearance of harassment, when the RFAs are an attempt to harass the opposing party, when the RFAs are absurdly onerous, and when the RFAs are an irresponsible use of Rule 36. *See, e.g.*, *Wigler*, 108 F.R.D. 204, 205 (D. Md. 1985) ("The filing of such an unjustifiable number of requests lends itself at least to the appearance of harassment . . . which would plainly justify the imposition of sanctions[.]"); *Lantz v. N.Y. Cent. R. Co.*, 37 F.R.D. 69 (N.D. Ohio 1963) ("an attempt to harass the opposing party"); *Sulzbacher v. Travelers Ins. Co.*, 2 F.R.D. 491 (W.D. Mo. 1942) ("absurdly onerous"); *Minn. Mining & Mfg. Co. v. Norton Co.*, 36 F.R.D. 1 (N.D. Ohio 1964) ("at best, irresponsible"). "Rule 36(a) should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation." *Johnstone v. Cronlund*, 25 F.R.D. 42, 45 (E.D. Pa. 1960); *see also Piskura v. Taser Int'l*, No. 1:10-cv-248, 2011 U.S. Dist. LEXIS 141443, at *9 n.6 (S.D. Ohio Nov. 7, 2011) (noting that *Johnstone* is still good law to support the position that it is proper to object to an RFA that cannot be admitted or denied without explanation). "Further, admissions 'should not be of such great number and broad scope as to cover all the issues [even] of a complex case,' and 'obviously . . . should not be sought in an attempt to harass an opposing party.'" *Wigler*, 108 F.R.D. at 206-07 (*quoting Lantz*, 37 F.R.D. at 69).

5

Here, Vita-Mix asked a large amount of RFAs that all require detailed explanations in order to answer, which, as explained further below, is improper. Responding to these RFAs would have been akin to answering 137 interrogatories rather than admitting or denying straightforward facts to help eliminate issues for trial. Thus, Vita-Mix's RFAs were an abuse of this discovery mechanism and responding to the RFAs would have been unduly burdensome and would only frustrate the purpose of Rule 36. While Vita-Mix has narrowed the amount of RFAs to 25, instead 137, Vita-Mix insisted, up until the filing of its Motion, that Blendtec provide supplemental responses to all 137 requests. Now, however, the remaining 25 RFAs still suffer from the deficiencies described below.

### B. Blendtec's Objections are Proper Because Vita-Mix's RFAs Improperly Require Explanations, Are Vague and Ambiguous, and Are Improper Under the Local Patent Rules

Blendtec's objections to Vita-Mix's RFAs are proper because Vita-Mix propounded 137 RFAs that all require a detailed explanation to answer, cannot be answered because they are vague and ambiguous, and/or are improper under the Local Patent Rules. "Where [RFAs] generally suffer from vagueness or repeatedly require the respondent to qualify its answer, compelling responses would frustrate rather than further the goals of Rule 36[.]" *Moore v. Rees*, No. 06-cv-22-KKC, 2007 WL 1035013, at *16 (E.D. Ky. Mar. 30, 2007) (*citing Johnstone*, 25 F.R.D. at 45). For the first time in its Motion, Vita-Mix narrowed the number of requests to which it was seeking amended responses from 137 to 25, which demonstrates that Vita-Mix recognizes that at least 112 of its RFAs were improper. But the remaining 25 still suffer from the same defects.[2]

RFAs must be stated "simply [and] directly, not vaguely or ambiguously" so they "can be answered with a simple admit or deny without an explanation." *Henry v. Champlain Enters.,*

---

[2] RFA Nos. 3, 14, 22, 28-29, 42-44, 45-46, 49-52, 58-59, 71-72, 74-77, and 83-84.

*Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003); *see also Sommerfield v. City of Chicago*, 251 F.R.D. 353, 355 (N.D. Ill. 2008) ("[R]equests for admission must be simple, direct and concise so they may be admitted or denied with little or no explanation or qualification."); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967-68 (3d Cir. Pa. 1988) (*quoting Havenfield Corp. v. H & R Block, Inc.*, 67 F.R.D. 93, 96 (W.D. Mo. 1973)) ("Regardless of the subject matter of the Rule 36 request, the statement of the fact itself should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification."); *Honeycutt v. First Fed. Bank*, No. 02-2710 MI/V, 2003 WL 1054235, at *1 (W.D. Tenn. Mar. 5, 2003) (stating that requests for admission should be answerable with a yes or no and listing many cases and types of objectionable RFAs that defeat the goals of Rule 36 including RFAs that are vague, susceptible to more than one interpretation, require explanation even if part can be answered with a yes or no, combine fact, conclusion, and argument, require explanations before they can be fairly answered, use pejorative language or innuendo, contemplate a legal standard, or require inferences). Requests are also improper when they are vague and subject to differing interpretations. *See Stallings-Daniel v. Northern Trust Co.*, No. 01 C 2290, 2002 U.S. Dist. LEXIS 4488, at *4-6 n.2 (N.D. Ill. Mar. 18, 2002) (finding RFA improper where the request asked for admission that something was done "'purposefully' because that word is vague and subject to differing interpretations and thus . . . improper" and finding the terms "accurately" and "knowingly midled" (sic) to be vague and "thus improper subjects of requests to admit").

Here, Blendtec cannot simply admit or deny the RFAs, as Vita-Mix demands. None of the remaining 25 RFAs can be answered with a simple admit or deny, but instead require a detailed explanation to give Blendtec's position on each RFA. For example, RFA No. 58 asks Blendtec to "[a]dmit that the blender jars in Blendtec's WildSide+ line of blender jars each have

7

a blade assembly that includes at least one blade." This cannot be admitted or denied without providing an explanation that gets into the nuances of claim construction, claim interpretation, and other details discussed in Blendtec's noninfringement contentions, *e.g.,* in the discussion about the limitations found in Claim 6 of the asserted patent. *See* Pls.' Motion, Exhibit L, Non-Infringement Contentions at 9 and 46. The same is true for any RFAs that ask for admissions relating to claim limitations.[3]

And, while it is true that Rule 36 allows for a situation where part of an answer can be admitted and the rest must be qualified or denied, here, Blendtec cannot even simply admit to a portion of the requests. Any response to the remaining 25 RFAs would require a thorough explanation, like the example above. This is not what is contemplated by the Rule. In sum, it would be impossible for Blendtec to fairly answer any of Vita-Mix's 137 RFAs, including the 25 now at issue in Vita-Mix's Motion, without providing extensive caveats and explanations of Blendtec's positions for each request, which is far beyond the proper scope of RFAs and defeats the goal of Rule 36.

Plus, each of the remaining 25 RFAs at issue are vague and ambiguous and subject to multiple interpretations, which means they are impossible for Blendtec to answer, even if requiring lengthy explanations for RFAs were proper.[4] Qualifying an answer to address ambiguity "should be the exception and not the rule, and responses need not be required where the requests are replete with such deficiencies." *Moore*, 2007 WL 1035013, at *16 (internal

---

[3] RFA Nos. 3, 22, 45, 46, 49-52, 58-59, 71-72, 74-77, and 83-84.
[4] The parties exchanged letters and had a meet and confer to discuss their different positions on these RFAs. Despite Blendtec explaining why it could not simply admit or deny the requests, including that the requests were vague and ambiguous, at no point during those communications did Vita-Mix offer to clarify the terms Blendtec pointed to as vague nor did Vita-Mix ever offer to narrow the discussion from all 137 requests for admission collectively to the 25 requests for admission it seeks to compel in its Motion. Had Vita-Mix been willing to discuss anything other than the entire set of RFAs as a whole, Vita-Mix might have been able to provide clarity on some of the requests.

Case: 1:15-cv-01118-PAG  Doc #: 53  Filed: 12/27/16  13 of 18.  PageID #: 2852

citation omitted).    Thus, where each of the remaining 25 RFAs would require qualifying answers to address ambiguity, responses should not be required.

Although Blendtec is not obligated by Rule 36 to provide an explanation about why the terms are vague and ambiguous in a request, it may help to show that Blendtec has valid and good reasons for using this objection.  For example, any RFAs that request an admission or denial about, or relate to, the "periphery" of the bottom surface, such as RFA Nos. 3, 22, 52, 74, and 77,  are vague and ambiguous at least because Vita-Mix uses a very different meaning of periphery than Blendtec and the Court.  The Court has construed the term to mean one thing, yet, in its infringement contentions, Vita-Mix draws an arbitrary red line that does not correspond to the periphery of the bottom surface, according to the Court's construction, and yet till calls it the periphery.  Thus, Blendtec cannot possibly admit or deny a request about the unknown periphery that Vita-Mix has continuously used throughout the case and in its infringement contentions.

Not only were the 137 requests for admission propounded by Vita-Mix improper, but also none of the RFAs for which Vita-Mix now seeks "amended answers" will help to narrow any issues for trial.  For example, for all RFAs that seek an admission or denial about whether certain accused products satisfy certain claim limitations, which is 3/4 of the RFAs currently at issue in Vita-Mix's Motion, the parties have already set forth their respective positions in detail in their (non)infringement and (in)validity contentions.[5]    Thus, forcing Blendtec to admit or deny something that it cannot admit or deny without including all of the relevant information from its contentions will not help narrow any issues for trial.

Plus, the Local Patent Rules make it clear that a party may object to discovery requests if they seek the same information required to be disclosed under L.P.R. 3.1-3.7, which outline the requirements for all contentions on (non)infringement, (in)validity, and (un)enforceability.

---

[5] RFA Nos. 3, 22, 45, 46, 49-52, 58-59, 71-72, 74-77, and 83-84.

L.R.P. 2.3 ("A party may…object to discovery on the grounds that it conflicts with…Local Patent Rules… [if the] categories of requests [are...r]equests for the same information required to be disclosed under Local Patent Rules 3.1-3.1[.]").  In other words, the Local Patent Rules already provide a mechanism for narrowing the issues on (non)infringement, (in)validity, and (un)enforceability, and RFAs attempting to do the exact same thing are improper.

For example, RFA No. 45 asks Blendtec to "[a]dmit that the blender jars in Blendtec's WildSide+ line of blender jars are each a container for a blender."  Yet the Local Patent Rules already required Blendtec to respond to this inquiry in its noninfringement contentions.  Thus, any issues or disputes relating to this limitation have already been identified and clarified in Blendtec's noninfringement contentions, and responding to the RFA will not narrow any issues for trial and would require Blendtec to incorporate the lengthy discussions in its contentions.  And so L.P.R. 2.3 clearly states that a party may object for this exact reason.  Therefore, along with Blendtec being unable to simply admit or deny these RFAs without explaining everything explained in its contentions, these are also improper requests pursuant to the Local Patent Rules, and Blendtec has properly objected as such.

### C. Blendtec's Denials Based on Its Objections Do Not Contradict Its Other Testimony and Discovery Responses

Vita-Mix attempts to fabricate confusion where none exists by claiming that Blendtec's denials, based on its objections to the RFAs, somehow changes Blendtec's positions it has previously disclosed.  They do not.  Blendtec's prior sworn testimony and discovery responses are still accurate and remain unchanged by Blendtec's objections to Vita-Mix's improper and harassing RFAs.

Additionally, Vita-Mix goes through several examples in its Motion where it claims Blendtec's sworn testimony and noninfringement contentions prove that Blendtec should have

10

admitted the RFA.  But Vita-Mix's analysis and characterizations are flawed.  For example, in its Motion, Vita-Mix asks the Court to compare a portion of RFA No. 10, taken out of context, to testimony by an individual witness, not a corporate witness of Blendtec's.  The actual language of RFA No 10 includes a portion that Vita-Mix omitted from its Motion where Vita-Mix gives a model number for a jar as an example of the WildSide line of blender jars, which leaves open the question of what are other examples of the WildSide line of blender jars contemplated by Vita-Mix in this request.  Also, the request essentially asks Blendtec to admit that avoiding infringement of the '004 patent was a reason for discontinuing the Wildside line of blender jars.  In its Motion, Vita-Mix attempts to say that the testimony of Thomas Dickson, who was not a 30(b)(6) witness, proves that Blendtec should have admitted the request.  However, not only did Blendtec deny this RFA based on its objections, but, were Blendtec required to provide an explanation for each RFA response, it also would have denied the RFA substantively with a caveat explaining that Blendtec does not believe it was ever at risk of infringing the '004 patent, considering it is impossible to infringe an invalid patent.

As another example of Vita-Mix's flawed logic, it also points to RFAs, like RFA No. 45, where Vita-Mix claims that Blendtec's denial is contradictory to its noninfringement contentions.  Here again, not only did Blendtec deny RFA No. 45 based on its objections, but, were Blendtec required to provide an explanation for each RFA response, it also would have denied the RFA substantively with a caveat explaining the paragraph in Blendtec's noninfringement contentions relating to the limitation asked about in RFA No. 45.  Therefore, Blendtec's denials based on its objections to the improper RFAs do not create any confusion for trial.

### D. Blendtec Should Not Be Forced to Provide Additional Answers to Vita-Mix's Requests for Admission Because They Are Improper and Will Not Narrow Any Issues for Trial

Vita-Mix is seeking "amended answers" to 25 RFAs. Eighteen of those 25 ask about various accused products compared to various claim limitations. As the Local Patent Rules contemplate, Vita-Mix can find all answers regarding Blendtec's noninfringement contentions in Blendtec's noninfringement contentions. Vita-Mix is also seeking "amended answers" to 3 of the 25 RFAs at issue that ask about Blendtec's subjective reasons for discontinuing one accused product and introducing another accused product.[6] These are not RFAs that can be answered with simple admissions or denials, and Vita-Mix already has Blendtec's sworn 30(b)(6) testimony on this topic. Plus, regardless of how Blendtec responds to those 3 RFAs, Vita-Mix may still question witnesses about the subject at trial, and therefore, these RFAs will not help facilitate the goal of Rule 36 to narrow issues for trial. Finally, Vita-Mix is seeking "amended answers" to 3 of the 25 RFAs at issue that ask about Blendtec and Vita-Mix being competitors in different markets, *e.g.*, commercial, consumer, high-performance, and thus, these are clearly vague and ambiguous RFAs.[7] While additional responses to these RFAs will not help narrow any issues for trial, considering both parties are unmistakably in agreement that they are competitors, Blendtec would have been willing to provide amended answers to these 3 RFAs, Nos. 42-44, if Vita-Mix would have clarified the meaning of each type of market asked about in the requests.

### IV. CONCLUSION

For the foregoing reasons, Blendtec respectfully requests that the Court deny Vita-Mix's Motion.

---

[6] RFA Nos. 14, 28, and 29
[7] RFA Nos. 42-44

12

Dated:  December 27, 2016

                                HOLLAND & HART LLP

                          By: */s/ Dawn M. David*
                              Brett L. Foster (*Pro Hac Vice*)
                              Mark A. Miller (*Pro Hac Vice*)
                              Timothy P. Getzoff (*Pro Hac Vice*)
                              L. Grant Foster (*Pro Hac Vice*)
                              Dawn M. David (*Pro Hac Vice*)
                              222 S. Main St., Suite 2200
                              Salt Lake City, UT 84101
                              Telephone: (801) 799-5800
                              Facsimile: (801) 364-9124
                              Email: bfoster@hollandhart.com
                                              mmiller@hollandhart.com
                                              tgetzoff@hollandhart.com
                                              gfoster@hollandhart.com
                                              dmdavid@hollandhart.com

                              Kyle B. Fleming
                              RENNER OTTO
                              1621 Euclid Avenue
                              Cleveland, OH 44115
                              Telephone: 216-621-1113
                              Facsimile: 216-621-6165
                              Email: kfleming@rennerotto.com

**CERTIFICATE OF SERVICE**

      I certify that on December 27, 2016 I served a copy of the foregoing document to the following by

- ☐ U.S. Mail, postage prepaid
- ☐ Hand Delivery
- ☐ Fax
- ☒ Electronic Service by CM/ECF

Nikolaus A. Woloszczuk
Patricia Young
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
nick.woloszczuk@lw.com
patricia.young@lw.com

David K. Callahan
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
david.callahan@lw.com

Hugh E. McKay
Tracey L. Turnbull
Brodie M. Butland
PORTER, WRIGHT, MORRIS & ARTHUR
950 Main Avenue, Suite 500
Cleveland, OH 44113
hmckay@porterwright.com
tturnbull@porterwright.com
bbutland@porterwright.com

9445800_5