**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Vita-Mix Corporation, *et al.*,** | **CASE NO. 1:15 CV 1118** |
| Plaintiffs, | **JUDGE PATRICIA A. GAUGHAN** |
| Vs. | |
| **Blendtec, Inc.,** | **Memorandum of Opinion and Order** |
| Defendant. | |

### INTRODUCTION

This matter is before the Court upon Blendtec's Motion for Summary Judgment of Non-Infringement (Doc. 57). This is a patent case. For the reasons that follow, the motion is GRANTED.

### FACTS

Plaintiffs, Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation (collectively, "plaintiff"), bring this lawsuit against defendant, Blendtec, Inc. alleging patent infringement.

The United States Patent and Trademark Office ("USPTO") issued U.S. Patent No.

1

8,753,004 ("'004 patent") on June 17, 2014. Plaintiff claims that blending jars manufactured and sold by defendant infringe this patent. According to plaintiff, defendant's "WildSide jar," "Wildside+ jar," and "Mini Wildside jar" are infringing products. The parties do not dispute that, for purposes of the infringement analysis, the "Wildside+ jar" and the "Mini Wildside jar" share the same geometry. Accordingly, for ease of reference, the Court will refer to these two products collectively as the "Wildside+ jar."

This Court previously construed various claims at issue in this case. For purposes of the instant motion, the parties focus on only one claim. In order for defendant's products to infringe plaintiff's patent, the blending jars must have a "bottom surface having a periphery defining only one line of symmetry." The Court construed the term "bottom surface having a periphery" to mean the "container's interior bottom surface having a periphery." Therefore, to establish infringement, plaintiff must prove that the blending jars at issue have an "interior bottom surface having a periphery defining only one line of symmetry."

Defendant moves for summary judgment on three grounds and plaintiff opposes the motion.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion

of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard. See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759

F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**ANALYSIS**

1. The WildSide jar

Defendant argues that plaintiff cannot demonstrate infringement of the '004 Patent based on sales of the WildSide jar. According to defendant, plaintiff must produce evidence that defendant "made, used, sold, offered for sale, or imported" the WildSide jar after June 17, 2014, *i.e.*, the date on which the '004 Patent issued. Defendant claims that in anticipation of the issuance of the '004 Patent, it discontinued all sales of the WildSide jar, permanently modified the mold to create the new WildSide+ jar, and removed all WildSide jars from inventory and scrapped them. Defendant claims that there is "overwhelming" evidence supporting these facts. According to defendant, plaintiff points only to screen shots from third party websites, some of which continued to depict the WildSide jar even after it was discontinued. Even if these

4

advertisements could constitute infringement, this evidence does not demonstrate infringement by *defendant*.

In response, plaintiff argues that defendant's own "2015/2016 presentations" identify pricing and constitute an offer to sell the WildSide jar. Plaintiff claims that regardless of what product defendant ultimately delivered, defendant offered the WildSide jar in 2015 and 2016. As such, there are questions of fact as to whether defendant infringed the '004 Patent after it issued in June of 2014. Plaintiff further argues that the third-party advertisements constitute "offers" to sell and support plaintiff's infringement claim.

Upon review, the Court finds that defendant is entitled to summary judgment on this issue. To succeed on a claim of direct patent infringement, plaintiff must demonstrate that defendant, without authorization, made, used, offered to sell, sold, or imported the patented invention during the term of the patent. 35 U.S.C. § 271(a). "Direct infringement...requires a patentee to prove that an accused infringer committed all acts necessary to infringe the patent, either personally or vicariously." *Smith v. Garlock Equipment Co.*, 658 Fed. Appx. 1017 (Fed. Cir. 2016)(sales made by sister companies are not imputed to defendant where defendant made no sales itself and patentee unable to 'pierce the corporate veil').

Here, in response to defendant's argument that it engaged in none of these activities during the term of the patent, plaintiff claims that defendant "offered to sell" the WildSide jar after the '004 Patent issued. Upon review of the evidence, the Court finds that no reasonable juror could find in plaintiff's favor on this issue. To determine whether a party "offered to sell" a product, this Court must apply "the norms of traditional contractual analysis." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir.

2005)(citation and quotation omitted). As such, defendant "must communicate a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id*. (Citation and quotation omitted).

Defendant offers evidence demonstrating that prior to the issuance of the '004 Patent, it began engineering efforts to "design around" the patent. To that end, defendant removed the WildSide jar from the market, re-molded its machinery in order to manufacture the WildSide+ jar, issued a press release announcing that all blenders sold will now include the WildSide+ jar. In addition, defendant provides evidence that it recycled the WildSide jars in inventory and discontinued sales of that jar before the issuance of the '004 Patent. (Doc. 58, Exs. 14-17, 32, 36).

In response to this evidence, plaintiff points to defendant's "presentations list pricing and offer to sell" document for 2015-2016. That document identifies a number of blenders, as well as the "invoice price" and the "manufacturer's suggested retail price" for those blenders. Some of those blenders are purportedly sold with the "WildSide jar." Plaintiff points to testimony from a defense witness who avers that these sales materials are typically presented to potential retailers and the presentations would have occurred during 2015. According to plaintiff, this document creates a question of fact with regard to whether defendant "offered to sell" the allegedly infringing product because it demonstrates that after the '004 Patent issued, defendant made offers to sell the WildSide jar. This Court disagrees. As can clearly be seen in the depiction of the "Classic 560 w/ WildSide jar," the blender jar included with the blender base is the WildSide+ jar. (Doc. 59-9 at 4). Although it is not clear due to the tilt of blender or the clarity of the image whether the other two depictions refer to the WildSide+ jar, the Court finds

6

that summary judgment is nonetheless warranted in defendant's favor. The undisputed testimony is that defendant ceased selling the WildSide jar before the issuance of the '004 Patent. The Court cannot say that the presentation materials "communicate a manifestation of willingness to enter into a bargain" for the sale of the infringing blender jar, *i.e.*, the WildSide jar. This is especially so in that the only clear depiction in the presentation materials demonstrates that the blender jar referred to therein is the WildSide+ jar.[1]

The only other evidence plaintiff relies on consists of screenshots of third-party websites containing offers to sell by third-party retailers. The Court finds that these materials are not relevant to whether defendant is a direct infringer. There is no evidence (or even suggestion) that defendant in any way personally operates any of these websites or third-party sellers and plaintiff makes no effort to hold defendant vicariously liable for the actions of these third-parties. Plaintiff's reliance on *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015) is misplaced. In that case, the plaintiff brought suit against Amazon based on "offers to sell" appearing on Amazon's own website. The district court determined that questions of fact existed as to whether Amazon engaged in an "offer to sell" by allowing third parties to sell products to customers through Amazon's website. *Milo & Gabby* has no bearing on this case, however, because plaintiff does not claim that any such "offers for sale" were posted by defendant or on a website owned or controlled by defendant. Rather, the screenshots provided by plaintiff establish only that third-parties may have offered the WildSide jar for sale

---

[1] The Court further finds that a question of fact does not arise based on the WildSide+ user manual, which plaintiff claims contains artwork depicting the WildSide jar. The Court finds that the user manual, which does not contain any pricing information, does not constitute an "offer to sell."

through third-party websites owned by the potential seller or a marketplace such as Amazon. Plaintiff offers no evidence that defendant itself made any such offer for sale through the internet. As such, these are not evidence of direct infringement by defendant and defendant is entitled to summary judgment on the issue of direct infringement as it relates to the WildSide jar.

    2.    The WildSide+ jar

        A. Literal infringement

Defendant argues that its WildSide+ jar does not literally infringe the '004 Patent. Defendant claims that it designed around the patent such that the jar does not have a "bottom surface having a periphery defining only one line of symmetry." According to defendant, it placed two "ridges" along the side walls and interior bottom periphery such that the bottom surface does not have a literal line of symmetry. According to defendant, plaintiff argued that the plain meaning of a "line of symmetry" is a line that divides a plane figure into mirror images on either side of the line. Here, the ridges prevent the drawing of any such line. Defendant claims that plaintiff's expert acknowledges that no precise line of symmetry exists. In addition, defendant argues that plaintiff's expert impermissibly compares the WildSide+ jar to Figure 6, one of the preferred embodiments. According to defendant, such comparisons are improper under the law. Defendant further claims that plaintiff attempts to insert modifiers such as "approximate" or "about" into the claim such that precise symmetry is not required. Plaintiff did not, however, request that the Court construe the claim in such a manner and plaintiff cannot do so now at this late date.

In response, plaintiff argues in essence that the addition of the two ridges did not alter the periphery of the bottom surface. Plaintiff analogizes the ridges to the addition of molding

8

around the base of a room.  According to plaintiff, the periphery of the room did not change as a result of the molding.  In other words, plaintiff appears to claim that the bottom of the periphery is measured from *behind* the ridge as opposed to in front of the ridge.  The addition of the ridges therefore did nothing to change the "bottom surface having a periphery."  As such, the WildSide+ jar literally infringes the claim because if the periphery is measured around the bottom from behind the ridge, the WildSide+ jar has a single line of symmetry.  Plaintiff points out that its expert testified that "these two additional 'ribs' are not part of the bottom surface or its periphery but are discrete features added to the inside of the container, on the side walls." (Doc. 59-6 at ¶359).  According to plaintiff and its expert, the addition of extra features is not considered when assessing infringement.  Plaintiff further argues that its expert does not compare the WildSide+ jar to the preferred embodiment in Figure 6.  Rather, the expert references Figure 6 only because it supports his understanding of the plain and ordinary meaning of the claim term.  Plaintiff also claims that defendant is attempting to reargue claim construction by inserting the word "precise" to the term "one-line of symmetry."

Upon review, the Court finds that defendant is entitled to summary judgment because the WildSide+ jar does not literally infringe the '004 Patent.  Here, no reasonable juror could find that the  WildSide+ jar has "an interior bottom surface having a periphery defining only one line of symmetry."  The Court is in possession of the WildSide+ jar and the placement of ridges alters the periphery of the interior bottom surface such that no line of symmetry exists.[2]  This

---

[2]  Plaintiff makes much of the fact that the *entirety* of the ridge does not affect the limitation.  But, the periphery of the bottom surface is visibly altered as a result of the ridge.  The ridge itself is not the issue.  Rather, the shape of the interior of the bottom surface is what is relevant to the limitation.

lack of a single line of symmetry is visible based on a visual inspection alone.

The Court rejects plaintiff's argument that the ridges are an added feature that should be ignored in assessing infringement. As defendant aptly notes, this doctrine applies where an element is added to a product that *otherwise* meets each claim element. *See, SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1336 (Fed. Cir. 1999)("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil can write."). Where the addition of elements, however, changes the structure such that the claim element is not present, the product will not infringe. *See, Outside the Box Innovations, LLC, v. Travel Caddy, Inc.*, 695 F.3d 1285 (Fed. Cir. 2012). *See also, Trading Technologies International, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1354 (Fed. Cir. 2010)("According to TT, because the claims use the transitional phrase 'comprising,' they also cover un-recited features such as automatic re-centering. To the contrary, automatic re-centering is not an additional feature, but rather negates a claimed requirement that the price level remains static and does not move."); *In re Vagedas*, unpublished, 976 F.2d 748 (Fed. Cir. 1992)(addition of raised ribs to the back surface are not additional elements because their existence negates a "planar back face"). Here, because the ridges alter the interior bottom periphery such that no single line of symmetry exists, they are not "additional elements." Rather, their existence negates a claim term in the '004 Patent rendering the WildSide+ jar noninfringing.[3]

---

[3] As defendant notes, the ridges are not "added" to the manufactured blending jar. Rather, defendant retooled its mold such that the ridges are created along with the blending jar during one

The Court further rejects any argument that "approximate"– or some other modifier– should be read into the claim, or that the claim does not require "exact" symmetry. Plaintiff did not request such a construction during claim construction and the Court will not redefine the claims at this point. And, although plaintiff and its expert opine that it would be nonsensical to require precise symmetry, as the manufacturing process could not possibly achieve this result, the Court need not reach this argument. As an initial matter, the Court notes that plaintiff acknowledges that the ridges are not "manufacturing" defects. (Doc. 58-43 at p. 107). Defendant submitted a sample of the WildSide+ jar to the Court and the lack of a line of symmetry is visible to the naked eye. Moreover, plaintiff's expert testified that the protrusion of the ridges "along the bottom surface periphery" results in a measurable difference, although measuring the protrusion is somewhat difficult.[4] (Doc. 58-43 at p. 108). Thus, for purposes of infringement *in this case*, the Court need not address whether minor manufacturing defects that render the

---

manufacturing process. (Doc. 58-16 at 51-52). As such, they are not removable.

[4] Plaintiff takes issue with defendant's characterization of this testimony. According to plaintiff, its expert never testified that there is a difference in the *geometry* of the periphery. Rather, he testified only that the ribs located *along* the bottom surface of the periphery are measurable. The Court, however, relies on this testimony for the purpose of demonstrating that the ribs are measurable and not simply the result of a manufacturing defect or imperceptible difference. The Court further rejects plaintiff's argument that the testimony arose in the context of the doctrine of equivalents and not in conjunction with literal infringement. Regardless of the topic, plaintiff's expert was clearly testifying regarding the **structure** of the container which obviously is static and does not change depending on the subject matter of the testimony. The Court is not relying on this testimony to establish that the interior bottom periphery is located in front of (as opposed to behind) the ribs.

product lacking in perfect symmetry result in a finding of non-infringement. Here, no reasonable juror could find that the WildSide+ jar has "an interior bottom surface having a periphery defining only one line of symmetry." The Court construed the claim term to mean a "container's interior bottom surface having a periphery." No party requested any construction of the term "single line of symmetry." As those words are commonly understood, no reasonable juror could conclude that the periphery of the interior bottom surface is measured from the inaccessible space behind the ridge. Here, the ridges alter the periphery of the container's interior bottom surface such that no single line of symmetry exists. Therefore, the WildSide+ jar does not literally infringe the '004 Patent.

Defendant also argues that plaintiff improperly asks the Court to compare the WildSide+ jar to the preferred embodiment identified in Figure 6 of the '004 Patent. In response, plaintiff argues that defendant misconstrues the opinion. According to plaintiff, Figure 6 in the '004 Patent discloses a blender jar with ridges. Plaintiff claims that its expert witness refers to Figure 6 in order to bolster his understanding of whether the ridges should be considered as part of the "bottom surface having a periphery defining only one line of symmetry." Plaintiff argues that its expert indicated that to a person of ordinary skill ("POSA") the addition of the ridges does not change the "container's interior bottom surface periphery."

Upon review, the Court finds that the testimony from plaintiff's expert, Dr. Richard Lueptow, does not create a question of fact. As an initial matter, it is well-settled that the Court may not compare the accused device to a preferred embodiment. *Zenith Laboratories, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418 (Fed. Cir. 1994)("As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the

patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent."). Thus, to the extent Dr. Lueptow is indirectly pointing to Figure 6 to establish infringement, the argument is rejected. The Court will not allow plaintiff to do indirectly that which it cannot do directly. Moreover, the Court agrees with defendant that Dr. Lueptow's testimony does not create a question of fact as it is an attempt to present evidence relevant to claim construction as opposed to infringement. The entirety of Dr. Lueptow's testimony relates to what a POSA would understand the "bottom surface having a periphery" or "single line of symmetry" to mean. Regardless, "[a] party does not manufacture more than a merely colorable dispute simply by submitting an expert declaration asserting that something is black when no reasonable juror reviewing the evidence could reach such a conclusion." *K-TEC v. Vita-Mix Corp.*, 696 F.3d 1364, 1374 (Fed. Cir. 2012). This is especially so where the technology at issue, *i.e.*, a blender jar, is relatively simple and "will be easily understandable without the need for expert explanatory testimony." *Id*. (Citation and quotation omitted). As set forth above, the Court finds that no reasonable juror could find literal infringement because the WildSide+ jar lacks a "bottom surface having a periphery defining only one line of symmetry" as defined by the Court during claim construction. This is readily apparent from a visual inspection of the blender jar. Accordingly, Dr. Lueptow's testimony is insufficient to create a genuine issue of material fact.

                B. Infringement under the doctrine of equivalents

The Court now turns to defendant's arguments regarding infringement under the doctrine of equivalents. Patent infringement may be found under the doctrine of equivalents even if an accused product does not literally infringe. Here, defendant does not argue that the WildSide+

jar does not infringe under this doctrine.[5] Rather, defendant argues that, as a matter of law, defendant is precluded from relying on the doctrine of equivalents to prove infringement. According to defendant, three grounds exist preventing plaintiff from establishing infringement in this manner: (1) prosecution history estoppel; (2) claim vitiation; and (3) the disclosure-dedication rule. Because the Court finds that plaintiff is estopped from relying on the doctrine of equivalents based on prosecution history estoppel, the Court will address this issue first.

"Prosecution history estoppel prevents a patentee from recapturing through the doctrine of equivalents the subject matter that the applicant surrendered during prosecution.... It presumptively applies when the applicant made a narrowing claim amendment relating to patentability. *Integrated Tech. Corp. v. Rudolph Tech., Inc.*, 734 F.3d 1352, 1356 (Fed. Cir. 2013). When the record does not reveal the reason for the amendment, the *Warner-Jenkinson* presumption applies such that the court will presume that the narrowing amendment was made for a "substantial reason related to patentability." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d 1359 (Fed. Cir. 2003).

Thus, in order to assess whether prosecution history applies, the accused infringer must first establish that a narrowing amendment occurred. If the accused infringer succeeds in this regard, the Court must next determine if the amendment "had a substantial reason relating to patentability." In assessing this prong of the test, the Court must limit its review to the

---

[5] Plaintiff devotes several pages of its brief in opposition to the argument that defendant infringes under the doctrine of equivalents. As defendant does not move for summary judgment on this basis, the Court need not reach the argument and, instead, need only address whether plaintiff is estopped from relying on the doctrine to prove infringement.

14

prosecution history record.

> If...the court determines that a narrowing amendment has been made for a substantial reason relating to patentability–whether based on a reason reflected in the prosecution history record or on the patentee's failure to overcome the *Warner-Jenkinson* presumption–then the third question in a prosecution history estoppel analysis addresses the scope of the subject matter surrendered by the narrowing amendment. At that point [there is a] presumption that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation.

*Festo*, 344 F.3d at 1367.

Even if a presumption arises that the patentee has surrendered "all territory between the original claim limitation and the amended claim limitation," the inquiry does not end.

> The patentee bears the burden of showing that a narrowing amendment did not surrender a particular equivalent and explained that a patentee may rebut the presumption of surrender by showing that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent.

*Id.* at 1368.

This presumption may be overcome by the patentee in three ways: (1) the patentee may demonstrate that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment; (2) the rationale underlying the narrowing amendment bore no more than a "tangential relationship" to the equivalent question; or (3) there was "some other reason" suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent. *Id*. Whether a patentee rebuts the presumption of surrender is question of law for the Court to decide. *Id*. at 1367.

As an initial matter, the Court finds that defendant has established that a narrowing amendment occurred. The addition of the "symmetry" language to the "bottom surface" limitation, narrowed the scope of that limitation. Moreover, plaintiff does not dispute that the

15

amendment is "narrowing." Because defendant demonstrated that the amendment is narrowing, plaintiff bears the burden of establishing that the amendment was not made for a "substantial reason related to probability." Plaintiff makes no effort in this regard. Although plaintiff makes an argument that the amendment was not undertaken to overcome prior art, that argument clearly appears under the portion of plaintiff's breach addressing "tangential relationship." Here, plaintiff points to nothing in the record revealing the reason for the amendment. As such, "the *Warner-Jenkinson* presumption applies and that the court will presume that the narrowing amendment was made for a "substantial reason related to patentability." *Festo*, 344 F.3d at 1367.

Because the Court presumes that the narrowing amendment was made for a substantial reason related to patentability, the Court further presumes that plaintiff has "surrendered all territory between the original claim limitation and the amended claim limitation." *Id*. at 1368. Plaintiff may nonetheless overcome this presumption in the three aforementioned ways. Here, defendant argues none of the three criteria are met to overcome the presumption. In other words, defendant argues that the equivalent was not unforeseeable at the time of the amendment, the rationale underling the amendment bore more than a "tangential relationship" to the equivalent question, and there was "no other reason" that plaintiff could not reasonably have described the alleged equivalent.

Plaintiff does not respond to defendant's arguments regarding "foreseeability" and "no other reason." Accordingly, the sole issue before the Court is whether plaintiff overcame the presumption of surrender by demonstrating that the "symmetry" limitation bore no more than a tangential relationship to the equivalent in question.

16

Defendant argues that the presence or absence of symmetry in the bottom surface of the blending jar was "squarely" at issue during prosecution. According to defendant, it is not relevant whether the prior art cited by the examiner actually disclosed a bottom surface with no lines of symmetry. Defendant claims that although an amendment made to avoid prior art is not tangential, the Federal Circuit has held that the opposite is not true. Defendant further argues that even if it may not have been necessary to include the "only one line of symmetry" limitation to overcome the examiner's rejection, plaintiff voluntarily surrendered more claim scope and is now barred from relying on the doctrine of equivalents.

In response, plaintiff argues that the "tangential test" requires inquiry into the rationale for the amendment, not simply its effects. According to plaintiff, the original claims were rejected as obvious and plaintiff responded by amending the independent claims to include limitations that the blade axis not be centered relative to the bottom surface; a bottom surface having only one line of symmetry; and the blade axis be located on that line of symmetry. Plaintiff claims that it simply cannot be that the rationale for the amendment was to overcome prior art that did not contain a single line of symmetry because two of the prior art references disclose that exact limitation. According to plaintiff, it is apparent that the rationale for the limitation is to provide necessary context for the placement of the axis of the blade assembly, which was not taught by the prior art.

Upon review, the Court finds that plaintiff is estopped based on the prosecution history from relying on the doctrine of equivalents. Plaintiff, although bearing the burden on this issue, devotes only one line of argument to its claim that the rationale underlying the narrowing amendment bore no more than a "tangential relationship" to the equivalent in question. Plaintiff

17

claims that "it is apparent that the patentee's rationale for the amendment was to provide the necessary context for the location of the blade assembly's vertical axis." Plaintiff, however, wholly fails to provide the Court with any citation to the prosecution history (or otherwise) supporting its position.

On the other hand, defendant's citations to the prosecution history disclose that the rationale was *not* tangential to the equivalent. Here, in one of the Examiner's Interview Summary Record, the Examiner noted:

> A proposed [amendment] was discussed. The features added to the claims were shown to be in the art, however, further revisions were formulated that appear to define over the cited art, subject to further searching & consideration. All independent claims will recite a sloped bottom surface, not centered blade assembly, *and the line of symmetry features*.

(Doc. 58-5 at 1)(emphasis added).

Shortly thereafter, plaintiff filed an amendment describing the purpose thereof:

> These claims have now been amended to include a *combination of features not found in or suggested by that art*, or any art of record or known to the Applicants. Specifically, none of the art discloses or suggests a container having a blade assembly positioned with its vertical axis off center of the bottom surface of the container, and having a configuration with only one line of symmetry, the axis being on that line of symmetry. … Applicants maintain that a sloped bottom surface should not be required for allowance because those claims recite other important features of the invention including the line of symmetry feature. It thus remains the position of the Applicants that claims 10, 15, 19 and 64 are in condition for allowance *because none of the prior art, either singly or in combination, teaches a container having* a blade assembly with its vertical axis off center of the bottom surface *and yet on a single line of symmetry of that surface.*

(Doc. 58-6 at 15)(emphasis added).

Later, in 2010, the Examiner indicated that the Gomez and Walter patents contained "only one line of symmetry." (Doc. 58-7 at 28-29). In response, plaintiff argued that Gomez does not teach a bottom surface having only one line of symmetry because Gomez discloses "at least two" lines of symmetry. (Doc. 58-8 at 3). The examiner agreed. *Id*. Subsequently,

18

plaintiff argued as follows in a Response to Office Action:

> Gomez does not teach or suggest a bottom surface having only one line of symmetry as recited in all the rejected claims. Walter also fails to teach this feature because Walter discloses a bottom surface having at least two lines of symmetry. Thus, the combination of Gomez and Walter fails to teach every limitation of claims 2, 7, 11, 17, 22, 25, 33 and 65. Therefore, the claims are patentable over Gomez and Walter.

(Doc. 58-9 at 17).

Based on plaintiff's own characterization and express statements to the USPTO, the Court finds that the "only one line of symmetry" limitation was added to distinguish the claim from prior art. Regardless, even if the prior art did not contain the alleged equivalent, it does not automatically follow that the amendment was "tangential" to the equivalent. *See, Integrated Technology Corp. v. Rudolph Technologies, Inc.*, 734 F.3d 1352, 1358 (Fed. Cir. 2013). Rather, prosecution history estoppel applies even if the patentee surrendered more than necessary to overcome prior art. *Id.* ("It may be that ITC did not need to surrender a lack of physical contact between the probe tip and window in either state to overcome Sato. The dispositive fact is that ITC chose to do so."). *See also*, *Energy Transportation Group, Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1359 (Fed. Cir. 2012)("Prosecution history estoppel bars application of the doctrine of equivalents even where the applicant surrendered more claim scope than was necessary to overcome a rejection"). Here, plaintiff chose to expressly amend the claim to require only one line of symmetry. The Court finds that plaintiff's actions in this regard do not render the amendment "tangential" to the equivalent. Rather, even if the amendment was not undertaken in an effort to distinguish prior art, it is readily apparent from the prosecution history that plaintiff intended to surrender the equivalent.

In all, the Court finds that plaintiff fails to establish that the amendment bore no more

19

than a "tangential relationship" to the equivalent question.  Therefore, plaintiff fails to overcome the presumption of surrender and, a such, is barred by prosecution history estoppel from relying on the doctrine of equivalents.  Having so concluded, the Court need not reach defendant's alternative arguments regarding claim vitiation and the disclosure-dedication rule.

Because there is no genuine of material fact regarding literal infringement, and plaintiff cannot rely on the infringement under the doctrine of equivalents, defendant is entitled to summary judgment of noninfringement.

**CONCLUSION**

For the foregoing reasons, Blendtec's Motion for Summary Judgment of Non-Infringement (Doc. 57) is GRANTED.

IT IS SO ORDERED.

  /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 8/9/17